William Breck, Esq., an individual,
in proper person; Mailing Address:
748 S. Meadows Pkwy #A9-257
Reno, NV 89521
Msg: 775-331-2482
Cell: 775-722-7940
Fax: 775-420-3642
Em: Bill@TPILaw.ORG
as Plaintiff, pro se

```
         _____ FILED        _____ RECEIVED
         _____ ENTERED      _____ SERVED ON
                      COUNSEL/PARTIES OF RECORD

              AUG 2 2 2013

              CLERK US DISTRICT COURT
                DISTRICT OF NEVADA
         BY: _____ DEPUTY
```

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| **William Breck**, an Individual, pro se,<br>Plaintiff<br>vs.<br><br>**Roger Doyle**, an individual;<br>**Janeen Isaacson**, an individual;<br>**David Clark**, an individual;<br>**Patrick King**, an individual;<br>**Glenn Machado**, an individual;<br>**J. Thomas Susich**, an individual;<br>**Laura Peters**, an individual;<br>**Kimberly Farmer**, an individual;<br>**Kathleen Breckenridge**, an individual;<br>**Caren Jenkins**, an individual;<br>**Mikyla Miller**, an individual;<br>**Monica Caffaratti**, an individual;<br>**Don Beury**, an individual;<br>**Yvette Chevalier**, an individual;<br>**Bryan Hunt**, an individual;<br>**Carol Hummel**, an individual;<br>**The State Bar of Nevada**, an "agency" of the government of the State of Nevada in the judicial branch of the State government;<br>**The State of Nevada**, ex rel the Supreme Court of the State of Nevada; &<br>**Unnamed Doe Defendants 1 through 100;**<br>Defendants | **Case No.: 3:12-cv-00649-MMD-VPC**<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>**FIRST AMENDED COMPLAINT**<br><br>**JURY DEMANDED** |

### FIRST AMENDED COMPLAINT

COMES NOW Plaintiff, **William Breck** ("**Plaintiff**", "**Plaintiff Breck**", "**William Breck**" and/or "**Breck**"), an individual appearing in proper person, who alleges as follows:

(See Table of Contents on next following page - Balance of this page intentionally left blank.)

BRECK VS. DOYLE, ET AL. – 3:12-CV-00649-MMD-VPC - FIRST AMENDED COMPLAINT - Page 1

1

## TABLE OF CONTENTS

2

### to First Amended Complaint

3

### WILLIAM BRECK -vs- ROGER DOYLE, ET AL

4

JURISDICTION & VENUE_____   **2**

5

PARTIES_____   **2**

6

SYNOPSIS OF THE CASE_____   **14**

7

MULTIPLE ADDITIONAL "DUE PROCESS" VIOLATIONS_____   **25**

8

I.   THE FAILURE TO SUBMIT A GRIEVANCE TO AN IMPARTIAL "SCREENING PANEL"
FOR "PROBABLE CAUSE" DETERMINATION, BEFORE BAR COUNSEL IS PERMITTED TO FILE

9

A FORMAL "COMPLAINT", IS A "PER SE" IRREPARABLE VIOLATION OF "DUE PROCESS"
AND "EQUAL PROTECTION" IN VIOLATION OF THE 14TH AMENDMENT TO THE U.S.

10

CONSTITUTION - SINCE IT RENDERS THE SCREENING PANEL PROVISIONS OF THE SUPREME
COURT RULES ILLUSORY AND INEFFECTIVE TO PROVIDE ANY SUBSTANTIAL PROTECTIONS

11

FOR THE RIGHTS OF THE ACCUSED - CONTRARY TO THE STANDARDS REQUIRED OF OTHER
STATE AGENCIES_____   **25**

12

II.   THE FAILURE TO SPECIFY THE PROCEDURES FOR SELECTING THE MEMBERS OF A

13

SCREENING PANEL OR HEARING PANEL IS A "PER SE" VIOLATION OF "DUE PROCESS"
AND "EQUAL PROTECTION" IN VIOLATION OF THE 14TH AMENDMENT TO THE U.S.

14

CONSTITUTION - BECAUSE IT PERMITS BAR COUNSEL OR THE CHAIRMAN OF THE
DISCIPLINARY BOARD TO 'SPECIALLY SELECT' THE MEMBERS OF THE SCREENING PANEL

15

THAT ARE MOST LIKELY TO PRODUCE THE DECISION DESIRED BY BAR COUNSEL OR THE
CHAIRMAN OF THE DISCIPLINARY BOARD_____   **30**

16

III.   THE FAILURE TO IDENTIFY THE MEMBERS OF THE SCREENING PANEL IS A "PER

17

SE" IRREPARABLE VIOLATION OF "DUE PROCESS" AND "EQUAL PROTECTION" IN
VIOLATION OF THE 14TH AMENDMENT TO THE U.S. CONSTITUTION - BECAUSE IT PERMITS

18

THE SCREENING PANEL TO OPERATE IN SECRET AND VIOLATES THE STANDARDS OF THE
NEVADA "OPEN MEETING LAWS"_____   **32**

19

IV.   THE FAILURE TO SPECIFY THAT ALL AVAILABLE INFORMATION PERTAINING TO

20

THE GRIEVANCE(S) BE SUBMITTED TO THE SCREENING PANEL IS A "PER SE"
IRREPARABLE VIOLATION OF "DUE PROCESS" AND "EQUAL PROTECTION" IN VIOLATION

21

OF THE 14TH AMENDMENT TO THE U.S. CONSTITUTION - BECAUSE IT PERMITS BAR
COUNSEL TO PROVIDE ONLY THE INFORMATION THAT BAR COUNSEL WANTS TO SHOW, IT

22

DEPRIVES THE SCREENING PANEL OF THE ABILITY TO DETERMINE "PROBABLE CAUSE" IN
A MANNER THAT IS INDEPENDENT AND IMPARTIAL, AND THUS UNDERMINES THE

23

FUNCTIONAL INDEPENDENCE AND IMPARTIALITY OF THE SCREENING PANEL_____   **34**

24

1

V.     THE FAILURE TO PERMIT RESPONDENT(S) TO SUBMIT INFORMATION TO THE
SCREENING PANEL IS A "PER SE" IRREPARABLE VIOLATION OF "DUE PROCESS" AND

2      "EQUAL PROTECTION" IN VIOLATION OF THE 14TH AMENDMENT TO THE U.S.
CONSTITUTION - BECAUSE IT DEPRIVES THE SCREENING PANEL OF THE ABILITY TO MAKE

3      AND INFORMED AND IMPARTIAL DETERMINATION_____  36

4      VI.    THE FAILURE TO REQUIRE THE SCREENING PANEL DECISION BE SIGNED BY ALL OF
THE MEMBERS OF THE SCREENING PANEL REFLECTING THEIR CONCURRENCE OF DISSENT

5      FROM THE DECISION OF THE SCREENING PANEL A "PER SE" IRREPARABLE VIOLATION OF
"DUE PROCESS" AND "EQUAL PROTECTION" IN VIOLATION OF THE 14TH AMENDMENT TO

6      THE U.S. CONSTITUTION - BECAUSE IT PERMITS THE STRONGER PERSONALITIES TO
DISREGARD AND OVER-RIDE THE WEAKER PERSONALITIES OF THE MEMBERS ON THE

7      SCREENING PANEL WITHOUT PROVIDING AN ADMINISTRATIVE TOOL FOR EQUALIZING
THE VOTING POWER OF THE MEMBERS OF THE SCREENING PANEL - AND PERMITS VOTING

8      BY ACQUIESCENCE_____  37

9      VII.   THE FAILURE OF THE SUPREME COURT RULES (THE "SCR") TO EXPLICITLY
REQUIRE THAT THE SCREENING PANEL MUST DETERMINE WHETHER "PROBABLE

10     CAUSE" EXISTS FOR FILING A FORMAL COMPLAINT AFTER FULL OPPORTUNITY FOR
RESPONDENT TO INSPECT THE EVIDENCE IN RE: WHETHER PROBABLE CAUSE EXISTS TO

11     FILE A FORMAL COMPLAINT, IS A "PER SE" IRREPARABLE VIOLATION OF "DUE
PROCESS" AND "EQUAL PROTECTION" IN VIOLATION OF THE 14TH AMENDMENT TO THE

12     U.S. CONSTITUTION - BECAUSE IT PERMITS BAR COUNSEL TO SUBVERT AND DEPRIVE
PERSONS CHARGED BY BAR COUNSEL OF THE PROTECTIONS OTHERWISE AVAILABLE

13     FROM A PRELIMINARY REVIEW BY A SCREENING PANEL AS ILLUSTRATED BY THE NEVADA
COMMISSION ON JUDICIAL DISCIPLINE PROCEDURAL RULES_____  40

14

VIII.  THE SUBMISSION OF FALSE INFORMATION TO THE SCREENING PANEL (E.G., THE

15     STATEMENT THAT BRECK AND TPI FAILED TO RESPOND TO STATE BAR INQUIRIES) IS A
"PER SE" IRREPARABLE VIOLATION OF "DUE PROCESS" AND "EQUAL PROTECTION" IN

16     VIOLATION OF THE 14TH AMENDMENT TO THE U.S. CONSTITUTION_____  42

17     IX.    THE INTENTIONAL CONCEALMENT OF EVIDENCE FROM THE SCREENING PANEL
(E.G., THE SUBSTANTIAL RESPONSE DELIVERED BY BRECK & TPI TO BAR COUNSEL KING

18     MORE THAN ONE WEEK PRIOR TO THE DATE OF THE FORMAL "COMPLAINT") IS A "PER
SE" IRREPARABLE VIOLATION "DUE PROCESS" AND "EQUAL PROTECTION" IN

19     VIOLATION OF THE 14TH AMENDMENT TO THE U.S. CONSTITUTION_____  44

20     X.     THE FAILURE TO OBTAIN A WRITTEN DECISION SIGNED BY THE SCREENING PANEL
MEMBERS IS A "PER SE" IRREPARABLE VIOLATION OF THE 14TH AMENDMENT TO THE

21     U.S. CONSTITUTION_____  45

22     XI.    PERMITTING OR REQUIRING J. THOMAS SUSICH TO ACT SIMULTANEOUSLY AS
"ADJUDICATOR" AND AS "PROSECUTOR" IS A "PER SE" IRREPARABLE VIOLATION OF

23     "DUE PROCESS" AND "EQUAL PROTECTION" IN VIOLATION OF THE 14TH AMENDMENT TO
THE U.S. CONSTITUTION_____  45

24

**XII.   PERMITTING BAR COUNSEL TO PLEAD GENERALITIES AND VAGARIES IN THE FORMAL COMPLAINT IS A "PER SE" IRREPARABLE VIOLATION OF "DUE PROCESS" IN VIOLATION OF THE 14TH AMENDMENT TO THE U.S. CONSTITUTION - BECAUSE IT PERMITS "TRIAL BY AMBUSH" WHICH IS A "PER SE" VIOLATION OF "DUE PROCESS"_____   48**

**XIII.   PERMITTING BAR COUNSEL TO PLEAD VAGARIES AND GENERALITIES WHEN PLEADING IS REQUIRED TO BE "CLEAR AND SPECIFIC" IN ORDER FOR THE HEARING PANEL'S FINDINGS TO BE SUPPORTED BY "CLEAR AND CONVINCING" EVIDENCE IS A "PER SE" IRREPARABLE VIOLATION OF "DUE PROCESS" AND "EQUAL PROTECTION" IN VIOLATION OF THE 14TH AMENDMENT TO THE U.S. CONSTITUTION_____   49**

**XIV.   PERMITTING BAR COUNSEL TO INTRODUCE EVIDENCE OF "FACTS" NOT PLEADED IN THE COMPLAINT IS A "PER SE" VIOLATION OF "DUE PROCESS" WHEN THE COMPLAINT IS REQUIRED TO BE "CLEAR AND SPECIFIC" AND THE FACTS ALLEGED IN THE COMPLAINT, WHICH CONSTITUTE THE "VIOLATION", MUST BE PROVED BY "CLEAR AND CONVINCING EVIDENCE"_____   53**

**XV.   CHANGING THE INTERPRETATION OF RPC RULE 7.5A - GOVERNING REGISTRATION OF A MULTI-JURISDICTIONAL LAW FIRM - WITHOUT NOTICE OR OPPORTUNITY FOR HEARING - IN ORDER TO CREATE A VIOLATION TO FURTHER THE CO-CONSPIRATORS' 'POLITICALLY MOTIVATED PROSECUTION' IS A "PER SE" VIOLATION OF "DUE PROCESS" AND "EQUAL PROTECTION" IN VIOLATION OF THE 14TH AMENDMENT TO THE U.S. CONSTITUTION AKIN TO AN "EX POST FACTO" LAW_____   54**

**XVI.   PERMITTING BAR COUNSEL TO SERVE ORDERS ISSUED BY BOARD CHAIRMAN OR HEARING PANEL CHAIRMAN CHAIRMAN VIOLATES "DUE PROCESS" AND "EQUAL PROTECTION" IN VIOLATION OF THE 14TH AMENDMENT TO THE U.S. CONSTITUTION - BY PERMITTING BAR COUNSEL TO WITHHOLD SERVICE TO ADVANTAGE BAR COUNSEL AND DISADVANTAGE OF DEFENDANT-RESPONDENT_____   58**

**XVII.   PERMITTING BAR COUNSEL TO OBTAIN "SECRET" OR "BACK-DATED" OR "EX PARTE" ORDERS IS A "PER SE" IRREPARABLE VIOLATION OF "DUE PROCESS" AND "EQUAL PROTECTION" IN VIOLATION OF THE 14TH AMENDMENT TO THE U.S. CONSTITUTION - BY SUBVERTING THE USUAL AND CUSTOMARY PROCEDURES OF "DUE NOTICE" AND "OPPORTUNITY TO BE HEARD"_____   62**

**XVIII.   PERMITTING BAR COUNSEL TO OBTAIN A 90 DAY EXTENSION WITHOUT A SHOW-ING OF "GOOD CAUSE" IS A "PER SE" VIOLATION OF "DUE PROCESS" AND "EQUAL PRO-TECTION" IN VIOLATION OF THE 14TH AMENDMENT TO THE U.S. CONSTITUTION - WHEN THE APPLICABLE RULE PERMITS AN EXTENSION ONLY FOR "GOOD CAUSE SHOWN"_____   64**

**XIX.   PERMITTING BAR COUNSEL TO OBTAIN A 90 DAY EXTENSION TO POSTPONE HEARING IS A "PER SE" IRREPARABLE VIOLATION OF "DUE PROCESS" AND "EQUAL PROTECTION" IN VIOLATION OF THE 14TH AMENDMENT TO THE U.S. CONSTITUTION - WHEN IT LEAVES INSUFFICIENT TIME TO PERMIT THE ACCUSED-DEFENDANT-RESPONDENT ADEQUATE DISCOVERY TO PREVENT "TRIAL BY AMBUSH" BY BAR COUNSEL-PROSECUTOR_____   66**

1    XX.    PERMITTING BAR COUNSEL TO PROVIDE A WITNESS LIST WITHOUT A SUMMARY
       OF THE EVIDENTIARY FACTS TO WHICH EACH WITNESS WILL TESTIFY IS A "PER SE"
2    IRREPARABLE VIOLATION OF THE 14TH AMENDMENT TO THE U.S. CONSTITUTION - WHEN
       IT PERMITS BAR COUNSEL TO CONDUCT A "TRIAL BY AMBUSH"_____    67
3
       XXI.   PERMITTING BAR COUNSEL TO ADD ISSUES, EVIDENCE AND WITNESSES WITHOUT
4    NOTICE AND A SHOWING OF "GOOD CAUSE" TO ESTABLISH THAT <u>THE ISSUES, EVIDENCE</u>
       <u>AND WITNESSES COULD NOT HAVE BEEN DISCOVERED, WITH THE EXERCISE OF</u>
5    <u>REASONABLE DILIGENCE</u>, PRIOR TO SERVICE OF THE INITIAL LOST OF NAMES OF
       PROPOSED WITNESSES, AND STATEMENT OF FACTS TO WHICH EACH WILL TESTIFY, IS A
6    "PER SE" IRREPARABLE VIOLATION OF "DUE PROCESS" AND "EQUAL PROTECTION" IN
       VIOLATION OF THE 14TH AMENDMENT TO THE U.S. CONSTITUTION_____    69
7
       XXII.  PERMITTING BAR COUNSEL TO WITHHOLD COPIES OF THE EVIDENCE AFTER DEAD-
8    LINE FOR PRODUCTION, &/OR TO PRODUCE VOLUMINOUS DOCUMENTS WITHOUT AN INDEX
       OF THE DOCUMENTS PRODUCED, IS A "PER SE" IRREPARABLE VIOLATION OF "DUE PRO-
9    CESS" AND "EQUAL PROTECTION" IN VIOLATION OF THE 14TH AMENDMENT TO THE U.S.
       CONSTITUTION - BECAUSE IT PERMITS BAR COUNSEL TO PLAY "FAST & LOOSE" WITH
10   THE EVIDENCE, TO THE DISADVANTAGE OF THE ACCUSED-DEFENDANT-RESPONDENT_____    71

11   XXIII.   PERMITTING COUNSEL FOR TPI TO WITHDRAW WITHOUT MAKING PROVISION
       FOR REPLACEMENT COUNSEL IS A "PER SE" VIOLATION OF "DUE PROCESS" AND "EQUAL
12   PROTECTION" IN VIOLATION OF THE 14TH AMENDMENT TO THE U.S. CONSTITUTION -
       WHICH DAMAGES AND DEPRIVES CO-RESPONDENT BRECK OF "DUE PROCESS"_____    73
13
       XXIV.   CONCEALING FROM BRECK AND FROM PUBLIC SCRUTINY AND FAILING TO DIS-
14   CLOSE: [1] THE MANNER OF SELECTION OF THE MEMBERS OF; [2] THE MEMBERSHIP OF;
       AND [3] THE VOTES OF; THE SCREENING PANEL, AND THE HEARING PANEL - IS A "PER SE"
15   IRREPARABLE VIOLATION OF "DUE PROCESS" AND "EQUAL PROTECTION" IN VIOLATION
       OF THE 14TH AMENDMENT TO THE U.S. CONSTITUTION - SINCE IT PERMITS AND RE-
16   ESTABLISHES THE "SECRET COURTS" OF "STAR CHAMBER" AND THE "INQUISITION"_____    75

17   XXV.    PERMITTING OR REQUIRING THE CHAIRMAN OF THE NORTHERN NEVADA
       DISCIPLINARY BOARD (WHO ALSO ACTED AS "PROSECUTOR-PETITIONER" IN A PETITION
18   TO THE NEVADA SUPREME COURT IN THIS MATTER) TO APPOINT THE HEARING PANEL
       AND TO CHANGE THE APPOINTED CHAIRMAN OF THE HEARING PANEL IS A "PER SE"
19   IRREPARABLE VIOLATION OF "DUE PROCESS" AND "EQUAL PROTECTION" IN VIOLATION
       OF THE 14TH AMENDMENT TO THE U.S. CONSTITUTION - BECAUSE IT COMBINES THE
20   INCONSISTENT ROLES AND RESPONSIBILITIES OF PROSECUTOR AND ADJUDICATOR IN A
       SINGLE PERSON - WHICH INEVITABLY LEADS TO ABUSE OF POWER AND DEPRIVES THE
21   TRIBUNAL OF THE PUBLIC CONFIDENCE ENGENDERED BY OPEN HEARINGS_____    78

22   XXVI.   REQUIRING THE EXERCISE OF "PEREMPTORY CHALLENGES" BEFORE THE
       HEARING PANEL IS IMPANELED AND VOIR DIRE IS CONDUCTED IS A "PER SE"
23   IRREPARABLE VIOLATION OF "DUE PROCESS" AND "EQUAL PROTECTION" IN VIOLATION
       OF THE 14TH AMENDMENT TO THE U.S. CONSTITUTION - BECAUSE IT RENDERS THE RIGHT
24   TO MAKE "PEREMPTORY CHALLENGES" (AS A PRACTICAL MATTER) WORTHLESS_____    81

XXVII.   THE FAILURE OF THE HEARING PANEL CHAIRMAN TO REMOVE THE MEMBERS OF THE HEARING PANEL TO WHOM BRECK FILED "PEREMPTORY CHALLENGES" - AND TO RECUSE HERSELF IN RESPONSE TO THE PEREMPTORY CHALLENGE UNDER SCR 48.1 AND/OR SWAIN VS. ALABAMA, 380 US 202 (1965) - IS A "PER SE" IRREPARABLE VIOLATION OF THE 14TH AMENDMENT TO THE U.S. CONSTITUTION - BECAUSE IT IMPAIRS THE LEGITIMACY OF THE PANEL CHAIRMAN AND THE HEARING PANEL_____ 84

XXVIII.   APPOINTING A HEARING PANEL CHAIRMAN IN SECRET, WITHOUT NOTICE OR OPPORTUNITY TO FILE A MOTION FOR DISQUALIFICATION UNDER SCR 103(7) - BEFORE THE APPOINTED HEARING PANEL CHAIRMAN "HEAR[S], CONSIDER[S] OR RULE[S] UPON ANY CONTESTED MATTER" - IS A "PER SE" IRREPARABLE VIOLATION OF "DUE PROCESS" UNDER THE 14TH AMENDMENT TO THE U.S. CONSTITUTION - WHEN THE RULE PROVIDES (AS STATED IN RULE 105(2)(A) - IN THE 2ND PARAGRAPH) THAT A MOTION TO DISQUALIFY IS NOT "TIMELY" "IF THE MEMBER HAS ALREADY HEARD, CONSIDERED OR RULED UPON ANY CONTESTED MATTER...."_____ 85

XXIX.   EXCLUDING THE COURT REPORTER HIRED BY BRECK TO RECORD THE HEARING VIOLATED BRECK'S CIVIL RIGHTS, SCR RULE §105(2)(F), §121, §230, §241 & §246, AND THE NEVADA "OPEN MEETING" LAW - NRS CH 241 - IN VIOLATION OF "DUE PROCESS" AND "EQUAL PROTECTION" UNDER THE 14TH AMENDMENT TO THE U.S. CONSTITUTION_____ 88

XXX.   THE FAILURE TO MAKE AN AUDIO RECORDING OF THE HEARING AS ORIGINAL EVIDENCE OF EVENTS AS THEY TRANSPIRE IS A VIOLATION OF "DUE PROCESS" BY PERMITTING THE CONTINUED USE OF LESS CERTAIN METHODS OF PRESERVING THE RECORD OF PROCEEDINGS, WHICH PERMIT BAR COUNSEL TO INFLUENCE THE COURT REPORTER'S TRANSCRIPT OF THE HEARING AND CREATES THE OPPORTUNITY FOR ITEMS TO BE ADDED TO OR OMITTED FROM THE RECORD WITH NO AUTHORITATIVE SOURCE TO CONSULT FOR VERIFICATION - IS A VIOLATION OF "DUE PROCESS" AND "EQUAL PROTECTION" IN VIOLATION OF THE 14TH AMENDMENT TO THE U.S. CONSTITUTION_____ 96

XXXI.   INDUCING ATTORNEYS TO VIOLATE THEIR ATTORNEY-CLIENT PRIVILEGE WITH-OUT COMPLIANCE WITH APPLICABLE RULES OF PROFESSIONAL CONDUCT (RPC 4.2 & 4.4) IS A "PER SE" IRREPARABLE VIOLATION OF "DUE PROCESS" AND "EQUAL PROTECTION" IN VIOLATION OF THE 14TH AMENDMENT TO THE U.S. CONSTITUTION_____ 99

XXXII.   THE FAILURE TO PROVIDE COPIES OF OMITTED DOCUMENTS UPON REQUEST DURING THE COURSE OF THE HEARING IS A FORM OF "SPOLIATION" AND A "PER SE" IRREPARABLE VIOLATION OF "DUE PROCESS" AND "EQUAL PROTECTION" IN VIOLATION OF THE 14TH AMENDMENT TO THE U.S. CONSTITUTION - BECAUSE THE OPPORTUNITY FOR CROSS-EXAMINATION OF WITNESSES IN RELATION TO SUCH OMITTED DOCUMENTS IS LOST FOREVER_____ 102

XXXIII.   OTHER EXAMPLES AND EVIDENCE OF 'SPOLIATION'_____ 103

//

XXXIV.   PERMITTING BAR COUNSEL TO INTRODUCE "EVIDENCE" AT A FORMAL
HEARING WHICH WAS NOT ALLEGED IN THE COMPLAINT OR SUMMARIZED IN A
"STATEMENT OF FACTS" TO WHICH EACH WITNESS WILL TESTIFY - DELIVERED TO
RESPONDENT PRIOR TO THE HEARING AS REQUIRED BY SCR 105(2)(C) - IS A "PER SE"
IRREPARABLE VIOLATION OF "DUE PROCESS" AND "EQUAL PROTECTION" IN VIOLATION
OF THE 14TH AMENDMENT TO THE U.S. CONSTITUTION_____ 106

XXXV.    ADMITTING EVIDENCE THAT IS OBJECTIONABLE UNDER THE RULES OF
EVIDENCE IN THE DISTRICT COURTS - SUCH AS HEARSAY AND EVIDENCE OBTAINED IN
VIOLATION OF THE RULES OF PROFESSIONAL CONDUCT (E.G., RULES 4.2 & 4.4, & RULES
1.6 & 1.9) - IS A VIOLATION OF "DUE PROCESS" AND "EQUAL PROTECTION" IN
VIOLATION OF THE 14TH AMENDMENT TO THE U.S. CONSTITUTION_____ 108

XXXVI.   DENYING BRECK THE RIGHT TO CALL WITNESSES AND INTRODUCE EVIDENCE -
IN THE ABSENCE OF A DULY ADOPTED RULE AUTHORIZING THE CHAIRMAN TO IMPOSE
SUCH RULES DURING THE HEARING - IS A "PER SE" IRREPARABLE VIOLATION OF "DUE
PROCESS" AND "EQUAL PROTECTION" IN VIOLATION OF THE 14TH AMENDMENT TO THE
U.S. CONSTITUTION_____ 109

XXXVII.  PROHIBITING RESPONDENT FROM CALLING WITNESSES BECAUSE NOT LISTED
PRIOR TO THE HEARING IS A "PER SE" IRREPARABLE VIOLATION OF "DUE PROCESS" AND
"EQUAL PROTECTION" IN VIOLATION OF THE 14TH AMENDMENT TO THE U.S.
CONSTITUTION - WHEN THE APPLICABLE RULES DO NOT REQUIRE RESPONDENT TO
PRODUCE ANY WITNESS LIST AT ANY SPECIFIC TIME - AND THE PANEL HAS NOT
ADOPTED, PUBLISHED AND PROVIDED TO RESPONDENT ANY RULES SPECIFYING SUCH
RULES - IN ACCORDANCE WITH  SCR 105(4)_____ 111

XXXVIII. PROHIBITING RESPONDENT FROM EXAMINATION OF BAR COUNSEL ON
POLITICAL BASIS FOR PROCEEDINGS AND/OR CRIMINALITY 'ADMITTED IN OPEN COURT'
DURING THE PROCEEDINGS IS A "PER SE" VIOLATION OF THE 14TH AMENDMENT TO THE
U.S. CONSTITUTION - SINCE IT TAINTS THE VALIDITY OF THE ENTIRE PROCEEDING_____ 112

XXXIX.   WHEN BAR COUNSEL IS WILLING AND ABLE TO "LIE", "SUBORN PERJURY"
OR ENGAGE IN OR COUNTENANCE OTHER CRIMINALITY - A HEARING PANEL - COMPOSED
OF MEMBERS THAT ARE SUBJECT TO POTENTIAL "INVESTIGATION" BY THE SAME BAR
COUNSEL - CANNOT BE DEEMED TO BE "INDEPENDENT" OR "IGNORANT" OF THE
POTENTIAL THREAT OF SIMILAR ACTION AGAINST A PANEL MEMBER WHO FAILS TO
COMPLY WITH BAR COUNSEL'S DESIRED ACTION_____ 114

XL.      FAILING TO FILE THE RECORD ON APPEAL WITHIN 30 DAYS OF ENTRY OF THE
DECISION - & FILING THE RECORD IN AN UNUSUAL FORMAT - SUCH AS ALPHABETICALLY
INSTEAD OF CHRONOLOGICALLY - TO ATTEMPT TO CONCEAL FILING DISCREPANCIES -
IS A VIOLATION OF "DUE PROCESS" AND "EQUAL PROTECTION" IN VIOLATION OF THE
14TH AMENDMENT TO THE U.S. CONSTITUTION - BY INTERFERING WITH THE RIGHT TO
HAVE AN EFFECTIVE REVIEW OF THE ACTION OF THE STATE BAR AS REQUIRED BY THE
14TH AMENDMENT TO THE U.S. CONSTITUTION_____ 115

**XLI. ADDITIONAL ACTION IS THREATENED BY THE STATE BAR OF NEVADA AGAINST BRECK, AS INDICATED BY THE STATEMENTS MADE IN THE FINAL SECTION OF THE "DECISION AND ORDER", DATED AND FILED ON OCTOBER 16, 2012, WITH THE STATE BAR OF NEVADA**_____ 118

**CLAIMS FOR RELIEF:**_____

**FIRST CLAIM FOR RELIEF: REQUEST FOR EQUITABLE RELIEF - DECLARATORY JUDGMENT & INJUNCTION**_____ 120

**SECOND CLAIM FOR RELIEF: NEGLIGENCE**_____ 122

**THIRD CLAIM FOR RELIEF: VIOLATION OF NEVADA'S OPEN MEETING LAWS**_____ 125

**FOURTH CLAIM FOR RELIEF: ABUSE OF PROCESS**_____ 127

**FIFTH CLAIM FOR RELIEF: INTERFERENCE WITH BUSINESS RELATIONS**_____ 128

**SIXTH CLAIM FOR RELIEF: CONSPIRACY TO VIOLATE & VIOLATION OF CIVIL RIGHTS UNDER 42 USC 1983**_____ 129

**PRAYER FOR RELIEF**_____ 131

**LIST OF EXHIBITS**_____ 133

**JURISDICTION & VENUE**

1.    This action is brought under **28 USC 1331** ("federal question"), **28 USC 1367** ("supplemental jurisdiction"), and **28 USC 2201** ("declaratory judgment"), and **28 USC 2202** ("further relief"), as all claims asserted are joined with a substantial and related federal claim under **42 USC 1981** ('equal protection for civil rights'), **42 USC 1983** ('private action for violation of civil rights'), and **42 USC 1985** ('conspiracy to interfere with civil rights'), for a judgment that the Defendants, acting under color of State law in their official and unofficial capacities, have acted willfully, wantonly, negligently and unlawfully, pursuant to a conspiracy, for the purpose of interfering with and violating Plaintiff's Civil Rights under the United States Constitution, as it applies to the State of Nevada through the 14th Amendment; and "Venue" under **28 USC 1391** is proper in this court because the majority of the defendants reside in the District of Nevada, in **Washoe** County (Reno area) and/or in **Clark** County (Las Vegas area).

**PARTIES**

2.    At all times pertinent hereto, the Plaintiff, **William Breck** (herein **"Plaintiff"**, **"Plaintiff Breck"**, **"William Breck"** or **"Breck"**), was and is a citizen of the United States of America, has claimed and maintained a permanent address in the State of Oregon, at 16578 SE Key Ct., Milwaukie, OR 97267, but was physically residing in Washoe County, Nevada, on a temporary basis; **Breck** is currently residing and working in Mexico for clients who are residents of the Nation-State of Mexico, and does not plan to return to or to again reside in the State of Nevada, as a result of the actions and events alleged herein, which Plaintiff believes have so far damaged his reputation and standing in the community that it will likely be impossible in the future for Plaintiff **Breck** to be able to live or operate a business with any significant contact with the general public in the State of Nevada.

3.    All of the Defendants named herein (except **Don Beury**, CA Bar #141733 & NV Bar #151, a resident of California) are residents of the State of Nevada and the actions of Defendants alleged herein

were undertaken and performed in the State of Nevada, principally in Las Vegas (**Clark** County) and Reno (**Washoe** County), in the State of Nevada.

4.      Defendant, **State Bar of Nevada**, is an "agency" of the government of the **State of Nevada**, which operates under the jurisdiction, control, supervision and protection of the **Nevada Supreme Court** (an entity within the judicial branch of the government of the State of Nevada, established by Article 3 and Article 6 of the Nevada Constitution, which is supported by tax revenues, within the meaning of **NRS 241.015 (3)-**), which purports to exercise "disciplinary" authority over attorneys who are members of the State Bar of Nevada, and other attorneys who submit to the jurisdiction of the State Bar of Nevada by engaging in actions and/or with clients in the State of Nevada, pursuant to the **Nevada Supreme Court Rules** (the "**SCR**") **Rule 39** ("Inherent powers of courts"), **Rule 42** ("Practice of attorneys not admitted in Nevada"), and **Rule 99** ("Jurisdiction" of the State Bar) and the **Rules of Professional Conduct** (the "**RPC**") **Rule 5.5A** ("Registration of Private Lawyers Not Admitted to Nevada in Extra-Judicial Matters")and **Rule 7.5A** ("Registration of Multijurisdictional Law Firms").

5.      Defendant, **State of Nevada**, is named as a defendant herein, pursuant to **NRS 41.031** (the waiver of "sovereign immunity" by the **State of Nevada**), in relation to the failure of the Supreme Court of the State of Nevada to take and to exercise reasonable and prudent due care to establish institute and maintain proper training, rules, procedures, standards, oversight and supervision of the actions and activities of Bar counsel, and others aiding, abetting and assisting Bar counsel, which negligence permitted and facilitated the actions of Bar counsel, their co-conspirators, and those persons who aided, abetted, assisted and otherwise furthered or promoted the conduct or action alleged herein, to be taken without being discovered, controlled, and mitigated by proper supervision, oversight and management control systems, which failures and negligence caused or contributed to the damages suffered by Plaintiff **Breck** alleged herein.

6.      Defendant, **Roger Doyle** (Nevada Bar #10876 - herein **"Defendant Doyle"**, "**Roger Doyle**" or

1   **"Doyle"**), is a resident of the State of Nevada, employed as an attorney in private practice with an office

2   in Reno, Nevada, who participated in the conspiracy to violate Plaintiffs 'civil rights' in violation of 42

3   USC 1983, and other violations alleged herein, commencing on or about February 18, 2011, and

4   continuing thereafter, for the purpose and with the effect of reaping a financial advantage by obtaining

5   referrals of clients of **TPI** from Bar counsel and other personnel of the State Bar of Nevada, for the

6   purpose of instituting and maintaining a lawsuit against **TPI** and **Breck** for damages which Defendant

7   **Doyle** and his co-conspirators engineered and caused, but which the Defendants led the referred clients

8   to believe were caused by **TPI** and/or **Breck**, in order to maintain a spurious lawsuit against **TPI** and

9   **Breck**, in order to receive a financial gain from the instigation and litigation of such spurious lawsuit.

10   7.      Defendant, **Janeen Isaacson** (Nevada Bar #6429 - herein **"Defendant Isaacson"**, **"Janeen**

11   **Isaacson"** or **"Isaacson"**), is a resident of the State of Nevada, employed as Assistant Bar Counsel by

12   the State Bar of Nevada, who joined with Defendant **Doyle** and Defendant **Clark** to instigate on or

13   about February 18, 2011, and to continue thereafter to participate in, the conspiracy to violate Plaintiffs

14   'civil rights' in violation of 42 USC 1983, and other violations alleged herein, by exercising her official

15   position and powers to instigate an "investigation" of **TPI** and **Breck** without probable cause, for the

16   purpose and with the effect of advancing 'political objectives' which were not a proper role or function

17   of the State Bar of Nevada.

18   8.      Defendant, **David Clark** (Nevada Bar #4443 - herein **"Defendant Clark"**, **"David Clark"** or

19   **"Clark"**), is a resident of the State of Nevada, employed as Bar Counsel by the State Bar of Nevada,

20   with office located in Las Vegas, **Clark** County, Nevada, who joined with Defendant **Doyle** and

21   Defendant **Isaacson** to instigate on or about February 18, 2011, and continued thereafter to participate

22   in, the conspiracy to violate Plaintiffs 'civil rights' in violation of 42 USC 1983, and other violations

23   alleged herein, by exercising his official position and powers to instigate an "investigation" of **TPI** and

24   **Breck** without probable cause, for the purpose and with the effect of advancing 'political objectives'

which were not a proper role or function of the State Bar of Nevada.

9.      Defendant, **Patrick King** (Nevada Bar #5035 - herein **"Defendant King"**, **"Patrick King"** or

**"King"**), is a resident of the State of Nevada, employed as Assistant Bar Counsel by the State Bar of

Nevada, with offices in Reno, Nevada, who, on or about August, 2011, joined in the conspiracy

instigated on or about February 18, 2011, by Defendant **Doyle**, Defendant **Isaacson**, and Defendant

**Clark**, and continued thereafter to aid, abet, further, promote, facilitate and participate in the said

conspiracy to violate Plaintiffs 'civil rights' in violation of 42 USC 1983, and other violations alleged

herein, by exercising his official position and powers to influence all, or essentially all, of the Nevada

Bar Attorneys associated with **TPI** and **Breck** to "distance themselves" from **Breck** and **TPI**, and by

the use of thinly veiled 'threats', 'innuendo' and 'defamatory' remarks about **Breck** (which included

calling **Breck** a "crook", a "criminal genius" - and/or other similar 'names' which were 'per se'

defamatory and 'slanderous' - without any basis in fact or any other legitimacy, justification or basis

whatsoever) for the purpose of inducing Nevada Bar attorneys associated with **Breck** and **TPI** to

breach their attorney-client privilege in violation of **RPC Rule 4.2 & 4.4**, and for the purpose and with

the effect of causing the Nevada Bar attorneys associated with **TPI** and **Breck**, upon which **TPI** and

**Breck** depended to provide proper services to **TPI** clients, to terminate their association with and/or to

cease to work with **TPI** and **Breck**, thus depriving **Breck** and **TPI** of the assistance of Attorneys who

were members of the Nevada Bar, in order to prevent **Breck** (through **TPI**'s Nevada Bar attorneys)

from providing agreed services to clients of **TPI**, for the purpose and effect of advancing personal and

'political' objectives which were not a proper role or function of Bar counsel or the State Bar of Nevada.

10.      Defendant, **Glenn Machado** (Nevada Bar #7802 - herein **"Defendant Machado"**, **"Glenn**

**Machado"** or **"Machado"**), is a resident of the State of Nevada, employed as Assistant Bar Counsel by

the State Bar of Nevada, with an office in Reno or Las Vegas, Nevada, who, on or about November,

2011, joined in the conspiracy instigated on or about February 18, 2011, by Defendant **Doyle**,

1    Defendant **Isaacson**, and Defendant **Clark**, and continued thereafter with the participation of

2    Defendant **King**, to participate in the said conspiracy to violate Plaintiffs 'civil rights' in violation of 42

3    USC 1983, and other violations alleged herein, by exercising his official position and powers to solicit,

4    induce and convince Defendant **Susich** to sign a Petition to the Nevada Supreme Court seeking the

5    "Emergency Suspension" of **Breck**, and the seizure of all of **Breck**'s and **TPI**'s Bank Accounts, based

6    on evidence that Defendant **Machado** knew or should have known was materially false and misleading

7    as it pertained to **Breck** and **TPI**, and evidence that Defendant **Machado** knew or should have known

8    involved the participation by Bar counsel in activities involving criminality which Bar counsel had

9    induced or encouraged by threats and inuendo of disbarment and other penalties which Bar counsel

10   knew or should have known were improper or illegal, for the purpose and with the effect of causing

11   Nevada Bar attorneys associated with **TPI** and **Breck**, upon which **TPI** and **Breck** depended to provide

12   proper services to **TPI** clients, to terminate their association with and/or cease to work with **TPI** and

13   **Breck**, thus depriving **Breck** and **TPI** of the assistance of Attorneys who were members of the Nevada

14   Bar, in order to prevent **Breck** and **TPI** from providing agreed services to clients of **TPI**, and for the

15   purpose and effect of advancing personal and 'political' objectives which were not a proper role or

16   function of Bar counsel or the State Bar of Nevada.

17   **11.**   Defendant, **J. Thomas Susich** (Nevada Bar #898 - herein "**Defendant Susich**", "**J. Thomas**

18   **Susich**" or "**Susich**"), is a resident of the State of Nevada, employed as an attorney by the State of

19   Nevada, with office in Reno, Nevada, who, on or about November, 2011, joined in the conspiracy

20   instigated on or about February 18, 2011, by Defendant **Doyle**, Defendant **Isaacson**, and Defendant

21   **Clark**, and continued thereafter with the participation of Defendant **King** and Defendant **Machado**, to

22   participate in the said conspiracy to violate Plaintiff's 'civil rights' in violation of 42 USC 1983, and

23   other violations alleged herein, by exercising his official position and abusing his powers by acting as

24   "Prosecutor-Petitioner" to submit a Petition to the Nevada Supreme Court seeking the "Emergency

1   Suspension" of **Breck**, and the seizure of all of **Breck**'s and **TPI**'s Bank Accounts (<u>Nevada Supreme</u>

2   <u>Court case #59726</u>) [- which included and was based in part on evidence that Defendant **Susich** knew

3   or should have known was materially false and misleading as it pertained to **Breck** and **TPI**, evidence

4   that Defendant **Susich** knew or should have known involved the participation of Bar counsel in

5   activities involving criminality, and evidence that Defendant **Susich** knew or should have known were

6   improper or illegal and in violation of the 'civil rights' of **Breck** and **TPI** -], while Defendant **Susich**

7   continued to act simultaneously as the "Adjudicator", ruling on various Pre-Hearing Motions in the case

8   and appointing the Formal Hearing Panel, which Defendant **Susich** knew or should have know was in

9   violation of the 'civil rights' of **Breck** and **TPI**, and including Defendant **Susich** issued "secret" Orders

10  (without notice or opportunity for hearing) appointing, and later changing the appointment of, the Chair

11  of the Formal Hearing Panel, and permitting Bar counsel to conceal the issuance of Orders, which

12  Defendant **Susich** knew or should have know was in violation of the 'civil rights' of **Breck** and **TPI**, for

13  the purpose and effect of advancing personal and 'political' objectives which were not a proper role or

14  function of the State Bar of Nevada.

15  **12.**      Defendant, **Laura Peters** (herein **"Defendant Peters"**, **"Laura Peters"** or **"Peters"**) is a resident

16  of the State of Nevada, employed by the State Bar of Nevada, with an office in Reno or Las Vegas,

17  Nevada, who, on or about August, 2011, joined in the conspiracy instigated on or about February 18,

18  2011, by Defendants **Doyle**, **Isaacson** and **Clark**, and continued thereafter to participate in the said

19  conspiracy to violate Plaintiffs' 'civil rights' in violation of 42 USC 1983, and other violations alleged

20  herein, by aiding, abetting and assisting Defendant **King**, and other participants in the conspiracy, to

21  gather and conceal evidence in violation of Plaintiff's 'civil rights', which actions were taken and

22  engaged in wanton, willfully, negligently and intentionally, in violation of the Rules of the Supreme

23  Court of the State of Nevada and the standards of "Due Process" and "Equal Protection" of the 14th

24  Amendment to the U.S. Constitution.

13.    Defendant, **Kathleen Breckenridge** (Nevada Bar #6459 - herein "**Defendant Breckenridge**", "**Kathleen Breckenridge**" or "**Breckenridge**"), is a resident of the State of Nevada, with office in Reno, Nevada, who on or about April, 2012, joined and participated in the conspiracy commenced in February of 2011, by Defendants **Doyle**, **Isaacson** and **Clark**, and joined thereafter by Defendants **King**, **Machado** and **Susich**, to violate Plaintiffs 'civil rights' in violation 42 USC 1983 and the Rules of the Nevada Supreme Court, by abusing her power and position while acting as the "Chairman" of the Formal Hearing Panel appointed by Defendant **Susich** by permitting the attorneys representing **TPI** to withdraw shortly before the scheduled Hearing, without taking the proper steps to prevent **TPI** from being forced into a hearing without representation, since **Breck** was not qualified to represent **TPI** and **TPI** lacked the funds to obtain other representation, particularly given the short time then remaining before the scheduled Hearing date, which Defendant **Breckenridge** knew or should have known was a violation of the 'civil rights' of **TPI** and of **Breck**, which actions were taken and engaged in wanton, willfully, negligently and intentionally, in violation of the Rules of the Supreme Court of the State of Nevada and the standards of "Due Process" and "Equal Protection" of the 14th Amendment to the U.S. Constitution.

14.    Defendant, **Caren Jenkins** (Nevada Bar #6356 - herein "**Defendant Jenkins**", "**Caren Jenkins**" or "**Jenkins**"), is a resident of the State of Nevada, who was employed as an attorney by the State of Nevada, with office in Carson City, Nevada, who on or about July or August, 2012, joined and participated in the conspiracy commenced in February of 2011, by Defendants **Doyle**, **Isaacson** and **Clark**, and joined thereafter by Defendants **King**, **Machado** and **Susich**, and others who aided, abetted, assisted or acted as co-conspirators or in concert, to violate Plaintiffs 'civil rights' in violation 42 USC 1983 and the Rules of the Nevada Supreme Court, by abusing her power and position while acting as the "Chairman" of the Formal Hearing Panel appointed by Defendant **Susich** by denying **Breck** an extension of time to permit pre-hearing discovery and to obtain counsel to represent **TPI** (after

1   Defendant **Breckenridge** released the attorneys who formerly represented **TPI** and denied the offer of

2   "pro hac vice" representation for **TPI** - thus assuring that **TPI** would not have counsel available to

3   represent it at the Formal Hearing set for August 28, 2012), denying **Breck** the right to have a Court

4   Reporter make an "audio recording" of the Formal Hearing, and denying **Breck** the opportunity to

5   present witnesses based on the failure of **Breck** to comply with "fictitious", non-existent rules, by

6   admitting evidence, over the objection of **Breck**,  offered by the State Bar that was inadmissible under

7   the applicable civil rules, and by failing to enforce the actual "rules" of the Nevada Supreme Court,

8   which Defendant **Jenkins** knew or should have known was a violation of the 'civil rights' of **Breck**,

9   which actions were taken and engaged in wanton, willfully, negligently and intentionally, in violation

10  of the Rules of the Supreme Court of the State of Nevada and the standards of "Due Process" and

11  "Equal Protection" of the 14th Amendment to the U.S. Constitution.

12  **15.**    Defendant, **Mikyla Miller** (Nevada Bar #12042 - herein **"Defendant Miller"**, "**Mikyla Miller**"

13  or "**Miller**"), is a resident of the State of Nevada, who was employed as an attorney for **TPI**, with office

14  in Reno, Nevada, who joined and participated in the conspiracy commenced in February of 2011, by

15  Defendants **Doyle**, **Isaacson** and **Clark**, and joined thereafter by Defendants **King**, **Machado** and

16  **Susich**, and others who aided, abetted, assisted or acted as co-conspirators or in concert, to violate

17  Plaintiffs 'civil rights' in violation 42 USC 1983, other laws of the United States and the State of

18  Nevada and the Rules of the Nevada Supreme Court, by violating the "attorney-client" privilege

19  applicable under the Nevada Rules of Professional Conduct (**RPC Rules 1.6 & 1.9 & 1.13**) for

20  personal gain and benefit, which conduct Defendant **Miller** knew or should have known was a violation

21  of the 'civil rights' of **Breck**, and of **TPI**, and which actions were taken and engaged in willfully,

22  wantonly, negligently and intentionally, in violation of the applicable Rules of the Nevada Supreme

23  Court, the laws of the United States and the State of Nevada and the standards of "Due Process" and

24  "Equal Protection" of the 14th Amendment to the U.S. Constitution.

16.    Defendant, **Monica Caffaratti** (Nevada Bar #9372 - herein **"Defendant Caffaratti"**, **"Monica Caffaratti"** or **"Caffaratti"**), is a resident of the State of Nevada, who was employed as an attorney for **TPI**, with office in Reno, Nevada, who joined and participated in the conspiracy commenced in February of 2011, by Defendants **Doyle**, **Isaacson** and **Clark**, and joined thereafter by Defendants **King**, **Machado** and **Susich**, and others who aided, abetted, assisted or acted as co-conspirators or in concert, to violate Plaintiffs 'civil rights' in violation 42 USC 1983, other laws of the United States and the State of Nevada and the Rules of the Nevada Supreme Court, by testifying in violation of the attorney-client privilege and by 'stealing' property of **TPI** (to wit: all or part of the "confidential case file" of a **TPI** client, and the "keys" to the **TPI** offices) and delivering the 'stolen property' to unauthorized persons, and by violating the "attorney-client" privilege applicable under the Nevada Rules of Professional Conduct (**RPC Rules 1.6 & 1.9 & 1.13**) for personal gain and benefit, which conduct Defendant **Caffaratti** knew or should have known was a violation of the 'civil rights' of **Breck**, and of **TPI**, and which actions were taken and engaged in willfully, wantonly, negligently and intentionally, in violation of the applicable Rules of the Nevada Supreme Court, the laws of the United States and the State of Nevada and the standards of "Due Process" and "Equal Protection" of the 14th Amendment to the U.S. Constitution.

17.    Defendant, **Don Beury** (Nevada Bar #151 - herein **"Defendant Beury"**, **"Don Beury"** or **"Beury"**), is a resident of the State of California, who was employed as an attorney for **TPI**, with office in Reno, Nevada, who joined and participated in the conspiracy commenced in February of 2011, by Defendants **Doyle**, **Isaacson** and **Clark**, and joined thereafter by Defendants **King**, **Machado** and **Susich**, and others who aided, abetted, assisted or acted as co-conspirators or in concert, to violate Plaintiffs 'civil rights' in violation 42 USC 1983, other laws of the United States and the State of Nevada and the Rules of the Nevada Supreme Court, by violating the "attorney-client" privilege applicable under the Nevada Rules of Professional Conduct (**RPC Rules 1.6 & 1.9 & 1.13**) for

1    personal gain or benefit, which Defendant **Beury** knew or should have known was a violation of the

2    'civil rights' of **Breck**, and of **TPI**, which actions were taken and engaged in willfully, wantonly,

3    negligently and intentionally, in violation of the applicable Rules of the Nevada Supreme Court, the

4    laws of the United States and the State of Nevada and the standards of "Due Process" and "Equal

5    Protection" of the 14th Amendment to the U.S. Constitution.

6    18.    Defendant, **Yvette Chevalier** (Nevada Bar #8739 - herein **"Defendant Chevalier"**, **"Yvette**

7    **Chevalier"** or **"Chevalier"**), is a resident of the State of Nevada, who was employed as an attorney for

8    **TPI**, with office in Las Vegas,  Nevada, who joined and participated in the conspiracy commenced in

9    February of 2011, by Defendants **Doyle**, **Isaacson** and **Clark**, and joined thereafter by Defendants

10    **King**, **Machado** and **Susich**, and others who aided, abetted, assisted or acted as co-conspirators or in

11    concert, to violate Plaintiffs 'civil rights' in violation 42 USC 1983, other laws of the United States and

12    the State of Nevada and the Rules of the Nevada Supreme Court, by violating the "attorney-client"

13    privilege applicable under the Nevada Rules of Professional Conduct (**RPC Rules 1.6 & 1.9 & 1.13**)

14    for personal gain and benefit, which Defendant **Chevalier** knew or should have known was a violation

15    of the 'civil rights' of **Breck** and of **TPI**, which actions were taken and engaged in willfully, wantonly,

16    negligently and intentionally, in violation of the applicable Rules of the Nevada Supreme Court, the

17    laws of the United States and the State of Nevada and the standards of "Due Process" and "Equal

18    Protection" of the 14th Amendment to the U.S. Constitution.

19    19.    Defendant, **Bryan Hunt** (Nevada Bar #11163 - herein **"Defendant Hunt"**, **"Bryan Hunt"** or

20    **"Hunt"**), is a resident of the State of Nevada, with office in Reno, Nevada, who joined and participated

21    in the conspiracy commenced in February of 2011, by Defendants **Doyle**, **Isaacson** and **Clark**, and

22    joined thereafter by Defendants **King**, **Machado** and **Susich**, and others who aided, abetted, assisted or

23    acted as co-conspirators or in concert, to violate Plaintiffs 'civil rights' in violation 42 USC 1983, other

24    laws of the United States and the State of Nevada and the Rules of the Nevada Supreme Court, by

1   violating the "attorney-client" privilege applicable under the Nevada Rules of Professional Conduct

2   (**RPC Rules 1.6 & 1.9 & 1.13**) for personal gain and benefit, which Defendant **Hunt** knew or should

3   have known was a violation of the 'civil rights' of **Breck**, and of **TPI**, which actions were taken and

4   engaged in willfully, wantonly, negligently and intentionally, in violation of the applicable Rules of the

5   Nevada Supreme Court, the laws of the United States and the State of Nevada and the standards of

6   "Due Process" and "Equal Protection" of the 14th Amendment to the U.S. Constitution.

7   20.     Defendant **Carol Hummel** (herein "**Defendant Hummel**", "**Carol Hummel**" or "**Hummel**") is

8   a resident of the State of Nevada, who was employed as Court Reporter by the State Bar of Nevada,

9   with office in Reno, Nevada, who joined and participated in the conspiracy commenced in February of

10  2011, by Defendants **Doyle**, **Isaacson** and **Clark**, and joined thereafter by Defendants **King**, **Machado**

11  and **Susich**, and others who aided, abetted, assisted or acted as co-conspirators or in concert, to violate

12  Plaintiffs 'civil rights' in violation 42 USC 1983, by misinforming Plaintiff **Breck** that the Hearing was

13  (or would be) recorded, and assuring **Breck** that he could have a copy of the "audio recording" (at the

14  same time that **Breck** received a "draft copy" of the typed Hearing Transcript), on the Tuesday

15  following the August 28, 2012 Hearing, and thus misleading **Breck** to believe that the Court Reporter

16  that **Breck** had retained by pre-arrangement (before the Hearing) was unnecessary to make and

17  preserve a true and complete record of the Formal Hearing, which representation was false when made

18  and was known or should have been known to Defendant **Hummel** to be false when made, thus

19  inducing **Breck** to permit the Court Reporter, hired by **Breck** to record the Hearing, to leave the

20  Hearing location.

21  21.     Defendant **Kimberly Farmer** (herein "**Defendant Farmer**", "**Kimberly Farmer**" or

22  "**Farmer**") is a resident of the State of Nevada, employed by the State Bar of Nevada, with office in

23  Las Vegas, Nevada, who joined and participated in the conspiracy commenced in February of 2011, by

24  Defendants **Doyle**, **Isaacson** and **Clark**, and joined thereafter by Defendants **King**, **Machado** and

1    **Susich**, and others who aided, abetted, assisted or acted as co-conspirators or in concert, to violate

2    Plaintiffs 'civil rights' in violation 42 USC 1983, by abusing the power and privilege of her position as

3    Executive Director of the State Bar of Nevada by arbitrarily and capriciously revoking, without "good

4    cause" and without proper "notice and opportunity to be heard", the MJP Registration of **TPI**, based on

5    a new, different or alternate interpretation of **RPC Rule 7.5A**, without the notice and opportunity for

6    hearing required by the Nevada Administrative Procedures Act, without any formal notice setting forth

7    the interpretation of **RPC Rule 7.5A** adopted by Defendant Farmer, and without any formal notice or

8    opportunity for hearing or review regarding the decision of Defendant **Farmer** to "revoke" the MJP

9    Registration of **TPI**, by 'mischaracterizing' the 'revocation' of the MJP Registration of **TPI**, as the

10   "revocation of the right to practice law in the State of Nevada" of **TPI**, by publishing and distributing

11   the letter falsely characterizing the action of revoking the MJP Registration of **TPI** as the "revocation of

12   the right to practice law in the State of Nevada" of **TPI**, and by failing or refusing to respond to the

13   request of **TPI** for an explanation of the basis for the 'revocation' of the MJP Registration of **TPI**,

14   which conduct Defendant **Farmer** knew or should have known was a violation of the 'civil rights' of

15   **Breck**, as well as **TPI**, which actions were taken and engaged in willfully, wantonly, negligently and

16   intentionally, in violation of the applicable Rules of the Nevada Supreme Court, the laws of the United

17   States and the State of Nevada and the standards of "Due Process" and "Equal Protection" of the 14th

18   Amendment to the U.S. Constitution.

19   22.     **Francis Flaherty** (Nevada Bar #5303 - herein **"Francis Flaherty"** or **"Flaherty"**), is a resident

20   of the State of Nevada, employed as an attorney in private practice with an office in Carson City,

21   Nevada, who is the current "President" of the State Bar of Nevada, who **Breck** alleges (on information

22   and belief) joined and participated in the conspiracy commenced in February of 2011, by Defendants

23   **Doyle**, **Isaacson** and **Clark**, and joined thereafter by Defendants **King**, **Machado** and **Susich**, and

24   others who aided, abetted, assisted or acted as co-conspirators or in concert, to violate Plaintiffs 'civil

rights' in violation 42 USC 1983, by abusing the power and privilege of his position as President of the State Bar of Nevada, by warning Bar counsel and other personnel of the State Bar of Nevada that **Breck** had filed a formal complaint against Bar counsel demanding an "independent investigation" of the actions of Bar counsel and the State Bar of Nevada (which evidenced a pattern of "criminality" and disregard for the 'civil rights' of **Breck** and **TPI**), and by providing the time and opportunity for Bar counsel and persons aiding, abetting, assisting and acting as co-conspirators to alter, amend, tamper, destroy and otherwise "spoliate" evidence of misfeasance and malfeasance by Bar counsel and others, which conduct Defendant **Flaherty** knew or should have known was a violation of the 'civil rights' of **Breck**, as well as **TPI**, which actions were taken and engaged in willfully, wantonly, negligently and intentionally, in violation of the applicable Rules of the Nevada Supreme Court, the laws of the United States and the State of Nevada and the standards of "Due Process" and "Equal Protection" of the 14th Amendment to the U.S. Constitution. **Flaherty** is named herein in relation to his actions that warned Bar counsel, and presented them with the opportunity to "spoliate" further evidence, but is not named as a Defendant at this time pending discovery to determine the extent of **Flaherty's** involvement.

23.     The **DOE Defendants 1 - 100**, on information and belief, are persons (whether individuals, corporations or other entities) who are residents of or doing business in the State of Nevada, who aided, abetted, assisted and/or acted as co-conspirators or in concert, participating in the conspiracy to violate Plaintiff's civil rights in violation of 42 USC 1983, and other actions and violations alleged herein, whose names are currently unknown, who will be specifically identified by amendment to this Complaint at such time as the Plaintiff has been able to ascertain the identity and the actions of such Defendants in relation to the other Defendants and the conspiracy alleged herein.

## SYNOPSIS OF THE CASE

24.     On February 1, 2011, after nearly 5 years of research and investigation, and consultation with a number of Nevada attorneys, Plaintiff **Breck**, acting as "Executive Director", officially opened the doors

of **THE PUBLIC INTEREST LAW FIRM, INC.** (hereafter "**TPI**"), with one attorney on staff (**Mikyla Miller**, Nevada Bar #12042), and assurances of support from a number of attorneys in the Reno area.

**25.**     The Articles of Incorporation as a "non-profit organization" were filed by **Breck** for **TPI** with the Nevada Secretary of State on January 24, 2011, and listed seven (7) individuals as the initial Board of Directors; two (2) were attorneys licensed to practice in Nevada and members of the State Bar of Nevada, two (2) were attorneys licensed in other States not members of the State Bar of Nevada, and three (3) were non-attorneys who were designated to represent the 'public interest'. Directors were specifically prohibited from receiving any compensation for their services as Directors. And **TPI** was specifically described as an "organization" qualified to receive charitable contributions under **26 USC §170(c)(2)** [1]

_____

[1]   IRC §170(c)(2) describes when a taxpayer may receive an "income tax deduction" for a "charitable contribution":
"(C) CHARITABLE CONTRIBUTION DEFINED
For purposes of this section, the term "charitable contribution" means a contribution or gift to or for the use of—
    (1) * * *
    (2) A corporation, trust, or community chest, fund, or foundation—
        (A) created or organized in the United States or in any possession thereof, or under the law of the United States, any State, the District of Columbia, or any possession of the United States;
        (B) organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, or to foster national or international amateur sports competition (but only if no part of its activities involve the provision of athletic facilities or equipment), or for the prevention of cruelty to children or animals;
        (C) no part of the net earnings of which inures to the benefit of any private shareholder or individual; and
        (D) which is not disqualified for tax exemption under section 501(c)(3) by reason of attempting to influence legislation, and which does not participate in, or intervene in (including the publishing or distributing of statements), any political campaign on behalf of (or in opposition to) any candidate for public office.
A contribution or gift by a corporation to a trust, chest, fund, or foundation shall be deductible by reason of this paragraph only if it is to be used within the United States or any of its possessions exclusively for purposes specified in subparagraph (B). Rules similar to the rules of section 501(j) shall apply for purposes of this paragraph."
    IRC §501(c)(3) describes the types of organizations that qualifies to receive a "charitable contribution":
"(C) LIST OF EXEMPT ORGANIZATIONS
The following organizations are referred to in subsection (a):   * * *
    (3) Corporations, and any community chest, fund, or foundation, organized and operated exclusively for religious, charitable, scientific, testing for public safety, literary, or educational purposes, or to foster national or international amateur sports com-petition (but only if no part of its activities involve the provision of athletic facilities or equipment), or for the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private shareholder or individ-ual, no substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation (except as otherwise provided in subsection (h)), and which does not participate in, or intervene in (including the publishing or distributing of statements), any political campaign on behalf of (or in opposition to) any candidate for public office."
    And the connection between these 2 sections, as it pertains to **THE PUBLIC INTEREST LAW FIRM, INC.** (aka "**TPI**"), appears in the IRS Regulation quoted in the **TPI By-Laws** at **ARTICLE III, Section 2**:
        "IF … the organization by which it is operated, supervised or controlled is a publicly supported section 501(c)(4), (5) or (6) organization (deemed to be a section 509(a)(2) organization for purposes of section 509(a)(3) under the provision of section 509(a)), the supporting organization will be considered as meeting the requirements of this paragraph [i.e., the

1    (the "Internal Revenue Code" or **"IRC"**), which authorizes a tax deduction for Federal Income Tax

2    purposes for contributions to an organization which qualifies under **IRC §501(c)(3)**. - A true copy of the

3    Articles of Incorporation as filed by **Breck** for **TPI** with the Nevada Secretary of State are attached as

4    **EXHIBIT 'A'** and incorporated herein by this reference; and a true copy of the By-Laws of **TPI** are

5    attached as **EXHIBIT 'B'** and incorporated herein by this reference.

6    **26.**    Eighteen days later, on February 18, 2011, Defendant, **David Clark** (Bar Counsel - Nevada Bar

7    #4443) and Defendant, **Janeen Isaacson** (Assistant Bar Counsel - Nevada Bar #6429), opened an

8    investigation file and initiated a conspiracy or action in concert with the assistance of Defendant **Roger**

9    **Doyle** (Nevada Bar #10876) to submit the first purported 'complaint' - for the purpose and with the intent

10   of destroying **Breck**'s reputation and standing in the community, and preventing **Breck**, in his

11   administrative capacity as Executive Director of **TPI**, from investigating and prosecuting civil actions on

12   behalf of homeowners against Mortgage issuers and Servicers to stop illegal and fraudulent mortgage

13   foreclosures and other predatory practices.

14   **27.**    On May 20, 2011, **Patrick King** (then newly hired as an Assistant Bar Counsel), in testimony

15   before a Committee of the State Senate, Nevada Legislature, acknowledged that he had been hired by the

16   State Bar of Nevada to prosecute cases against Nevada attorneys who were representing Mortgage

17   borrowers in litigation against Mortgage issuers and Servicers.

18          Specifically, **King** stated, in testimony before a Nevada Senate Committee on May 20, 2011:

19   "We have had many attorneys show up at foreclosure mediations representing clients. They
     chastised the lenders for their predatory lending practices, and we asked, 'What about predatory

20   attorney practices?'" - (underline added) - (quoted from Minutes of the Nevada Senate
     Committee on Commerce, Labor & Energy - May 20, 2011 - at page 4)

21   "Attorneys offer legal assistance, and at this time, many people need legal assistance. Doing
     anything to prevent people getting access to good legal representation should be considered very

22

23   ──────────────────────────────────────────────
     "organizational" test] if its articles require it to carry on charitable, etc., activities within the meaning of section

24   170(c)(2)." – IRS Regs. §1.509 (a)-4 (c)(2).

carefully. In this case, what you are saying is that the only way a lawyer in a loan-modification circumstance can collect a fee is if an agreement is signed. That will compel the attorney, if an attorney decides to take the case and wants to get paid for it, to have some sort of loan modification agreement when in reality the best advice to the homeowner may be to let the house go. Therefore, there would be no agreement for loan modification.

What will happen, if the unintended consequence the State Bar of Nevada (Bar) feels will take place, is that it will eliminate the ability of many homeowners to get access to attorneys. It will force attorneys to bill on a contingency-fee basis in circumstances where establishing the contingency fee is problematic.

I suspect the only attorneys that will do that are the very attorneys we want to take care of. That is why I was brought on board. I have been a foreclosure mediator since the inception of the program, and the Bar has asked me to prosecute the attorneys who violate their ethical responsibilities. Part of those responsibilities is good communication and the need to treat clients fairly and bill appropriately.

Also, I am advised that I will be doing this statewide, and there are 70 complaints to prosecute." - (underline added) - (quoted from Minutes of the Nevada Senate Committee on Commerce, Labor & Energy - May 20, 2011 - at pages 3 - 4)

**28.**   Fortunately, the Amendment under discussion (that would have forced attorneys to use only "contingent fee contracts") did not pass. Hence, attorneys could continue to use other billing arrangements, such as flat fee and monthly fee, pursuant to a written fee agreement.

**29.**   The targeting of attorneys for investigation who were opposing Mortgage issuers and Servicers represented a "political agenda" that was inconsistent with the disciplinary functions for which the State Bar was purportedly established, and thus marks the departure from the duly authorized functions of the State Bar of Nevada and the subversion of the power and authority of the Nevada Supreme Court and the State Bar of Nevada for "political purposes".

**30.**   Starting on or about August 2, 2011, **Patrick King** made several telephone calls to attorneys associated with **Breck** and **TPI** -- including specifically, but without limitation, Judge Paul Freitag (Nevada Bar # 126 - retired), Attorney James Adams (Nevada Bar #6874), Attorney Erik Aanested (Nevada Bar #10842), and Attorney **Monica Caffaratti** (Nevada Bar #9372) -- for the purpose of threatening and intimidating the attorneys in order to induce the attorneys to break their association with **Breck** and **TPI**, which included thinly veiled threats to commence a "bar investigation" against the

1    individual attorney based on their current "association" with **Breck**, and issuing defamatory accusations

2    against **Breck**, which included calling **Breck** "a crook" and characterizing **Breck** as a "criminal genius"

3    or "master criminal", which threats, intimidations and defamations were effective to accomplish their

4    intended purpose, by causing the attorneys to terminate their association with **Breck**, and to cease to work

5    with **TPI** in any capacity.  These phone calls and defamatory statements violated the Supreme Court

6    Rules (the "**SCR**") of the Nevada Supreme Court, **SCR §121(16)**, and terminated the qualified

7    "immunity" granted to **Patrick King** and his co-conspirators by **SCR §106(1)**.

8    31.    Once **Patrick King** had convinced the Nevada Bar licensed attorneys to terminate their association

9    with **Breck**, it was impossible for **Breck** to continue to pursue any litigation against the Mortgage issuers

10   and Servicers, because **Breck** was not a member of the State Bar of Nevada and merely acted as the

11   administrative head of **TPI** as "Executive Director". And, without the guidance, strategic support,

12   assistance and encouragement of **Breck**, the Nevada Bar licensed attorneys (who remained associated

13   with the cases previously filed while they were engaged with **TPI**) were unable or unwilling to sustain or

14   continue the litigation on behalf of the **TPI** clients named as Plaintiffs in the cases filed.  As a result most

15   cases previously filed on behalf of **TPI** clients were dismissed and appeals were not filed or pursued,

16   which resulted in serious damage to the **TPI** clients whose cases were dismissed, and/or whose appeals

17   were not filed or pursued.

18   32.    On August 5, 2011, **Patrick King** faxed a Letter to **Breck**, which stated that a "Complaint" had

19   been filed against **Breck** and referred to a Complaint File Number. But the statement that "Complaint"

20   'had been filed' was false, since the prospective "complainant" had not yet been persuaded to sign a

21   complaint against **Breck** or **TPI**, as of the date of the Letter. As a result, **Patrick King** did not want to

22   name a "complainant" in the letter, and no "complaint" was articulated.  Hence the letter of August 5,

23   2011, merely demanded information without providing **Breck** or **TPI** any of the customary information

24

1    about the nature of "Complaint", or a copy of the "Complaint". [2]

2    **33.**    The letter formally advising **Breck** (and **TPI**) that a "Complaint" had been filed, however,

3    caused **Breck** and **TPI** to retain Attorney Cliff Young (Nevada Bar #1233) to attempt to identify the

4    legitimate concerns of the State Bar, and attempt to reach a reasonable resolution.

5    **34.**    However, even though a substantial amount of information was compiled and submitted by

6    Attorney Cliff Young to Assistant Bar Counsel **Patrick King** on October 13, 2011 - a true copy of

7    which submission is attached hereto as **EXHIBIT 'C'**, and incorporated herein by this reference, and a

8    lengthy discussion between Cliff Young and **Patrick King** occurred on that date, in addition to several

9    other substantial conversations on previous occasions, in which Cliff Young attempted to identify the

10   issues of concern to **Patrick King** and other Bar Counsel, the only result produced from the several

11   hour conversation between **Patrick King** and Cliff Young was merely that **Patrick King** did not intend

12   to "settle" the case, and that he did intend to file a "formal Complaint" against **Breck** and **TPI**.

13   **35.**    Subsequently, on October 21, 2011, **Patrick King** filed a formal written "COMPLAINT", which

14   contained allegations pertaining to two (2) Case Numbers' (i.e., "**NG11-1103**" and "**NG11-1378**") - a

15   true copy of which COMPLAINT is attached as **EXHIBIT 'D'** and incorporated herein by this

16   reference (hereafter the "COMPLAINT").

17   **36.**    The formal COMPLAINT filed by **Patrick King** claimed that **Breck** and **TPI** had completely

18   failed to respond to the prior inquiries of the State Bar, and claimed that the only response ever received

19   had been filed with the Las Vegas office of the State Bar rather than with the Reno office, where

20   **Patrick King** was located.  These statements by **Patrick King** were completely false when made, and

21   were known by **Patrick King** to be false and misleading, because **Breck** and **TPI** had submitted a

22   _____

23   [2] "If your complaint does involve an ethical issue, then Bar Counsel asks the lawyer involved for a written response to your complaint and an investigation is conducted. The matter is then presented to an impartial Screening Panel who decides

24   whether the case should be heard by a hearing panel of the Disciplinary Board." - http://www.nvbar.org/node/96; and - http://64.77.93.72/sites/default/files/discipline_process_flowchart.pdf

1    substantial response to all of the known concerns of the State Bar on October 13, 2011 (a full week

2    before the date of the formal COMPLAINT).  Therefore, on information and belief, **Breck** alleges that

3    the false statements by **King**, stating that **Breck** and **TPI** had failed to respond, were intended by

4    **Patrick King** to mislead the Screening Panel (and/or Hearing Panel), and to cause the Screening Panel

5    (and/or the Hearing Panel) to view **Breck** in a negative light as a "non-cooperative" person, to the

6    damage and detriment of **Breck** by damaging **Breck**'s reputation and credibility and image and position

7    during the Screening Panel's review, and in the Hearing before the formal Hearing Panel.

8    37.    The allegations in the COMPLAINT relating to Case No. **NG11-1103**, pertain to an individual

9    named Ramon Guerrero, who was alleged to be a client of **TPI**, but who never met or had any

10    conversation with **Breck**, and who testified at the formal Hearing on the COMPLAINT that the only

11    reason he named **Breck** in his Complaint to the Bar was because **"Breck** was the head guy". That

12    Ramon Guerrero was coached and induced to pursue the Complaint against **Breck** seemed obvious, but

13    **Patrick King** and **Roger Doyle** were persistent in objecting or denying that there was any inducement

14    or influence applied to obtain Guerrero's testimony against **Breck**.

15    38.    Nevertheless, Guerrero was one of only three (3) alleged clients of **TPI** to testify at the hearing,

16    out of more than 100 clients, none of whom met with **Breck** at **TPI**, and none of whom produced their

17    case file or other documentary evidence in support of their complaints. The three (3) former **TPI** clients

18    who testified were: (1) Ramon Guerrero (i.e., Grievance #11-1103), whose complaint was that "nothing

19    was done"; (2) Mariane Hernandez (no Grievance filed), whose complaint was that they were not happy

20    with what had been done; and (3) Rudolph Kancylar (no Grievance filed), who was working with **TPI**

21    toward obtaining a "loan modification", until he was called and told that **TPI** was a "scam operation"

22    by **Patrick King**, which caused Mr. Kancylar to cease working with **TPI**.

23    39.    The allegations in the COMPLAINT relating to the other case (**NG11-1378**) identified in the

24    formal Complaint pertain to a complaint filed by Judge Patrick Flanagan, which was never served on

1  **Breck**, in which Judge Flanagan complained that certain documents (i.e., Complaint, Motion and

2  Declaration) were signed by "paralegals" above the "electronic signature" of Attorney **Yvette**

3  **Chevalier** (Nevada Bar #8739), which **Chevalier** claims she did not authorize, but which was in fact

4  authorized in writing by EMail from **Yvette Chevalier**, a true copy of which EMail is attached as

5  **EXHIBIT 'E'** and incorporated herein by this reference, as **Chevalier** subsequently acknowledged in

6  her testimony under oath on August 28, 2012, before the formal Hearing Panel of the State Bar.

7  **40.**    After **TPI** was served with the Formal COMPLAINT it retained Mr. Dennis Kennedy (Nevada

8  Bar #1462), of the firm Bailey-Kennedy, in Las Vegas, Nevada, while **Breck** elected to represent

9  himself for the time being.

10  **41.**    After being served with the Formal COMPLAINT on or about October 24, 2011, and within the

11  time permitted for **Breck** and **TPI** to respond to the allegations of the formal COMPLAINT, **Breck**

12  filed several Motions during the period from November 14, 2011 (**Breck**'s MOTION TO DISMISS OR

13  FOR MORE DEFINITE STATEMENT filed 11/14/11), January 3, 2012 (**Breck**'s REPLY filed 1/3/12

14  to **Patrick King**'s Opposition to Motion to Dismiss filed on Dec. 13, 2011, and 5 MOTIONS IN

15  LIMINE and 7 MOTIONS FOR OFFICIAL NOTICE filed 1/3/12), January 4, 2012 (**Breck**'s

16  ERRATA to REPLY filed to **Patrick King**'s Opposition filed on Dec. 13, 2011), February 9, 2012

17  (**Breck**'s ANSWER filed Feb. 9, 2012, after Order Denying **Breck**'s Motion to Dismiss entered by **J.**

18  **Thomas Susich** on January 18, 2012, and **Breck**'s NOTICE OF ELECTION TO PRESERVE

19  PEREMPTORY CHALLENGES FOR VOIR DIRE filed 2/9/12), through February 24, 2012 (**Breck**'s

20  OPPOSITION TO STATE BAR'S MOTION TO STRIKE **BRECK**'S NOTICE OF ELECTION TO

21  PRESERVE PREEMPTORY CHALLENGES FOR VOIR DIRE filed 2/24/12, and REQUEST FOR

22  SUBMISSION ON MOTIONS IN LIMINE filed 2/24/12).

23  **42.**    All of the MOTIONS listed in the preceding paragraph were ruled upon by **J. Thomas Susich**,

24  as Chairman of the Northern Nevada Disciplinary Board, adjudicating pre-hearing Motions in relation

to the said COMPLAINT filed October 21,2011 (by ORDER DENYING MOTION TO DISMISS & FOR MORE DEFINITE STATEMENT issued by **J. Thomas Susich** on January 18, 2012, and by ORDER GRANTING MOTION TO STRIKE & DENYING MOTIONS IN LIMINE, on March 13, 2012), <u>while acting in the dual capacity as "Prosecutor-Petitioner"</u> of a MOTION FOR (EMERGENCY) TEMPORARY SUSPENSION filed by **J. Thomas Susich** <u>on behalf of the State Bar of Nevada against **Breck** in the Nevada Supreme Court</u> on November 22, 2011 (<u>which said MOTION FOR (EMERGEN-CY) TEMPORARY SUSPENSION was subsequently DENIED by the Nevada Supreme Court on March 22, 2012</u>), which actions by said **J. Thomas Susich**, under color of law and in abuse of his official position as Chairman of the Northern Nevada Disciplinary Board, violated **Breck's** Civil Rights to "Due Process" and "Equal Protection" by violating the "appearance of impartiality" as well as the actual "impartiality" of the person appointed and acting as the "adjudicator" by combining in the single person, **J. Thomas Susich**, the conflicting roles of "Prosecutor-Petitioner" and "Adjudicator".

**43.**    Subsequently, an ORDER APPOINTING FORMAL HEARING PANEL was issued and signed by said **J. Thomas Susich**, the Chairman of the Northern Nevada Disciplinary Board, on **April 9, 2012**, which was delivered to **Patrick King** to be served by Bar Counsel on **Breck** and **TPI**, and neither Mr. **J. Thomas Susich** nor his staff "served" a copy of the ORDER on **Breck** or **TPI**.

**44.**    On information and belief, the failure by **J. Thomas Susich**, as Chairman of the Northern Nevada Disciplinary Board, to serve the ORDER, was due to the "practice" (not described in the Supreme Court Rules) to give the ORDERS to Bar Counsel to serve on the opposing parties, rather than the Chair of the Disciplinary Board themselves making the "service", which practice permitted and encouraged Assistant Bar Counsel **Patrick King** to subvert the process of "service" of ORDERS when issued, to delay the "service" to a time that was 'convenient' or 'advantageous' for Bar Counsel, in violation of the "Due Process" rights of **Breck** to receive prompt notice of ORDERS issued in accordance with the "usual and customary practice" in litigation in the courts of the United States of

America (both Federal and State).

**45.** Thereupon, said ORDER issued **April 9, 2012**, was concealed by **Patrick King**, and was never served by **Patrick King** or the Nevada Bar on **Breck**. It was, however, eventually discovered by the persistent investigations of **Breck**'s assistant, Beverly Teichgraeber, on **June 27, 2012**, as described in the Declaration of Beverly Teichgraeber attached hereto as **EXHIBIT 'F'**, and incorporated by this reference herein.

**46.** By that time, however, **Patrick King** had obtained a "secret" extension of time (to use up all of the 90 days that the Hearing Panel was (arguably) permitted to extend the Hearing Date under **Supreme Court Rule 105**, "for good cause shown"), but without any showing of "good cause", by delaying the service of the ORDER APPOINTING FORMAL HEARING PANEL, and manipulating the process of setting a Hearing Date to the disadvantage of **Breck** and the advantage of **Patrick King**, acting under color of law in his official capacity as Assistant Bar Counsel, for the purpose of damaging and destroying the ability of **Breck**, working in conjunction with attorneys who were (and are) members of the State Bar of Nevada, by an orchestrated "trial by ambush", all of which (i.e., the "concealment", the "failure to show good cause", and the "misappropriation" of the Respondent (**Breck**'s) time for Pre-Hearing "Discovery"), violated **Breck**'s right to "Due Process" by suborning and abusing the Pre-Hearing and Hearing process contemplated by the Supreme Court Rules, in such manner as to damage and destroy the reputation and standing of **Breck** in the community, and causing **Breck** (who was required to, and did lawfully, act only with and through attorneys associated with **TPI** who were members of the State Bar of Nevada) to be unable to challenge and potentially stop predatory and unlawful foreclosure practices by Mortgage issuers and Servicers.

**47.** In addition, a multiplicity of other "violations" of **Breck**'s right to "Due Process" and "Equal Protection" were committed by Bar Counsel and their co-Conspirators, as alleged in greater detail in the next section of this Complaint, making this one of the most "corrupt" proceedings that **Breck** has ever

1  seen or heard of, with the most flagrant violations of "Due Process" imaginable - at least since ***STATE***

2  ***BAR OF NEVADA v. CLAIBORNE***, 756 P.2d 464 (1988).

3  **48.**     The pattern of "Due Process" violations and blatant disregard for usual and customary practices

4  and procedures is alleged (on information and belief) to amount to evidence that the State Bar of

5  Nevada, as currently constituted and operated under the supervision and protection of the Nevada

6  Supreme Court, evidences a misappropriation of executive and legislative powers, actions taken in

7  secret and in an authoritarian manner, contrary to the democratic principles and republican form of

8  government guaranteed to the citizens of the States by the Constitution of the United States of America,

9  by unlawful action of an agency in the Judicial Branch of the Nevada State Government, in violation of

10  the "Due Process" and "Equal Protection" standards of the 14th Amendment to the U.S. Constitution,

11  and in violation of the "Separation of Powers" doctrine, by appropriating to the State Bar of Nevada the

12  purported "power" or "authority" to act <u>"above the law"</u>, for political purposes, and without regard to

13  the "Due Process" and "Equal Protection" standards applicable to other governmental agencies.

14  **49.**     Therefore, **Breck** respectfully requests that this Honorable Court issue a Preliminary Injunction,

15  and Permanent Injunction prohibiting the State Bar of Nevada from taking any further actions of any

16  kind against **Breck**, and to consider whether the Injunction against further action by the State Bar of

17  Nevada should be extended to all purported 'disciplinary proceedings' pending a complete revision of

18  the governing Supreme Court Rules, to conform and comply with the "Due Process" and "Equal

19  Protection" Clauses of the 14th Amendment to the U.S. Constitution.

20  **50.**     However, since many of the violations alleged herein are also the subject of an Appeal and

21  Review of the Decision of the Hearing Panel, now filed in the Nevada Supreme Court, Plaintiff **Breck**

22  specifically DOES NOT REQUEST this Honorable Court to ISSUE ANY ORDERS which would

23  potentially interfere with the proper jurisdiction of the Nevada Supreme Court to adjudicate the

24  currently pending appeals in disciplinary matters from the State Bar of Nevada.

51.    And, in addition, Plaintiff **Breck** requests that this Honorable Court consider whether it would be useful to Certify to the Nevada Supreme Court, pursuant to the procedure of **NRAP Rule 5**, any of the questions raised in this case, for advisory ruling of the Nevada Supreme Court.

## MULTIPLE ADDITIONAL "DUE PROCESS" VIOLATIONS

52.    Plaintiff **Breck** hereby incorporates by this reference all previous allegations as though set forth in detail in this section of the Complaint.

I.    THE FAILURE TO SUBMIT A GRIEVANCE TO AN IMPARTIAL "SCREENING PANEL" FOR "PROBABLE CAUSE" DETERMINATION, BEFORE BAR COUNSEL IS PERMITTED TO FILE A FORMAL "COMPLAINT", IS A "PER SE" IRREPARABLE VIOLATION OF "DUE PROCESS" AND "EQUAL PROTECTION" IN VIOLATION OF THE 14TH AMENDMENT TO THE U.S. CONSTITUTION - SINCE IT RENDERS THE SCREENING PANEL PROVISIONS OF THE SUPREME COURT RULES ILLUSORY AND INEFFECTIVE TO PROVIDE ANY SUBSTANTIAL PROTECTIONS FOR THE RIGHTS OF THE ACCUSED - CONTRARY TO THE STANDARDS REQUIRED OF OTHER STATE AGENCIES

53.    At the commencement of a "formal" Complaint, Supreme Court Rules (hereafter the "**SCR**") require that Bar Counsel submit a proposed Complaint to a "Screening Panel":

> "**Rule 105. Procedure on receipt of complaint.**
> 1.    **Investigation.**
> (a) Investigation and screening panel review.   * * *  At the conclusion of an investigation of a grievance file, <u>bar counsel shall recommend in writing</u> dismissal with or without prejudice, * * * or the filing of a written complaint for formal hearing. <u>The recommendation shall be promptly reviewed by a screening panel. A screening panel shall consist of three members of the disciplinary board, appointed by the chair in accordance with Rule 103(6). Two of the three reviewers must be members of the bar.</u>  By majority vote they shall approve, reject, or modify the recommendation, or continue the matter for review by another screening panel." - (<u>underline</u> added)

54.    Although the Rule does not specify the "standard of proof" that must be met to the satisfaction of the "screening panel", a similar rule of the Commission on Judicial Discipline, clearly specifies that a Judge facing a similar process is entitled to a finding of "probable cause" before the Commission can proceed to a "formal complaint". [3]  Since a lower standard for proceedings by the State Bar to a formal

---

[3]  Nevada Commission on Judicial Discipline - Article IV - Rules 10 through 13 - available at: http://judicial.state.nv.us/proceduralrulesncjd3new.htm

1   Complaint would raise "equal protection" as well as "due process" issues, **Breck** submits that the likely

2   intent of the Supreme Court Rules governing the State Bar (specifically **SCR §105(1)(a)**-) is to require

3   a similar finding of "probable cause" from the Screening Panel before Bar Counsel is authorized to

4   proceed to file a formal Complaint.  Or, in the alternative, **Breck** alleges that the failure of **SCR**

5   **§105(1)(a)** to specify that the Screening Panel must make a finding of "probable cause" violates **Brecks**

6   Civil Rights to "Due Process" and/or "Equal Protection" under the 14th Amendment to the U.S.

7   Constitution, by permitting the Screening Panel to act merely as a "rubber stamp" for actions that Bar

8   Counsel desires to take.

9   **55.**    Therefore **Breck** alleges (on information and belief, based on the assumption that the Nevada

10  Supreme Court did not intend that the "Screening Panel" function would be merely a "rubber stamp"

11  approval of Bar Counsel's proposed action) that the proper function of the Screening Panel under **SCR**

12  **§105(1)(a)** is: **[1]** to determine whether all appropriate alternatives to the filing of a formal

13  COMPLAINT had been properly considered and explored and found to be inadequate to address the

14  issues addressed in the formal COMPLAINT; **[2]** to determine whether any other or additional

15  alternative should or could be explored before reaching the conclusion that a formal COMPLAINT

16  must or should be filed; **[3]** to determine whether the allegations of the formal COMPLAINT are

17  supported by "probable cause"; and **[4]** to avoid the costs, inconvenience and expense of formal

18  Hearing proceedings when a less expensive, damaging or other alternative is available.

19  **56.**    Therefore **Breck** alleges (on information and belief, based on the failure of **Patrick King** to

20  produce any "written document" signed by the "Screening Panel") that **Patrick King** did not properly

21  comply with the Screening Panel provisions of the Supreme Court Rules, to wit: **[1]** that **Patrick King**

22  did not "recommend in writing" the filing of the proposed formal COMPLAINT to a Screening Panel as

23  required by **SCR §105(1)(a)**; **[2]** that **Patrick King** did not cite or disclose facts or evidence in support

24  of his 'recommendation' that a formal COMPLAINT be filed as required by **SCR §105(1)(a)**; **[3]** that

Patrick King did not present the response previously submitted by Breck & TPI (i.e., **EXHIBIT 'C'**)

to the Screening Panel; **[4]** that Patrick King did not give notice or provide an opportunity to Breck

(or TPI) to present any information to the Screening Panel as required by SCR §105(1)(c); **[5]** that

Patrick King intentionally omitted and failed to perform the four preceding steps in order to subvert,

and for the sole or principal purpose of subverting, the review and approval by the Screening Panel

required by SCR §105(1)(a); **[5]** that Patrick King's actions in subverting the Screening Panel review

and approval process were undertaken for the specific or principal purpose of preventing the Screening

Panel from recommending a course of action that would be less damaging to Breck and TPI, in view of

Breck and TPI's apparent (as appears in **EXHIBIT 'C'**) willingness to address whatever legitimate

issues that the State Bar might have with Breck and TPI; **[6]** that Patrick King's actions in subverting

the Screening Panel review deprived the Screening Panel of the information properly needed to

determine that "probable cause" **did** or **did not** exist for the filing of the formal COMPLAINT as

required by SCR 105(1)(a); **[7]** that Patrick King's actions in subverting the function of the Screening

Panel violated Breck's right to "Due Process" and "Equal Protection" by depriving Breck of the

protections intended by the role specified for the Screening Panel in SCR §105(1)(a);  **[8]** that Patrick

King's actions alleged herein caused damages and detriment to Breck direct and indirectly by causing

damages and detriment to TPI, which ultimately caused TPI to cease to function and thereby deprived

Breck of employment and caused damages to Breck's reputation and standing in the community; **[9]**

that Patrick King's actions were undertaken and performed willfully, wantonly, recklessly and unlaw-

fully; **[10]** that Patrick King's actions were permitted and facilitated by the absence of proper internal

rules, controls, policies, procedures, over-sight and supervision; **[11]** that Patrick King's actions were

undertaken and performed negligently and without proper oversight or supervision due to massive

internal control failures at the State Bar of Nevada; and **[12]** that Breck has suffered and continues to

suffer injury and damages from these actions of Patrick King, as well as and in addition to the actions

of each and all of the co-conspirators who joined or acted in concert with or assisted **Patrick King** in

these actions and/or in other actions which comprised part of the conspiracy to defame and destroy

**Breck**'s reputation and standing in the community, **Breck**'s ability to provide ordinary and necessary

services to the clients of **TPI** in **Breck**'s administrative position as "Executive Director" of **TPI**, and

**Breck**'s ability to earn a living and to continue to function in the administrative position as "Executive

Director" of **TPI**.

57.     Or, in the alternative (on information and belief), **Breck** alleges: **[1]** that **Patrick King** did not

submit any of the documents described in the preceding paragraph to a Screening Panel as required by

**SCR §105(1)(a)**; **[2]** that **Patrick King** failed to give **Breck** notice and an opportunity to present

information to the Screening Panel as required by **SCR §105(1)(c)**;[4] **[3]** that **Patrick King** did not

obtain any "written decision" from a Screening Panel as required by **SCR §103(6), §103(8) and**

**§105(1)(a)**;[5] **[4]** that **Patrick King** has never produced any "written decision" signed by, or any other

document identifying, the chairman and members of a Screening Panel who conducted a review as

required by **SCR §105(1)(c)**; **[5]** that **Patrick King** falsely fabricated and asserted that he had obtained

the "unanimous approval" of a Screening Panel pursuant to **SCR §105(1)(a)**; **[6]** that **Patrick King**'s

failure to provide the "written decision" of the Screening Panel that conducted the review required by

---

[4] **SCR 105(1)(c)** provides in pertinent part: "Except in matters requiring dismissal because the grievance is frivolous or clearly unfounded on its face, or falls outside the disciplinary board's jurisdiction, or is resolved informally pursuant to Rule 104(2), a panel shall not make a finding of misconduct until the attorney has been given an opportunity to respond to the allegations against the attorney." - (underline added)

[5] **SCR 103(8)** states in pertinent part: "8. The chair[] of the ... screening panel[] shall ... sign all documents on behalf of the panel to carry out the provisions of Rule[] ... 103(6)." - (underline added)

**SCR 103(6)** states in pertinent part: "6. The chair of each disciplinary board shall designate ... screening panels of three members, at least two of whom shall be members of the bar,..."

**SCR 105(1)(a)** states in pertinent part: "(a) Investigation and screening panel review.   * * * At the conclusion of an investigation of a grievance file, bar counsel shall recommend in writing dismissal with or without prejudice, referral to diversion or mentoring pursuant to Rule 105.5, a letter of caution, a private reprimand, or the filing of a written complaint for formal hearing. The recommendation shall be promptly reviewed by a screening panel. A screening panel shall consist of three members of the disciplinary board, appointed by the chair in accordance with Rule 103(6). Two of the three reviewers must be members of the bar. By majority vote they shall approve, reject, or modify the recommendation, or continue the matter for review by another screening panel."

1  SCR §105(1)(a) concealed the names of the members of the Screening Panel, and thus prevented

2  **Breck** from being able to determine whether any members of the Screening Panel were also appointed

3  to the Hearing Panel, or that the Hearing Panel was composed of persons entirely different from the

4  Screening Panel as required by **SCR §105(1)(c)**;[6] **[7]** that **Patrick King**'s actions alleged herein

5  deprived **Breck** of "Due Process" and "Equal Protection" by subverting the Screening Panel function,

6  which **Breck** alleges (on information and belief) is intended to provide the first line of defense against

7  over-reaching by an over-zealous Bar Counsel, such as **Patrick King**; and **[8]** that **Patrick King**'s

8  actions in subverting the Screening Panel function were permitted, facilitated and caused by and are

9  directly attributable to the complete lack of adequate rules, policies and procedures, amounting to

10  massive internal control failures at the State Bar in violation of **Breck**'s rights to "Due Process" and

11  "Equal Protection" under the 14th Amendment to the U.S. Constitution.

12  58.   Therefore **Breck** alleges that **Patrick King**'s intentional or negligent failure to submit accurate

13  information to a Screening Panel deprived **Breck** of "Due Process" and "Equal Protection" and caused

14  irreparable damages and injury to **Breck** in his reputation, standing in the community, credibility before

15  the Hearing Panel, and caused or contributed to the decision of the Hearing Panel to recommend

16  "disbarment" of **Breck**.

17  59.   And therefore, **Breck** alleges that the Decision of the Hearing Panel was issued in violation of

18  **Breck**'s rights to "Due Process" and/or "Equal Protection" under the 14th Amendment to the U.S.

19  Constitution, and is therefore void and unenforceable and of no force or effect whatsoever.

20  60.   And further, **Breck** alleges that the actions of **Patrick King**, **David Clark**, **Janeen Isaacson**,

21  **Roger Doyle**, and all other co-conspirators who joined in or contributed to the conspiracy to damage

22  **Breck** and/or **TPI** alleged herein, are jointly and severally liable to **Breck** for damages.

23

24  [6] SCR 105(1)(c) provides in pertinent part: "A screening panel member who has reviewed bar counsel's recommendation on a grievance shall not be appointed to an informal or formal hearing panel for any subsequent and related proceedings."

61.     And further, **Breck** alleges that the actions of **Patrick King** and his co-conspirators continue to cause irreparable damage and harm to **Breck**, financially and in his reputation and standing in the community from which **Breck** has been forced to withdraw, and that **Breck** is entitled to Equitable Relief in the form of a Preliminary Injunction and Permanent Injunction precluding the State Bar of Nevada, and each and every co-conspirator identified herein, or hereafter, from taking any other, further or additional action of any kind against **Breck** in relation to the matters alleged herein.

62.     And **Breck** further alleges that this violation of **Breck**'s Civil Rights to "Due Process" and "Equal Protection", when considered in relation to the other violations of **Breck**'s Civil Rights alleged herein, establishes a pattern of violations of **Breck**'s Civil Rights that establishes a method and manner of operating the State Bar of Nevada, which evidences the attitude that Bar counsel (and those who aid, abet, assist, act in concert or co-conspire with Bar counsel) are "above the law" and not required to comply with the same rules (including specifically but without limitation, "Due Process" and "Equal Protection") as apply to other agencies and individuals who do not operate under the authority and protection of the Nevada Supreme Court.

**II.    THE FAILURE TO SPECIFY THE PROCEDURES FOR SELECTING THE MEMBERS OF A SCREENING PANEL OR HEARING PANEL IS A "PER SE" VIOLATION OF "DUE PROCESS" AND "EQUAL PROTECTION" IN VIOLATION OF THE 14TH AMENDMENT TO THE U.S. CONSTITUTION - BECAUSE IT PERMITS BAR COUNSEL OR THE CHAIRMAN OF THE DISCIPLINARY BOARD TO 'SPECIALLY SELECT' THE MEMBERS OF THE SCREENING PANEL THAT ARE MOST LIKELY TO PRODUCE THE DECISION DESIRED BY BAR COUNSEL OR THE CHAIRMAN OF THE DISCIPLINARY BOARD**

63.     The provisions of the Supreme Court Rules (the "**SCR**") that pertain to the selection of Hearing Panels and Screening Panels (i.e., **Rule 103(6)**-), in pertinent part provides only that

> "The chair of each disciplinary board shall designate hearing panels of five or three members, one of whom shall be a non-lawyer, and screening panels of three members, at least two of whom shall be members of the bar, as the chair believes are necessary to preside over proceedings pending in the district. The chair shall assign hearing cases to hearing panels and designate a lawyer as chair of each. * * * "

64.     No other provision in the Supreme Court Rules specifies the manner of selection of persons for

the chairman of the Disciplinary Board to "designate", or establishes, requires or prohibits: [1] that the

selection process may, shall or shall not, be done "in advance" of the need, or only as the need arises,

for a particular panel to assemble itself to consider or take action on a particular matter; [2] that the

selection process may, shall or shall not, be by "random selection" or by "personal preference"; [3] that

the selection process may, shall or shall not, involve any input from Bar counsel; [4] that the selection

process may, shall or shall not, consider the desires of Bar counsel for particular persons to serve on a

particular panel; [5] that the selection process may, shall or shall not, take into account, weigh or

consider, any special knowledge or expertise of the person being considered for "selection" or

"designation"; [6] that the selection process may, shall or shall not, be altered or changed or adjusted

periodically, or as circumstances suggest or require; [7] that the selection process may, shall or shall

not, be repeated periodically within a specified time frame, such as annually, or biennially, or as

needed; [8] that the selection process may, shall or shall not, select persons who are, have been, or will

be, selected or designated to serve on one or more other panels; [9] that the selection process may, shall

or shall not, select more persons than the Chairman of the Disciplinary Board is required to "designate"

to a particular hearing or screening panel; or [10] that the selection process may, shall or shall not, limit

the ability of the Chairman of the Disciplinary Board to "designate" other persons than the selection

process has selected to serve on a hearing panel or screening panel.

65.     On information and belief, **Breck** alleges that the failure to establish mandatory rules governing

the manner of selection of Screening Panels and Hearing Panels permits the Chairman of the

Disciplinary Board, either with or without specific input from Bar counsel, to select persons to serve on

a Screening Panel or a Hearing Panel who are more willing than others to conform with the desires of

Bar counsel and/or to comply with the desires of Bar counsel out of fear or complacency (regardless of

the merits of the case under consideration), thus rendering the purported hearing ineffective to render or

deliver "Due Process" and more likely to be merely a "rubber stamp" formality by persons who are pre-

1   disposed to adopt Bar counsel's perspective, or who are afraid to make findings or reach conclusions

2   that are inconsistent with Bar counsel's desired outcome in a particular case.

3   **66.**    Therefore, on information and belief, **Breck** alleges that the manner of selecting and designating

4   persons to serve on a Screening Panel or Hearing Panel, fails to comport with or to satisfy the demands

5   of "Due Process" and "Equal Protection" in violation of the 14th Amendment to the U.S. Constitution,

6   in that these systemic failures of the Hearing processes of the State Bar of Nevada cause the system to

7   fail to deliver "Due Process" or "Equal Protection" in the application of the laws, and that for these

8   reasons, the result of these defective processes, the evidence a massive failures of  internal control

9   systems, a lack of adequate policies, rules and procedures, the inability to select proper personnel and to

10   train and maintain standards of performance for such personnel have permitted the State Bar of Nevada

11   to devolve into the equivalent of a mafia protection organization, with little or no regard for the laws

12   under which they purport to operate or the rights of the persons upon whom they focus.

13   **67.**    And **Breck** further alleges that this violation of **Breck**'s Civil Rights to "Due Process" and

14   "Equal Protection", when considered in relation to the other violations of **Breck**'s Civil Rights alleged

15   herein, establishes a pattern of violations of **Breck**'s Civil Rights that establishes a method and manner

16   of operating the State Bar of Nevada, which evidences the attitude that Bar counsel (and those who aid,

17   abet, assist or act in concert or co-conspire with Bar counsel) are "above the law" and not required to

18   comply with the same rules (including specifically but without limitation, "Due Process" and "Equal

19   Protection") as apply to other agencies and individuals who do not operate under the authority and

20   protection of the Nevada Supreme Court.

21   **III.    THE FAILURE TO IDENTIFY THE MEMBERS OF THE SCREENING PANEL IS A "PER SE"
       IRREPARABLE VIOLATION OF "DUE PROCESS" AND "EQUAL PROTECTION" IN VIOLATION OF**

22   **THE 14TH AMENDMENT TO THE U.S. CONSTITUTION - BECAUSE IT PERMITS THE SCREENING
       PANEL TO OPERATE IN SECRET AND VIOLATES THE STANDARDS OF THE NEVADA "OPEN**

23   **MEETING LAWS"**

24   **68.**    The Supreme Court Rules (the "SCR"), at **SCR Rule 105(1)(a)** states in pertinent part that:

"At the conclusion of an investigation of a grievance file, <u>bar counsel shall recommend in writing</u> dismissal with or without prejudice, referral to diversion or mentoring pursuant to Rule 105.5, a letter of caution, a private reprimand, or the filing of a <u>written complaint for formal hearing.  The recommendation shall be promptly reviewed by a screening panel.</u> * * * <u>By majority vote</u> they shall approve, reject, or modify the recommendation, or continue the matter for review by another screening panel." - (underline added)

69.     And, **SCR Rule 105(1)(c)**, specifies in pertinent part:

"(c) * * * <u>A screening panel member who has reviewed bar counsel's recommendation on a grievance shall not be appointed to an informal or formal hearing panel</u> for any subsequent and related proceedings. Except in matters requiring dismissal * * * or is resolved informally pursuant to rule 104(2), <u>a panel shall not make a finding of misconduct until the attorney has been given an opportunity to respond to the allegations against the attorney</u>." - (underline added)

70.     And, **SCR Rule 103(8)**, specifies that:

"8. The <u>chairs</u> of the * * * <u>screening panels</u> shall * * * <u>sign all documents</u> on behalf of the panel to carry out the provisions of Rules * * * and 103(6)." - (underline added)

71.     However, notwithstanding multiple references to the role of the screening panel in the Supreme Court Rules, **Patrick King** has failed to produce any document that was signed by any member of a Screening Panel, or any document identifying the names of the members of the Screening Panel who reviewed his "written recommendation" that the State Bar file a "written complaint for formal hearing" or any notice issued by the screening panel to permit **Breck** to have "an opportunity to respond to the allegations against the attorney".

72.     Therefore, on information and belief, **Breck** alleges that **Patrick King** neglected to take the steps required by the Supreme Court Rules, to obtain review by a Screening Panel, for the Screening Panel to give **Breck** the mandated "opportunity to respond to the allegations against the attorney", and for the Screening Panel members to be identified to **Breck**, so that **Breck** could ascertain that none of the members of the Screening Panel were appointed to the formal Hearing Panel.

73.     And, therefore, **Breck** alleges that the failure of **Patrick King** to take the prescribed steps to obtain review by a Screening Panel, and serve **Breck** with a copy of the Screening Panel "written decision", and to disclose the members of the Screening Panel to **Breck**, so that **Breck** could verify that

the Screening Panel members were not also on the Hearing Panel, in accordance with the provisions of the Supreme Court Rules, were willful, wanton, malicious and intentional or negligent violations of **Breck**'s Civil Rights to "Due Process" and "Equal Protection" in violation of the 14th Amendment to the U.S. Constitution, for the purpose of ram-rodding **Breck** through the purported Hearing Process, in order to reach the desired end of 'putting **Breck** and **TPI** 'out of business' as quickly as possible'.

**74.**    In addition, Breck alleges that the Screening Panel violated the Open Meeting Laws by failing to provide the required Notices of the Meetings pursuant to **NRS 241.020**, **NRS 241.030**, **NRS 241.033 & NRS 241.034** prior to the Meeting or Hearing before the Screening Panel.

**75.**    And **Breck** further alleges that this violation of **Breck**'s Civil Rights to "Due Process" and "Equal Protection", when considered in relation to the other violations of **Breck**'s Civil Rights alleged herein, establishes a pattern of violations of **Breck**'s Civil Rights that establishes a method and manner of operating the State Bar of Nevada, which evidences the attitude that Bar counsel (and those who aid, abet, assist, act in concert or co-conspire with Bar counsel) are <u>"above the law"</u> and not required to comply with the same rules (including specifically but without limitation, "Due Process" and "Equal Protection") as apply to other agencies and individuals who do not operate under the authority and protection of the Nevada Supreme Court.

**IV.    THE FAILURE TO SPECIFY THAT ALL AVAILABLE INFORMATION PERTAINING TO THE GRIEVANCE(S) BE SUBMITTED TO THE SCREENING PANEL IS A "PER SE" IRREPARABLE VIOLATION OF "DUE PROCESS" AND "EQUAL PROTECTION" IN VIOLATION OF THE 14TH AMENDMENT TO THE U.S. CONSTITUTION - BECAUSE IT PERMITS BAR COUNSEL TO PROVIDE ONLY THE INFORMATION THAT BAR COUNSEL WANTS TO SHOW, IT DEPRIVES THE SCREENING PANEL OF THE ABILITY TO DETERMINE "PROBABLE CAUSE" IN A MANNER THAT IS INDEPENDENT AND IMPARTIAL, AND THUS UNDERMINES THE FUNCTIONAL INDEPENDENCE AND IMPARTIALITY OF THE SCREENING PANEL**

**76.**    In addition to the failure to follow the written procedures specified in the Supreme Court Rules, **Patrick King** went one step further; he made sure that the response provided by **Breck** and **TPI** to **Patrick King** and **David Clark** at the State Bar, more than one week before the formal Complaint was

1    filed, was not provided to the Screening Panel.  Thus, **Patrick King** and **David Clark** sought to further

2    restrict the Civil Rights of **Breck** and **TPI** so that **King** and **Clark** could be more certain to obtain the

3    desired result, i.e., a referral to a formal Hearing Panel, without all that 'pesky' "Due Process" stuff, and

4    "Equal Protection" nonsense, that would just slow down the process of getting **Breck** and **TPI** put 'out

5    of business'.

6    **77.**     That the applicable Supreme Court Rules only imply, and do not specifically state, that Bar

7    counsel has the obligation to provide all information available to the Screening Panel, made it easier for

8    **King** and **Clark** to ignore this fundamental "Due Process" issue, further demonstrates how the systemic

9    failure of control systems that were in place (of which there were few), were permitted to be over-

10   looked or ignored, intentionally or negligently, in the rush to obtaining the desired judgment that **Breck**

11   was 'guilty' of untold violations.

12   **78.**     Therefore, **Breck** alleges (on information and belief) that the massive failure of internal controls

13   was aided and abetted by the negligence of the State of Nevada in failing to develop, publish and train

14   personnel at the State Bar of Nevada (including Bar counsel) in the standards and procedures that must

15   be followed in order to properly conduct a valid investigation, and protect and preserve the civil rights

16   of the parties that the State Bar chose to focus its attention on, all to the damage and detriment of

17   **Breck**, including the damage to **Breck**'s reputation and loss of standing in the community, and the

18   destruction of **Breck**'s livelihood and loss to many of the **TPI** clients, caused by **King** and **Clark** in the

19   pursuit of the political agenda that **King** and **Clark** chose to pursue.

20   **79.**     And therefore, **Breck** alleges that the failure of the written Supreme Court Rules governing the

21   State Bar of Nevada investigation and hearing process to specify with particularity the rights of **Breck**

22   and others similarly situated, and the procedures to be followed to make sure that the Civil Rights of all

23   persons investigated by State Bar personnel are respected and protected during the investigation and

24   hearing process, is a "Per Se" irreparable violation of Due Process and Equal Protection in violation of

1   the 14th Amendment to the U.S. Constitution.

2   **80.**    And **Breck** further alleges that this violation of **Breck**'s Civil Rights to "Due Process" and

3   "Equal Protection", when considered in relation to the other violations of **Breck**'s Civil Rights alleged

4   herein, establishes a pattern of violations of **Breck**'s Civil Rights that establishes a method and manner

5   of operating the State Bar of Nevada, which evidences the attitude that Bar counsel (and those who aid,

6   abet, assist, act in concert or co-conspire with Bar counsel) are "above the law" and not required to

7   comply with the same rules (including specifically but without limitation, "Due Process" and "Equal

8   Protection") as apply to other agencies and individuals who do not operate under the authority and

9   protection of the Nevada Supreme Court.

10  **V.    THE FAILURE TO PERMIT RESPONDENT(S) TO SUBMIT INFORMATION TO THE SCREENING
        PANEL IS A "PER SE" IRREPARABLE VIOLATION OF "DUE PROCESS" AND "EQUAL
11      PROTECTION" IN VIOLATION OF THE 14TH AMENDMENT TO THE U.S. CONSTITUTION -
        BECAUSE IT DEPRIVES THE SCREENING PANEL OF THE ABILITY TO MAKE AN INFORMED AND
12      IMPARTIAL DETERMINATION**

13  **81.**    As alleged above, the last sentence of SCR 105(1)(c) mandates that: "a panel shall not make a

14  finding of misconduct until the attorney has been given an opportunity to respond to the allegations

15  against the attorney." And, in context, it seems clear that this prohibition is intended to apply to both

16  the Screening Panel and the Hearing Panel.

17  **82.**    However, since **Patrick King** did not follow the written rules, but instead took every shortcut,

18  neither **Breck** not **TPI** was ever permitted to make any response to the Screening Panel, before the

19  decision was made to proceed to a formal Hearing Panel.  In addition to the decision of **Patrick King**

20  and **David Clark** to conceal that **Breck** and **TPI** had submitted a substantial response (more than a

21  week before the date on the formal Complaint) to the questions and issues that attorney Cliff Young

22  (representing **Breck** and **TPI** at that time) had been able to identify from several lengthy conversations

23  with **Patrick King**, this assured **King** and **Clark** that the Screening Panel would not hear anything

24  from **Breck** or **TPI**, but would only hear what **King** and **Clark** wanted the Screening Panel to hear.

83.     This agenda of **King** and **Clark**, however, deprived **Breck** and **TPI** of "Due Process" by precluding the Screening Panel from having the opportunity to hear any response from **Breck** and **TPI**, even though **Breck** and **TPI** had in fact submitted a detailed response, and deprived **Breck** and **TPI** of "Equal Protection" because others similarly situated are routinely permitted to provide both written and verbal responses to the panel charged with determining whether there is "probable cause" to continue to a formal Hearing Panel.

84.     And, because the Screening Panel was unable to hear any response from **Breck** or **TPI**, the Screening Panel function (presumably to determine if "probable cause" existed to establish a formal Hearing Panel to hear the matter), was subverted and prevented from performing its proper functions, which was a "Per Se" irreparable violation of "Due Process" and "Equal Protection" in violation of the 14th Amendment to the U.S. Constitution.

85.     And **Breck** further alleges that this violation of **Breck's** Civil Rights to "Due Process" and "Equal Protection", when considered in relation to the other violations of **Breck's** Civil Rights alleged herein, establishes a pattern of violations of **Breck's** Civil Rights that establishes a method and manner of operating the State Bar of Nevada, which evidences the attitude that Bar counsel (and those who aid, abet, assist, act in concert or co-conspire with Bar counsel) are <u>"above the law"</u> and not required to comply with the same rules (including specifically but without limitation, "Due Process" and "Equal Protection") as apply to other agencies and individuals who do not operate under the authority and protection of the Nevada Supreme Court.

VI.     **THE FAILURE TO REQUIRE THE SCREENING PANEL DECISION BE SIGNED BY ALL OF THE MEMBERS OF THE SCREENING PANEL REFLECTING THEIR CONCURRENCE OR DISSENT FROM THE DECISION OF THE SCREENING PANEL IS A "PER SE" IRREPARABLE VIOLATION OF "DUE PROCESS" AND "EQUAL PROTECTION" IN VIOLATION OF THE 14TH AMENDMENT TO THE U.S. CONSTITUTION - BECAUSE IT PERMITS THE STRONGER PERSONALITIES TO DISREGARD AND OVER-RIDE THE WEAKER PERSONALITIES OF THE MEMBERS ON THE SCREENING PANEL WITHOUT PROVIDING AN ADMINISTRATIVE TOOL FOR EQUALIZING THE VOTING POWER OF THE MEMBERS OF THE SCREENING PANEL - AND PERMITS VOTING BY ACQUIESCENCE**

86.   **SCR 105(1)(a)** provides in pertinent part:

"At the conclusion of an investigation of a grievance, bar counsel shall recommend in writing dismissal with or without prejudice, referral to diversion or mentoring pursuant to Rule 105.5, a letter of caution, a private reprimand, or the filing of a written complaint for formal hearing. The recommendation shall be promptly reviewed by a <u>screening panel</u>. * * * By majority vote they shall approve, reject, or modify the recommendation, or continue the matter for review by another panel." - (<u>underline</u> added)

87.   And, **SCR 103(8)** provides that:

"The <u>chairs</u> of the * * * <u>screening panels</u> <u>shall</u> * * * <u>sign all documents on behalf of the panel</u> to carry out the provisions of Rules 102(6), 102(7), and 103(6)." - (<u>underline</u> added)

88.   And **SCR 102(6), 102(7)**, and **103(6)**, as pertaining to a "screening panel", state:

"[102(6) - pertains only to Hearing Panels] * * *"

"[102(7)] 7. Private reprimand with or without conditions, including but not limited to restitution, a fine of up to $1,000, or both a reprimand and a fine, imposed by a <u>screening panel</u> of the disciplinary board pursuant to Rule 105(1)."

"[103(6)] 6. The chair of each disciplinary board shall designate hearing panels of five or three members, one of whom shall be a non-lawyer, and <u>screening panels</u> of three members, at least two of whom shall be members of the bar, as the chair believes are necessary to preside over proceedings pending in the district. * * * [The balance of 103(6) pertains only to Hearing Panels, and not to Screening Panels.]"

89.   However (on information and belief), no provision of the Supreme Court Rules specifically requires that each of the members of a Screening Panel must signify their "vote" in writing, whether in favor or against the decision reached by the majority of the Screening Panel. The omission of the requirement that each person hearing and determining facts and law, or issuing an order or determination, must sign the document to evidence their concurrence or dissent from the decision, permits persons with stronger personalities to exercise undue influence on persons with less strong personalities, and therefore permits decisions to be made by mere "acquiescence", rather than a "positive intention".

90.   Decisions by acquiescence are a violation of "Due Process" and "Equal Protection" because they deprive the petitioners and/or respondents in any hearing of the right "to hold accountable" the persons

1    making the decisions, for the decisions they have made, and thus weakens and subverts democratic and

2    "Due Process" values by encouraging "acquiescence" in the face of challenging issues.

3    **91.**      Therefore, **Breck** alleges (on information and belief) that the failure of **King** and **Clark** to pro-

4    duce a decision "in writing" that is signed by the members of the Screening Panel, and stating whether

5    they voted in favor of, or against, the action represented in the decision document, is a "Per Se" irrepar-

6    able violation of "Due Process" and "Equal Protection" in violation of the 14th Amendment to the U.S.

7    Constitution, to the same extent that a rule permitting a decision made by a Panel of Judges in any other

8    setting, to be signed by only one of the Judges, without any indication of whether each of the other

9    Judges on the Panel concurred or dissented from the decision announced by the single signing Judge.

10   **92.**      Therefore, **Breck** alleges (on information and belief) that the failure to require all members of a

11   Screening Panel or a Hearing Panel to sign the "Decision" of the Panel, deprives **Breck** of "Due

12   Process" and "Equal Protection" for the same reasons that Adjudicators sitting as Judges in the Courts

13   of the State of Nevada, and in other States of the United States, are required to sign their "Decisions", in

14   order to be accountable for their "official actions", and to not permit the adjudicators to merely

15   "acquiesce" in the decision of others.

16   **93.**      And **Breck** further alleges that this violation of **Breck**'s Civil Rights to "Due Process" and

17   "Equal Protection", when considered in relation to the other violations of **Breck**'s Civil Rights alleged

18   herein, establishes a pattern of violations of **Breck**'s Civil Rights that establishes a method and manner

19   of operating the State Bar of Nevada, which evidences the attitude that Bar counsel (and those who aid,

20   abet, assist, act in concert or co-conspire with Bar counsel) are <u>"above the law"</u> and not required to

21   comply with the same rules (including specifically but without limitation, "Due Process" and "Equal

22   Protection") as apply to other agencies and individuals who do not operate under the authority and

23   protection of the Nevada Supreme Court.

24   //

**VII.** **The Failure of the Supreme Court Rules (the "SCR") to Explicitly Require that the Screening Panel Must Determine Whether "Probable Cause" Exists for Filing a Formal Complaint after Full Opportunity for Respondent to Inspect the Evidence in re: Whether Probable Cause Exists to File a Formal Complaint, is a "Per Se" Irreparable Violation of "Due Process" and "Equal Protection" in Violation of the 14th Amendment to the U.S. Constitution - Because it Permits Bar Counsel to Subvert and Deprive Persons Charged by Bar Counsel of the Protections Otherwise Available from a Preliminary Review by a Screening Panel as Illustrated by the Nevada Commission on Judicial Discipline Procedural Rules**

**94.**   **SCR Rule 105(1)(a)** of the Supreme Court Rules require that Bar counsel submit his recommendation for review by a Screening Panel; and **SCR Rule 105(1)(c)** arguably requires that:

"[A] [screening] panel shall not make a finding of misconduct until the attorney has been given an opportunity to respond to the allegations against the attorney." - **SCR 105(1)(a)** last sentence

**95.**   However , the Nevada Commission on Judicial Discipline requires that a preliminary determination of "probable cause" must be made, after full hearing and opportunity for the accused defendant-respondent to examine all of the evidence against him/her, to be heard, to produce evidence and witnesses, and to contest the validity of the evidence that the 'prosecutor' presents, as well as any other factors that are to be determined in the "probable cause" hearing:

"In preparing to oppose a determination of probable cause, the respondent has the right to inspect all records of the commission relating to the disciplinary action against the respondent and to be fully advised as to the contents of the administrative record considered by the commission determining that there was sufficient reason for probable cause. Privileged communications and work product of the commission's counsel are not subject to inspection. To the extent practicable, the respondent shall be supplied with all records of the commission subject to inspection along with service of the complaint." - Procedural Rules of the Nevada Commission on Judicial Discipline - **Rule 12(4)** at: http://judicial.state.nv.us/proceduralrulesncjd3new.htm.

**96.**   The failure of the Nevada Supreme Court Rules to provide an opportunity for a similar protection of the Civil Rights of an attorney accused by Bar counsel, is a clear violation of "Due Process" and "Equal Protection" in violation of the 14th Amendment to the U.S. Constitution.

**97.**   However, **Breck** alleges that **Breck** was not informed: **[1]** of the intent of Bar counsel to submit a 'written recommendation' by Bar counsel to a Screening Panel; or **[2]** the substance of the 'written recommendation' to be submitted by Bar counsel to the Screening Panel; or **[3]** the date of such

1   submission by Bar counsel to the Screening Panel; or **[4]** that **Breck** had the opportunity to examine the

2   "evidence" against him, before such evidence was presented by Bar counsel to the Screening Panel; or

3   **[5]** that **Breck** had the right to appear and contest the validity of the evidence presented by Bar counsel

4   to the Screening Panel; or **[6]** that **Breck** had the right to representation by counsel in the preliminary

5   hearing before the Screening Panel; or **[7]** that the purpose of the preliminary hearing before the

6   Screening Panel was to determine whether there was "**Probable Cause**" for the Screening Panel to

7   recommend that the charges made by Bar counsel be heard before a formal Hearing Panel; or **[8]** that

8   the Screening Panel had the authority to recommend some lesser action, such as a "Private reprimand"

9   (**SCR Rule 102(7)**) or "Letter of caution" (**SCR Rule 102(8)**), or "dismissal with or without prejudice"

10  (**SCR Rule 105(1)(a)**), or "referral to diversion or mentoring" pursuant to Rule 105.5 (**SCR Rule

11  105(1)(a)**); or **[9]** that the Screening Panel was required to issue its decision in writing, signed by the

12  chair of the Screening Panel; or **[10]** that **Breck** was entitled to know the names of the members of the

13  Screening Panel, so that **Breck** could ascertain that none of the members of the Screening Panel were

14  appointed to the formal Hearing Panel.

15  **98.**     And therefore, **Breck** alleges that the failure of **Patrick King**, and those aiding, abetting, assisting

16  and/or conspiring with **Patrick King**, to inform **Breck** as alleged in the preceding paragraph was a "Per

17  Se" irreparable violation of **Breck**'s civil rights to "Due Process" and "Equal Protection" in violation of

18  the 14th Amendment to the U.S. Constitution; and that **Breck** suffered damages as a result thereof.

19  **99.**     And **Breck** further alleges that this violation of **Breck**'s Civil Rights to "Due Process" and

20  "Equal Protection", when considered in relation to the other violations of **Breck**'s Civil Rights alleged

21  herein, establishes a pattern of violations of **Breck**'s Civil Rights that establishes a method and manner

22  of operating the State Bar of Nevada, which evidences the attitude that Bar counsel (and those who aid,

23  abet, assist, act in concert or co-conspire with Bar counsel) are "above the law" and not required to

24  comply with the same rules (including specifically but without limitation, "Due Process" and "Equal

1    Protection") as apply to other agencies and individuals who do not operate under the authority and

2    protection of the Nevada Supreme Court.

3    **VIII.  THE SUBMISSION OF <u>FALSE INFORMATION</u> TO THE SCREENING PANEL (E.G., THE STATEMENT**
     **THAT BRECK AND TPI FAILED TO RESPOND TO STATE BAR INQUIRIES) IS A "PER SE"**
4    **IRREPARABLE VIOLATION OF "DUE PROCESS" AND "EQUAL PROTECTION" IN VIOLATION OF**
     **THE 14TH AMENDMENT TO THE U.S. CONSTITUTION**

5
     **100.**   Supreme Court Rule ("SCR") Rule 105(1)(a) & (c) provides in pertinent part:
6
            "(1) Investigation. ¶ (a) Investigation and Screening Panel review. * * * At the conclusion of an
7           investigation of a grievance filed, bar counsel shall recommend in writing dismissal with or
            without prejudice, referral to diversion or mentoring pursuant to Rule 105.5, a letter of caution, a
8           private reprimand, or the filing of a written complaint for formal hearing. The recommendation
            shall be promptly reviewed by a screening panel. * * * By majority vote they shall approve, reject,
9           or modify the recommendation, or continue the matter for review by another screening panel."

10          "(c) Hearing. * * * A screening panel member who has reviewed bar counsel's recommendation
            on a grievance shall not be appointed to an informal or formal hearing panel for any subsequent
11          and related proceedings. Except in matters requiring dismissal because the grievance is frivolous
            or clearly unfounded on its face, or falls outside of the disciplinary board's jurisdiction, or is
12          resolved informally pursuant to Rule 104(2), a panel shall not make a finding or misconduct until
            the attorney has been given an opportunity to respond to the allegations against the attorney."

13   **101.**   No other provision in the SCR addresses exactly what Bar counsel is supposed to provide to the

14   Screening Panel, but (on information and belief) the absence of a strict listing of items to be delivered

15   to the Screening Panel for review in relation to the statement that "bar counsel shall recommend in

16   writing", <u>does not authorize Bar counsel to misrepresent the evidence available for the Screening Panel</u>

17   <u>to review</u>.

18   **102.**   Therefore, on information and belief, **Breck** alleges that Bar counsel falsely represented to the

19   Screening Panel, contrary to the meaning and effect of the Supreme Court Rules (including specifically

20   but without limitation **SCR Rule 105**), <u>that **Breck** and **TPI** had not responded to Bar counsel's</u>

21   <u>inquiries to **Breck** and **TPI**</u>, which representation to the Screening Panel was false when made, and was

22   known to **King** and **Clark** to be false when made to the Screening Panel, - because attorney Cliff

23   Young (NV Bar 1233), who then represented **Breck** and **TPI** in relation to the State Bar's inquiries, had

24

1   delivered a substantial response with many exhibits to **King** on October 13, 2011, and **Breck** had

2   delivered the same documents to **Clark**, along with an additional 10 copies of the response from **Breck**

3   and **TPI** for the express purpose of providing sufficient copies to the State Bar to be delivered to the

4   members of a Screening Panel, as well as for delivery to a Hearing Panel, if/when a Hearing Panel was

5   "assigned"; and **Breck** further alleges (on information and belief) that the substantial response

6   submitted by attorney Cliff Young to **Patrick King** in person on October 13, 2011, and the TEN (10)

7   additional copies of the Cliff Young response delivered by Fed Ex to the office of **David Clark**, Bar

8   counsel in Las Vegas, on or about October 14, 2011, for delivery to Screening Panel & Hearing Panel,

9   if/when appointed, were withheld and not delivered to either Panel as requested by **Breck** and **TPI**,

10  contrary to the false statement and representation by **Patrick King** that **Breck** and **TPI** had not

11  responded to the Bar's inquiry.

12  **103.**    Therefore, **Breck** alleges that such false statements and representations were a violation of

13  **Breck**'s Civil Rights to "Due Process" and "Equal Protection" in violation of the 14th Amendment to

14  the U.S. Constitution, that such false statements and representations were made willfully, maliciously,

15  fraudulently, intentionally and negligently, for the specific purpose of causing damage and detriment to

16  **Breck**, individually, by destroying his **TPI** 'business', and as rapidly as possible, putting **Breck** (and

17  **TPI**) "out of business", so that **Breck** (working with Nevada Bar attorneys through **TPI**) would be

18  unable to continue to provide any useful services through **TPI**.

19  **104.**    And **Breck** further alleges that this violation of **Breck**'s Civil Rights to "Due Process" and

20  "Equal Protection", when considered in relation to the other violations of **Breck**'s Civil Rights alleged

21  herein, establishes a pattern of violations of **Breck**'s Civil Rights that establishes a method and manner

22  of operating the State Bar of Nevada, which evidences the attitude that Bar counsel (and those who aid,

23  abet, assist, act in concert or co-conspire with Bar counsel) are <u>"above the law"</u> and not required to

24  comply with the same rules (including specifically but without limitation, "Due Process" and "Equal

1  Protection") as apply to other agencies and individuals who do not operate under the authority and

2  protection of the Nevada Supreme Court.

3  **IX.   THE INTENTIONAL CONCEALMENT OF EVIDENCE FROM THE SCREENING PANEL (E.G., THE**

**SUBSTANTIAL RESPONSE DELIVERED BY BRECK & TPI TO BAR COUNSEL KING MORE THAN**

4  **ONE WEEK PRIOR TO THE DATE OF THE FORMAL "COMPLAINT") IS A "PER SE"**

**IRREPARABLE VIOLATION "DUE PROCESS" AND "EQUAL PROTECTION" IN VIOLATION OF**

5  **THE 14TH AMENDMENT TO THE U.S. CONSTITUTION**

6  **105.** Further, **Breck** alleges that, in addition to falsely representing to the Screening Panel that **Breck**

7  and **TPI** had not responded to the Bar's inquiries (as alleged above), **Patrick King** and **David Clark**

8  further violated the Civil Rights of **Breck**, by willfully, wantonly, maliciously, intentionally and

9  negligently, concealing the materials that comprised the substantial 'response' to the Bar's inquiries, and

10  denying that any such 'response' had been received from **Breck**, thus adding "fraudulent concealment",

11  and related violations of the Rules of Professional Conduct, to the list of violations of the Civil Rights

12  of **Breck** that were committed by **King, Clark**, and those who aided, abetted, assisted, acted in concert

13  or co-conspired with them, in violation of **Breck**'s Civil Rights to "Due Process" and "Equal

14  Protection" in violation of the 14th Amendment to the U.S. Constitution.

15  **106.** And **Breck** further alleges that this violation of **Breck**'s Civil Rights to "Due Process" and

16  "Equal Protection", when considered in relation to the other violations of **Breck**'s Civil Rights alleged

17  herein, establishes a pattern of violations of **Breck**'s Civil Rights that establishes a method and manner

18  of operating the State Bar of Nevada, which evidences the attitude that Bar counsel (and those who aid,

19  abet, assist, act in concert or co-conspire with Bar counsel) are "above the law" and not required to

20  comply with the same rules (including specifically but without limitation, "Due Process" and "Equal

21  Protection") as apply to other agencies and individuals who do not operate under the authority and

22  protection of the Nevada Supreme Court.

23  //

24  //

**X.    THE FAILURE TO OBTAIN A WRITTEN DECISION SIGNED BY THE SCREENING PANEL MEMBERS IS A "PER SE" IRREPARABLE VIOLATION OF THE 14TH AMENDMENT TO THE U.S. CONSTITUTION**

107.    Further, **Breck** alleges that **King** failed to obtain a written decision signed by the Chairman of the Screening Panel and/or the members of the Screening Panel, as required by **SCR 103(8)** and "Due Process", in violation of his duty to obtain such a written decision, which further violated **Breck's** Civil Rights to "Due Process" and "Equal Protection" in violation of the 14th Amendment to the U.S. Constitution.

108.    And **Breck** further alleges that this violation of **Breck's** Civil Rights to "Due Process" and "Equal Protection", when considered in relation to the other violations of **Breck's** Civil Rights alleged herein, establishes a pattern of violations of **Breck's** Civil Rights that establishes a method and manner of operating the State Bar of Nevada, which evidences the attitude that Bar counsel (and those who aid, abet, assist, act in concert or co-conspire with Bar counsel) are "above the law" and not required to comply with the same rules (including specifically but without limitation, "Due Process" and "Equal Protection") as apply to other agencies and individuals who do not operate under the authority and protection of the Nevada Supreme Court.

**XI.    PERMITTING OR REQUIRING J. THOMAS SUSICH TO ACT SIMULTANEOUSLY AS 'ADJUDICATOR' AND AS 'PROSECUTOR' IS A "PER SE" IRREPARABLE VIOLATION OF "DUE PROCESS" AND "EQUAL PROTECTION" IN VIOLATION OF THE 14TH AMENDMENT TO THE U.S. CONSTITUTION**

109.    **Breck** alleges that **J. Thomas Susich** simultaneously held the position of "adjudicator", as Chairman of the Northern Nevada Disciplinary Board, under **SCR §103(5)**,[7] and the position of "Prosecutor-Petitioner", as Chairman of the Northern Nevada Disciplinary Board required to sign the

---

[7] SCR §103(5) provides in pertinent part: "5. The chair of each disciplinary board shall preside over all motions or other requests relating to pending proceedings until such time as a hearing panel is designated to preside over the proceeding, as provided in Rule 103(6)."

1    **PETITION FOR TEMPORARY SUSPENSION PURSUANT TO SCR 102(4)(a)**,[8] which was

2    prepared by Bar Counsel and filed with the Supreme Court of the State of Nevada on or about

3    **November 22, 2011** - a true copy of which PETITION with all EXHIBITS attached thereto is attached

4    as **EXHIBIT 'G'** and incorporated herein by this reference as though fully set forth.

5    **110.**   The PETITION FOR TEMPORARY SUSPENSION PURSUANT TO SCR 102(4)(a) was

6    DENIED by ORDER DENYING PETITION entered on March 22, 2012 by the Nevada Supreme

7    Court, and a NOTICE IN LIEU OF REMITTITUR was thereafter entered by the Nevada Supreme

8    Court on April 16, 2012 - a true copy of which ORDER and NOTICE IN LIEU OF REMITTITUR are

9    attached as **EXHIBIT 'H'** and incorporated herein by this reference.

10   **111.**   During the period from **November 22, 2011** through **April 16, 2012**, while **J. Thomas Susich**

11   was the "prosecutor" (i.e., Petitioner) on the PETITION FOR TEMPORARY SUSPENSION

12   (**EXHIBIT 'H'**), **J. Thomas Susich** also ruled on and DENIED:

13        **[1] Breck's** MOTION TO DISMISS OR FOR MORE DEFINITE STATEMENT filed

14   November 14, 2011, DENIED by ORDER issued by **J. Thomas Susich** on January 18, 2012 - a true

15   copy of which MOTION and ORDER (with the said ORDER attached immediately in front of the

16   MOTION) is attached as **EXHIBIT 'I'** and incorporated herein by this reference;

17        **[2] Breck's** five (5) MOTION(S) IN LIMINE dated January 3, 2012, DENIED by ORDER

18   issued by **J. Thomas Susich** on March 15, 2012 - a true copy of which five (5) MOTIONS IN LIMINE

19   are attached as **EXHIBIT 'J'** and incorporated herein by this reference;

20        **[3] Breck's** NOTICE OF ELECTION BY RESPONDENT **BRECK** TO RESERVE

21   PEREMPTORY CHALLENGES UNTIL VOIR DIRE OF THE HEARING PANEL dated February 9,

---

[8] SCR §102(4)(a) provides in pertinent part: "4. Temporary suspension by the supreme court. ¶ (a)  On the petition of a disciplinary board, signed by its chair or vice chair, supported by an affidavit alleging facts personally known to the affiant, which shows that an attorney appears to be posing a substantial threat of serious harm to the public, the supreme court may order, with notice as the court may prescribe, the attorney's immediate temporary suspension or may impose other conditions upon the attorney's practice. * * *"

1   2012, STRIKEN by ORDER issued by **J. Thomas Susich** on March 15, 2012 - a true copy of which

2   NOTICE OF ELECTION ... TO RESERVE PEREMPTORY CHALLENGES is attached as **EXHIBIT**

3   **'K'** and incorporated herein by this reference - and a true copy of the ORDER issued by **J. Thomas**

4   **Susich** on March 15, 2012 - DENYING **Breck**'s five (5) MOTIONS IN LIMINE (**EXHIBIT 'J'**) and

5   STRIKING **Breck**'s NOTICE OF ELECTION ... TO RESERVE PEREMPTORY CHALLENGES

6   (**EXHIBIT 'K'**) is attached as **EXHIBIT 'L'** and incorporated herein by this reference.

7   **112.**   And, **J. Thomas Susich** issued the ORDER APPOINTING FORMAL HEARING PANEL on

8   April 9, 2012 - a true copy of which ORDER (with accompanying letter dated July 3, 2012, explaining

9   that **J. Thomas Susich** lost jurisdiction to issue further Orders in the case upon issuing the ORDER

10   APPOINTING FORMAL HEARING PANEL on April 9, 2012) is attached as **EXHIBIT 'M'** and

11   incorporated herein by this reference.

12   **113.**   By failing to recuse himself from continuing to act as "adjudicator" while also acting as the

13   "Prosecutor-Petitioner" of the PETITION FOR TEMPORARY SUSPENSION (**EXHIBIT 'H'**), **J.**

14   **Thomas Susich** violated **Breck**'s rights to "Due Process" and "Equal Protection" by impermissibly

15   combining the conflicting roles of "adjudicator" and "prosecutor" in the same person, in the same case,

16   addressing many of the same issues, which is a "Per Se" irreparable violation of "Due Process" and

17   "Equal Protection" not permitted to any other person who may be called upon from time to time to act

18   as an "Adjudicator" and/or as a "Prosecutor" in relation to the same matter.

19   **114.**   And **Breck** alleges that the proper course of conduct for a person who is placed in a 'role conflict'

20   situation is to recuse himself/herself from the role of "Adjudicator" in order to maintain the integrity of

21   the "Adjudicator" function as required by the "Due Process" clause of the 14th Amendment, and that **J.**

22   **Thomas Susich** violated that mandatory recusal requirement of "Due Process" in order to continue to

23   participate in and to aid, abet, assist and promote the objectives of the conspiracy commenced on or

24   about February 18, 2011, and the co-conspirators to damage the ability of **Breck** to continue to provide

1   services to clients of **TPI** by working with and through Nevada Bar attorneys to provide services

2   needed by the **TPI** clients, and to put **Breck** (and **TPI**) "out of business" as quickly as possible.

3   **115.**   And **Breck** further alleges that this violation of **Breck**'s Civil Rights to "Due Process" and

4   "Equal Protection", when considered in relation to the other violations of **Breck**'s Civil Rights alleged

5   herein, establishes a pattern of violations of **Breck**'s Civil Rights that establishes a method and manner

6   of operating the State Bar of Nevada, which evidences the attitude that Bar counsel (and those who aid,

7   abet, assist, act in concert or co-conspire with Bar counsel) are "above the law" and not required to

8   comply with the same rules (including specifically but without limitation, "Due Process" and "Equal

9   Protection") as apply to other agencies and individuals who do not operate under the authority and

10  protection of the Nevada Supreme Court.

11  **XII.   PERMITTING BAR COUNSEL TO PLEAD VAGARIES AND GENERALITIES WHEN PLEADING IS
        REQUIRED TO BE "CLEAR AND SPECIFIC" IN ORDER FOR THE HEARING PANEL'S FINDINGS TO**

12  **BE SUPPORTED BY "CLEAR AND CONVINCING" EVIDENCE IS A "PER SE" IRREPARABLE
        VIOLATION OF "DUE PROCESS" AND "EQUAL PROTECTION" IN VIOLATION OF THE 14TH**

13  **AMENDMENT TO THE U.S. CONSTITUTION**

14  **116.**   By denying **Breck**'s MOTION FOR MORE DEFINITE STATEMENT, **J. Thomas Susich**

15  permitted **Patrick King** to prosecute **Breck** without identifying in advance the actual "facts" that

16  **Patrick King** believed constituted each claimed "violation" in a manner that the Nevada Supreme

17  Court has characterized as "Trial by Ambush".

18  **117.**   And, since **J. Thomas Susich** was acting in the dual role of "Adjudicator" and "Prosecutor" the

19  apparent "conflict of interest" between the "duty of impartiality" (as "Adjudicator") and the "duty to

20  prosecute" (as "Prosecutor"& "Petitioner" in the PETITION filed with the Nevada Supreme Court) the

21  prejudice to and violation of **Breck**'s rights to "Due Process" and "Equal Protection" flow logically and

22  necessarily from the requirement that **J. Thomas Susich** was required by the Nevada Rules of

23  Appellate Procedure - Rule 28.2 to "read the brief" (i.e., the PETITION FOR TEMPORARY

24  SUSPENSION filed in the Nevada Supreme Court) and to certify that "to the best of the attorney's

1    knowledge, information and belief, the brief is not frivolous or interposed for any improper purpose,

2    such as to harrass or to cause unnecessary delay or needlessly increase the cost of litigation".

3    **118.**    Therefore, the "belief" that the Petition was justified may be imputed to **J. Thomas Susich**,

4    since he would otherwise not have been willing to sign the PETITION, and holding such a belief as

5    "Prosecutor-Petitioner", there is no remaining room for the "impartiality" that is required of the

6    "Adjudicator".

7    **119.**    Therefore, the "Per Se" irreparable violation of "Due Process" flows both naturally and

8    necessarily from the position occupied by **J. Thomas Susich**, which fails to meet even the "appearance

9    of propriety", and the damage to **Breck**'s rights to a "fair process" in a "fair tribunal" were inevitable.

10    **120.**    And **Breck** further alleges that this violation of **Breck**'s Civil Rights to "Due Process" and

11    "Equal Protection", when considered in relation to the other violations of **Breck**'s Civil Rights alleged

12    herein, establishes a pattern of violations of **Breck**'s Civil Rights that establishes a method and manner

13    of operating the State Bar of Nevada, which evidences the attitude that Bar counsel (and those who aid,

14    abet, assist, act in concert or co-conspire with Bar counsel) are <u>"above the law"</u> and not required to

15    comply with the same rules (including specifically but without limitation, "Due Process" and "Equal

16    Protection") as apply to other agencies and individuals who do not operate under the authority and

17    protection of the Nevada Supreme Court.

18    **XIII.   PERMITTING BAR COUNSEL TO PLEAD VAGARIES AND GENERALITIES WHEN PLEADING IS
          REQUIRED TO BE "CLEAR AND SPECIFIC" IN ORDER FOR THE HEARING PANEL'S FINDINGS TO
19        BE SUPPORTED BY "CLEAR AND CONVINCING" EVIDENCE IS A "PER SE" IRREPARABLE
          VIOLATION OF "DUE PROCESS" AND "EQUAL PROTECTION" IN VIOLATION OF THE 14TH
20        AMENDMENT TO THE U.S. CONSTITUTION**

21    **121.**    In addition to the damage that flowed to **Breck** from the violations of "Due Process", the failure

22    to require Bar Counsel to plead facts "sufficiently clear and specific to inform the attorney of the

23    charges against him or her and the underlying conduct supporting the charges" as required by **SCR**

24    **§105(2)**, the vaguaries and generalities preclude the ability of the finder of facts to determine that the

1   pleaded "facts" are established by "clear and convincing evidence", when there are so few "facts" pled.

2   **122.**   Only two (2) Grievances are pled in the COMPLAINT filed by Bar Counsel and only 3 clients

3   testified at the Hearing (only one of which (i.e., Guerrero) was mentioned in the COMPLAINT).

4   **123.**   Guerrero testified that he had never met or spoken with **Breck**, and had named **Breck** on his

5   Grievance Form only because "he was the head man".  So far as the evidence shows, **Breck** never had

6   any interaction with Guerrero or his case.  The other two clients also had no contact with **Breck**, and no

7   evidence was produced to show that **Breck** had any contact with these two clients or any knowledge of

8   their cases. Out of more than 100 clients, only these three (3) appeared to testify, and there was no

9   evidence that **Breck** had any knowledge of their cases or had ever taken any action of any kind that

10   affected these clients.

11   **124.**   According to the Decision of the Hearing Panel - on page 5 at lines 9 - 14:

12   "The Panel attributes the conduct of **TPI**'s attorney and non-attorney staff to **Breck** and **TPI** via
     **RPC 5.1(c)**, which holds law firm partners, managers and supervising lawyers accountable for
13   the conduct of lawyers and others under their control, and assigns responsibility to the attorneys
     and the managers of the law firm to intercede and to mitigate RPC violations once the conduct is
14   discovered. The Rule does not distinguish attorney managers from non-attorney managers, and
     therefore holds both as culpable persons." – (**bold** added)

15   **125.**   However, RPC §5.1(c) actually states:

16   "(c) A lawyer shall be responsible for another lawyer's violation of the Rules of Professional
     Conduct if:
17   (1) The lawyer <u>orders</u> or, with <u>knowledge of the specific conduct</u>, <u>ratifies the conduct</u> involved;
     or
18   (2) The lawyer is a partner or has comparable managerial authority in the law firm in which the
     other lawyer practices, or has direct supervisory authority over the other lawyer, and <u>knows of</u>
19   <u>the conduct at a time when its consequences can be avoided or mitigated but fails to take</u>
     <u>reasonable remedial action</u>." - (<u>underline</u> added)
20

21   **126.**   However, no evidence was ever produced that **Breck** had "order[ed]" or had "knowledge of the

22   specific conduct" and without such evidence, that **Breck** either did something, or that **Breck** "[knew]"

23   of the conduct at a time when its consequences [could] be avoided or mitigated" as required by the **RPC**

24   **§5.1(c)**, there can be no violation of **RPC §5.1(c)**.

127.   Instead of making specific findings of fact, which is quite difficult when so few facts are pled in the Complaint, the Decision employs generalities and superfluities and phrases like "initiated and operated a scam" - (underline added) - [Decision at page 4, line 12] and "a non-profit corporation which **Breck** and **TPI** falsely represented as a charitable organization under Internal Revenue Code Section 501(c)(3)." - (underline added) - [Decision at page 4, line 15-16].

128.   However, none of the attorneys who stated that **TPI** was (in their opinion) "not" a **501(c)(3)** organization were qualified as an "expert" in tax law, or listed as "Expert Witnesses" on the Bar's Witness List (the one witness who was identified as an "IRS Agent" on the Bar's initial Witness List never testified), and when **Breck** offered the IRS Instructions for **Form 1023** (the IRS "Application for Recognition of Tax Exempt Status under **501(c)(3)**"] the Hearing Panel Chair refused to admit them.

129.   Since the question of whether **TPI** qualifies as a "**501(c)(3)**" non-profit organization is a question of law, and not an appropriate matter for an "opinion poll", the "opinions" of witnesses who were not "qualified" as Experts is simply irrelevant, immaterial and should be disregarded.

130.   Nevertheless, the Court can take Judicial Notice that the Official **Instructions to Form 1023** clearly state - under the heading "**WHEN TO FILE**" on page 4 of the Instructions:

> "If you file Form 1023 within 27 months after the end of the month in which you were legally formed, and we approve the application, the legal date of formation will be the effective date of your exempt status.
>
> If you do not file Form 1023 within 27 months of formation, you may not qualify for exempt status before the date we receive Form 1023. The date considered to be the date that we receive Form 1023 is generally the postmark date. For exceptions and special rules, including automatic extensions, see Schedule E of Form 1023." - available at: http://www.irs.gov/pub/irs-pdf/i1023.pdf - (underline added)

131.   **Breck** has filed for **TPI** the IRS Form 1023, within the 27 month period specified in the Instructions (above), and the IRS has acknowledged receipt of the **Form 1023** for THE PUBLIC INTEREST LAW FIRM, INC. (aka **TPI**) - a true copy of the IRS letter acknowledging receipt of the **Form 1023** filing is attached as **EXHIBIT 'N'**, and incorporated herein by this reference, and it is fully

1    expected that the IRS will, in due course, "recognize" the **501(c)(3)** status of **TPI**, retroactively to its

2    date of incorporation as a "non-profit corporation" (i.e., January 24, 2011), pursuant to the applicable

3    IRS regulations.

4    **132.**    There is no mention in the Decision of the testimony of James Adams or Paul Frietag, who

5    testified specifically about the defamation of **Breck** that **Patrick King** spouted, even in the very first

6    telephone conversation, calling **Breck** a "crook" or "master criminal" - without any evidence whatso-

7    ever of any wrong-doing - but with full intent to cause the attorneys to "distance themselves" from

8    **Breck** - which, of course, helped precipitate the exact crisis that **Patrick King** seeks to pin on **Breck**

9    through a trial of accusation and innuendo with no admissible evidence of actual facts to support

10   anything.

11   **133.**    Nor is there any mention of the fact that **Patrick King** admitted in open court receiving stolen

12   property (i.e., the KEYS to the **TPI** Office), at the first Hearing [Transcript page 288 - 289] - but then

13   denied it at the second hearing [Transcript pages 488 - 489].

14   **134.**    And, in the absence of explicit findings of "fact", the Hearing Panel merely responded to the

15   desire of Bar Counsel to "disbar" **Breck**, without any actual evidence of "wrongdoing" by **Breck**.

16   Thus, the members of the Hearing Panel joined into the ongoing conspiracy to injure and damage

17   **Breck**'s Civil Rights (including "Due Process" and "Equal Protection"), reputation and standing in the

18   community, ability to earn a livelihood in his profession, and ability to continue to pursue (in

19   association with attorneys admitted to the State Bar of Nevada) valid lawsuits against Mortgage issuers

20   and Servicers, by abandoning their proper "adjudicative" role and joining the co-conspirators who, like

21   **Monica Caffaratti** (who admitted to committing multiple criminal acts "to ensure that **William Breck**

22   is sanctioned in the State of Nevada for practicing in Nevada without a license" - (**bold** & underline

23   added) - [Transcript pages 290 - 292]-), are willing to do anything Bar Counsel says, while denying

24   that "coercion" and "favoritism" entered into their motivation, to 'pander' to Bar Counsel to protect

themselves from any potential "investigation" or other 'retaliation' by Bar Counsel.

135.   And **Breck** further alleges that this violation of **Breck**'s Civil Rights to "Due Process" and "Equal Protection", when considered in relation to the other violations of **Breck**'s Civil Rights alleged herein, establishes a pattern of violations of **Breck**'s Civil Rights that establishes a method and manner of operating the State Bar of Nevada, which evidences the attitude that Bar counsel (and those who aid, abet, assist, act in concert or co-conspire with Bar counsel) are "above the law" and not required to comply with the same rules (including specifically but without limitation, "Due Process" and "Equal Protection") as apply to other agencies and individuals who do not operate under the authority and protection of the Nevada Supreme Court.

**XIV.   PERMITTING BAR COUNSEL TO INTRODUCE EVIDENCE OF "FACTS" NOT PLEADED IN THE COMPLAINT IS A "PER SE" VIOLATION OF "DUE PROCESS" WHEN THE COMPLAINT IS REQUIRED TO BE "CLEAR AND SPECIFIC" AND THE FACTS ALLEGED IN THE COMPLAINT, WHICH CONSTITUTE THE "VIOLATION", MUST BE PROVED BY "CLEAR AND CONVINCING EVIDENCE"**

136.   **SCR Rule §105(2)** requires that:

> "The complaint shall be sufficiently clear and specific to inform the attorney of the charges against him or her and the underlying conduct supporting the charges."

137.   However, the formal Complaint filed by the State Bar against **Breck** and **TPI** contained only one Complainant (Ramon Guerrero - Grievance No. NG11-1103) who was a former client of **TPI**, and a second Grievance (NG11-1378) filed by Judge Flanagan which named **TPI**, but did not name **Breck**, in the Grievance filed with the State Bar of Nevada.

138.   The Complaint contained no factual allegations of misconduct by **Breck** in relation to the Guerrero Grievance (NG11-1103), and no witness provided competent testimony that supported the 'factual allegation' in the Complaint that "**Breck** directed the paralegals to sign their names above the electronic signature of **Yvette Chevalier**" in relation to the Flanagan Grievance (NG11-1378).

139.   And, when former **TPI** attorney, **Yvette Chevalier**, testified, she acknowledged that she did

1   send the EMail, containing the instruction that "a paralegal can sign above my signature", to **TPI**, thus

2   exonerating **Breck** from any responsibility for improper signatures, since the Nevada attorney had

3   issued specific instructions as to how the "paralegals" should sign the documents in question.

4   140.   The only other factual allegation in the Complaint was that **TPI** had failed to file "advertising"

5   with the State Bar of Nevada; but when former **TPI** attorney, **Mikyla Miller**, testified, she acknow-

6   ledged that she had assumed the responsibility for the "advertising".

7   141.   And **Breck** further alleges that this violation of **Breck**'s Civil Rights to "Due Process" and

8   "Equal Protection", when considered in relation to the other violations of **Breck**'s Civil Rights alleged

9   herein, establishes a pattern of violations of **Breck**'s Civil Rights that establishes a method and manner

10   of operating the State Bar of Nevada, which evidences the attitude that Bar counsel (and those who aid,

11   abet, assist, act in concert or co-conspire with Bar counsel) are "above the law" and not required to

12   comply with the same rules (including specifically but without limitation, "Due Process" and "Equal

13   Protection") as apply to other agencies and individuals who do not operate under the authority and

14   protection of the Nevada Supreme Court.

15   **XV.   CHANGING THE INTERPRETATION OF RPC RULE 7.5A - GOVERNING REGISTRATION OF A**
     **MULTI-JURISDICTIONAL LAW FIRM - WITHOUT NOTICE OR OPPORTUNITY FOR HEARING -**
16   **IN ORDER TO CREATE A VIOLATION TO FURTHER THE CO-CONSPIRATORS' 'POLITICALLY**
     **MOTIVATED PROSECUTION' IS A "PER SE" VIOLATION OF "DUE PROCESS" AND "EQUAL**
17   **PROTECTION" IN VIOLATION OF THE 14TH AMENDMENT TO THE U.S. CONSTITUTION AKIN**
     **TO AN "EX POST FACTO" LAW**

18   142.   Shortly after the Non-Profit Articles of Incorporation on January 24, 2011, **Breck** prepared and

19   filed with the State Bar of Nevada an Initial Application for registration as a Multi-Jurisdiction Firm

20   (the "**TPI - MJP Filing**") - a true copy of which Initial Application is attached as **EXHIBIT 'O'** and

21   incorporated herein by this reference.

22   143.   At the time, based on conversations with Mary Jorgensen (the person at the State Bar of Nevada

23   who handled the MJP filings) over the years, and in relation to the **TPI** MJP Filing, **Breck** understood

24

1   that an MJP filing was required whenever a firm had attorneys in more than one jurisdiction, i.e.,

2   Nevada and any other jurisdiction.  This understanding was based on several conversations between

3   **Breck** and Mary Jorgensen, the person at the State Bar of Nevada who received and processed MJP

4   registrations, as well as the statements made by Mary Jorgensen at the time she was processing the MJP

5   registration submitted by **Breck** for **TPI** (alleged below).

6   **144.**   Therefore, since **TPI** had attorneys on the Board of Directors that were located outside the State

7   of Nevada [i.e., Adrianna Dominguez (CA Bar #265502) in California, and Jack Brannelly (NV Bar

8   #4541 & UT Bar #10012) in Utah, who were anticipated to be participating, from time to time, in

9   litigation involving **TPI** in their respective States [- such as, for example: when **TPI** filed a <u>Motion to</u>

10  <u>Intervene</u>, <u>Objection to Class Action Settlement</u> and <u>Complaint for Damages against Lead Class</u>

11  <u>Counsel</u> - in the Northern District of California in the Class Action entitled: <u>IN RE: WACHOVIA</u>

12  <u>CORP. "PICK-A-PAYMENT" MORTGAGE MARKETING AND SALES PRACTICES</u>

13  <u>LITIGATION</u> - Lead Case No. M: 09-CV-2015-JF, in which **TPI** Board Member Adriana Dominguez

14  (CA Bar #265502) was lead local counsel, **William Breck** (AK Bar #7705010) appeared 'Pro Hac

15  Vice', and **Mikyla Miller** (NV  Bar #12042) was also on the list of 'counsel' {but did not apply for 'Pro

16  Hac Vice' status, because it was not anticipated that she would play a very active role in the case - due

17  to other work-load and time constraints} for **THE PUBLIC INTEREST LAW FIRM, INC.**, 1575 DeLucchi

18  Lane, Reno, NV 89502 -], it was believed that an MJP Filing was appropriate, and **Breck** understood

19  that Mary Jorgensen, who handled MJP Filings for the State Bar of Nevada, concurred.

20  **145.**   Therefore, after some discussion with Mary Jorgensen to clarify the situation, in which Mary

21  Jorgensen stated in essence that: "We don't really care very much about the offices or people outside of

22  Nevada; our focus is really only on the office in Nevada, to make sure that it has a Nevada Bar

23  Attorney available in it on a full time basis".

24  **146.**   And, on that  basis, **TPI**'s MJP Filing was processed by Mary Jorgensen and approved by

1    Kimberly Farmer, the Executive Director of the State Bar of Nevada, in accordance with **RPC Rule**

2    **§7.5A** (a "Nevada Only" Rule with no counterpart in the ABA Model Rules of Professional

3    Responsibility).  Subsequently, the State Bar was requested to issue, and did issue, a Certificate of

4    Good Standing to **THE PUBLIC INTEREST LAW FIRM, INC.** (aka "TPI").

5    **147.**   However, after **Patrick King** became fully involved in the "investigation" of **Breck** and **TPI**,

6    after **Patrick King** had made the telephone calls on August 2, 2011, attacking and defaming **Breck**:

7            First, to Judge Paul Freitag (Ret.) (NV Bar #216), in Reno [in which call Freitag said that he

8    thought **Breck** was a "genius", and **Patrick King** angrily retorted that **Breck** is a "crook", and Freitag

9    attempted to deflect the anger with as statement similar to "well, maybe, but a genius one" [Transcript

10   pages 305 - 306]-];

11           And then, to James Adams (NV Bar #6874), in Las Vegas [- in which **Patrick King** called

12   **Breck** a "criminal genius or a criminal crook or something like that." "I believe he was repeating

13   something that someone had told him." [Transcript pages 211 - 212] - as **Patrick King** artfully misled

14   Adams to believe that Freitag had said what **King** had actually said in his earlier conversation with

15   Frietag -];

16   **148.**   Apparently (on information and belief - based on no further information from the State Bar) this

17   caused Kimberly Farmer to change her mind about the MJP Registration granted to **TPI** in February,

18   2011, and she then issued a NOTICE OF REVOCATION OF MJP REGISTRATION on Sept. 2, 2011,

19   which terminated the MJP Registration of **TPI**, without a statement of any specific basis or cause for

20   the termination. - A true copy of the letter dated **September 2, 2011**, revoking the MJP Registration of

21   **TPI**, signed by Kimberly Farmer, as Executive Director for the State Bar of Nevada, is attached as

22   **EXHIBIT 'P'** and incorporated herein by this reference.

23   **149.**   However, on information and belief, **Breck** alleges that there was no Official Notice of any

24   change in the historic meaning and interpretation of **RPC 7.5A**, and no published guidance, decision or

1    interpretation of the meaning of **RPC 7.5A**; and therefore, **Breck** alleges that the change in the

2    interpretation of **RPC 7.5A** by the State Bar of Nevada, as the basis for revoking the MJP Registration

3    of **TPI**, was a violation of the Civil Rights of **Breck** and **TPI**, including without limitation the "Due

4    Process" and "Equal Protection" standards under the 14th Amendment to the U.S. Constitution, and the

5    Nevada Constitution and the standards of the Administrative Procedures Acts governing administrative

6    agencies of the State of Nevada, **NRS Chapter  622A** and **Chapter 233B**, as applicable to the State

7    Bar of Nevada.

8    **150.**    In the absence of a change in the law, regulation, or official published interpretation of **RPC**

9    **Rule §7.5A**, the mere change of mind about the particular application of the terms of **RPC §7.5A**, is

10   arbitrary and capricious and a violation of the Civil Rights of **Breck** to "Due Process" and "Equal Pro-

11   tection" under the 14th Amendment to the United States Constitution, and is void and of no effect,

12   since (on information and belief) the only reason for the change in interpretation was to "stop **Breck**"

13   from being able to continue to represent that **TPI** "is registered" with the State Bar of Nevada as a

14   Multi-Jurisdiction Law Firm under **RPC Rule §7.5A**, as part of the on-going conspiracy to defame and

15   stop **Breck** from being able to continue to work with Members of the State Bar of Nevada to pursue

16   litigation against Mortgage originators and Servicers on behalf of homeowners who were clients of **TPI**.

17   **151.**    And **Breck** further alleges that this violation of **Breck's** Civil Rights to "Due Process" and

18   "Equal Protection", when considered in relation to the other violations of **Breck's** Civil Rights alleged

19   herein, establishes a pattern of violations of **Breck's** Civil Rights that establishes a method and manner

20   of operating the State Bar of Nevada, which evidences the attitude that Bar counsel (and those who aid,

21   abet, assist, act in concert or co-conspire with Bar counsel) are "above the law" and not required to

22   comply with the same rules (including specifically but without limitation, "Due Process" and "Equal

23   Protection") as apply to other agencies and individuals who do not operate under the authority and

24   protection of the Nevada Supreme Court.

**XVI. PERMITTING BAR COUNSEL TO SERVE ORDERS ISSUED BY BOARD CHAIRMAN OR HEARING PANEL CHAIRMAN VIOLATES "DUE PROCESS" AND "EQUAL PROTECTION" IN VIOLATION OF THE 14TH AMENDMENT TO THE U.S. CONSTITUTION - BY PERMITTING BAR COUNSEL TO WITHHOLD SERVICE TO ADVANTAGE BAR COUNSEL AND DISADVANTAGE OF DEFENDANT-RESPONDENT**

**152.** Supreme Court Rule, **SCR §105(2)(c)**, entitled "Time to conduct hearing; notice of hearing; discovery of evidence against attorney", states:

> "The hearing panel **shall** conduct a hearing <u>within 45 days of assignment</u> and <u>give the attorney at least 30 days' written notice of its time and place</u>. The notice shall be served in the same manner as the complaint, and shall inform the attorney that he or she is entitled to be represented by counsel, to cross-examine witnesses, and to present evidence. <u>The notice shall be accompanied by a summary prepared by bar counsel of the evidence against the attorney, and the names of the witnesses bar counsel intends to call for other than impeachment, together with a brief statement of the **facts** to which each will testify</u>, all of which may be inspected up to 3 days prior to the hearing. Witnesses or evidence, other than for impeachment, which became known to bar counsel thereafter, and which bar counsel intends to use at the hearing, shall be promptly disclosed to the attorney. <u>For good cause shown</u>, the chair may allow additional time, not to exceed 90 days, to conduct the hearing." - (**bold**/underline added)

**153.** The Order of "assignment" of the formal Hearing Panel was signed and issued by **J. Thomas Susich**, the Chair of the Northern Nevada Disciplinary Board, on **April 9, 2012** - a true copy of which ORDER is attached as **EXHIBIT 'M'** and incorporated herein by this reference. [9] Therefore the requirement that the "hearing panel shall conduct a hearing within 45 days of assignment", expired on **May 24, 2012**, the **45th** day after the date the ORDER was issued, i.e., **April 9, 2012**.

**154.** Nevertheless, Bar Counsel concealed the **April 9, 2012** ORDER "assign[ing]" the Hearing Panel, and then [without ever serving the **April 9, 2012** ORDER on **Breck** or **TPI**] filed a MOTION FOR CONTINUANCE OF HEARING on or about **June 4, 2012**, i.e., eleven (11) days after the expiration of the 45 day period within which **SCR §105(2)(c)** requires "The hearing panel **shall** conduct a Hearing within 45 days of assignment." - (**bold/underline** added) - A true copy of such MOTION FOR CON-TINUANCE OF HEARING is attached as **EXHIBIT 'Q'** and incorporated herein by this reference.

---

[9] A copy of the ORDER Appointing the Hearing Panel, together with an explanatory letter from **J. Thomas Susich**, is also attached to the Declaration of Beverly Teichgraeber, submitted herewith as **EXHIBIT 'F'**.

**155.**   In addition, Bar Counsel even delayed serving the MOTION FOR CONTINUANCE OF

HEARING on **Breck**, as appears by comparing the date "FILED" (i.e., **"June 04, 2012"** - stamped on

the front page of the said MOTION) with the date served (i.e., Certificate of Mailing **"DATED this 6th**

**day of June, 2012"** - signed by "Laura Peters").

**156.**   **Breck** promptly responded by filing an OPPOSITION TO STATE BAR'S MOTION FOR

CONTINUANCE AND RESPONDENT **BRECK**'S MOTION TO DISMISS FOR FAILURE TO

PROSECUTE dated June 11, 2012 (served by Beverly Teichgraeber by mail on June 13, 2012) - a true

copy of said OPPOSITION is attached as **EXHIBIT 'R'** and incorporated herein by this reference.

**157.**   And, subsequently, on **June 26, 2012**, **Patrick King** replied with a STATE BAR OF

NEVADA'S REPLY IN SUPPORT OF MOTION FOR CONTINUANCE AND OPPOSITION TO

MOTION TO DISMISS FOR FAILURE TO PROSECUTE -  a true copy of which REPLY is attached

as **EXHIBIT 'S'** and incorporated herein by this reference.

**158.**   It is noteworthy, however, that the first paragraph of the said REPLY (in **EXHIBIT 'S'**) states:

> "The State Bar of Nevada ('State Bar') filed its Motion for Continuance of Hearing on June 4,
> 2012. On June 5, 2012, the State Bar was granted a continuance for good cause showing which
> makes Respondent's opposition moot. A formal hearing panel was seated in this matter on April
> 25, 2012, but no hearing date had yet been set. Pursuant to SCR 105(2)(c), a hearing must be
> held within forty-five (45) days of a panel assignment."

**159.**   The first two sentences state that the "Motion for Continuance" was "filed" "on "**June 4, 2012**",

and "On **June 5, 2012**, the State Bar was granted a continuance for good cause showing....". Since the

said "Motion" was not mailed to **Breck** until **June 6, 2012** (according to the Certificate of Mailing

attached to the "Motion" - **EXHIBIT 'S'**), it is surprising that a copy of the ORDER "grant[ing]" the

"continuance" was not served with the said "Motion for Continuance". And, it is also surprising that the

said "Motion for Continuance" was not presented as an "Ex Parte Order", except that there is no

authority in the Supreme Court Rules for Bar Counsel to seek "Ex Parte Orders".

**160.**   It is also noteworthy, that Bar Counsel's claim that the "continuance" was "granted" on "**June 5,**

1   2012" lacks credibility, since no Order "grant[ing]" the "continuance" is attached to the REPLY

2   (**EXHIBIT 'S'**), even though the said REPLY was not signed, dated or filed until "**JUN 26, 2012**",

3   more than 20 days after the claimed "ORDER" "grant[ing]" the "continuance" was supposedly issued.

4   **161.**   Although on June 27, 2012, **Breck**'s Assistant in Reno, NV (i.e., Beverly Teichgraeber), finally

5   obtained a copy of the **April 9, 2012**, ORDER APPOINTING HEARING PANEL, from Sherry

6   Hornsby (the Assistant to **J. Thomas Susich**), no copy of the said ORDER was ever served on **Breck**

7   by the State Bar, and no copy of the claimed ORDER "grant[ing]" "continuance" (which **Patrick King**

8   claims was issued on **June 5, 2012**, was ever served on **Breck**. And, one must wonder whether any

9   ORDER was issued on "**April 25, 2012**", since no ORDER with that date, was ever served on **Breck**.

10   And, therefore (on information and belief), **Breck** alleges that **Patrick King** has simply "fabricated"

11   Orders, to suit his own convenience in this case.

12   **162.**   Therefore (on information and belief - because **Patrick King**'s statements are so "incredible" - in

13   the sense of "unbelievable"), **Breck** alleges that **Patrick King** and his co-actors and co-conspirators

14   have repeatedly and intentionally violated **Breck**'s Civil Rights to "Due Process" and "Equal

15   Protection" by acting arbitrarily and capriciously, intentionally and wantonly, without cause or

16   justification, and contrary to the purpose and intent of the Supreme Court Rules, perjured himself and

17   encouraged and aided others in perjury (subornation of perjury), and failed completely to make service

18   of process in a prompt and timely manner [-or at all, with regard to the **April 9, 2012** "ORDER

19   APPOINTING HEARING PANEL" - i.e., **EXHIBIT 'M'** - which was never served on **Breck**; - and

20   the claimed ORDER dated **April 25, 2012** - which was also never served on **Breck**, - and appears to be

21   a complete fabrication; and the claimed ORDER dated **June 5, 2012** - which was also never served on

22   **Breck**, and also appears to be a complete fabrication-], in violation of **Breck**'s Civil Rights, including

23   "Due Process" and "Equal Protection" under the 14th Amendment to the U.S. Constitution.

24   **163.**   Also, **Breck** alleges that, since it is quite obvious that the State Bar (and Bar Counsel) have an

1   agenda, and are not (or may not always be) trustworthy or truthful, it is a violation of **Breck**'s Civil

2   Rights to "Due Process" and "Equal Protection" to entrust Bar Counsel with the responsibility to do

3   "service of process" on behalf of the Chair of the Disciplinary Board and/or the Chair of the Hearing

4   Panel, since it permits Bar Counsel to "delay service", to "back-date" Orders, and to "fabricate"

5   Documents, when it is to the advantage of Bar Counsel to do so, and thus to tamper with and impair the

6   validity of the adjudicative process, which deprives **Breck** (and every other past, and potential future

7   Respondent accused by the State Bar) of the assurance of a "fair hearing" before a "fair tribunal", free

8   from the ability of Bar Counsel to manipulate the "process" to the disadvantage of the Respondent, e.g.,

9   **Breck**, in this instance.

10   164.   And further, **Breck** alleges that the practices and irregularities alleged herein are due to an

11   environment of systemic negligence and ineptitude, constituting a massive failure of internal control

12   systems, including:  **[1]** NO or vague or confusing Policies and Procedures; **[2]** the absence or failure to

13   implement proper training and 'check and balance' procedures; **[3]** the improper allocation of authority

14   to take actions and conduct processes critical to the proper performance of the adjudicative process to

15   personnel who have a "vested interest" in the outcome of the procedures, or are under the direct

16   influence of a person with such a "vested interest"; and **[4]** the impermissible allocation of judicial

17   functions to persons who are also charged with prosecutorial functions; and that such negligence and

18   ineptitude has rendered the current system of Disciplinary enforcement, rife with flaws and subject to

19   misuse and abuse, which in total constitute a 'per se' irreparable violation of **Breck**'s Civil Rights to

20   "Due Process" and "Equal Protection" under the 14th Amendment to the U.S. Constitution.

21   165.   And **Breck** further alleges that this violation of **Breck**'s Civil Rights to "Due Process" and

22   "Equal Protection", when considered in relation to the other violations of **Breck**'s Civil Rights alleged

23   herein, establishes a pattern of violations of **Breck**'s Civil Rights that establishes a method and manner

24   of operating the State Bar of Nevada, which evidences the attitude that Bar counsel (and those who aid,

1    abet, assist, act in concert or co-conspire with Bar counsel) are <u>"above the law"</u> and not required to

2    comply with the same rules (including specifically but without limitation, "Due Process" and "Equal

3    Protection") as apply to other agencies and individuals who do not operate under the authority and

4    protection of the Nevada Supreme Court.

5    **XVII. PERMITTING BAR COUNSEL TO OBTAIN "SECRET" OR "BACK-DATED" OR "EX PARTE"
         ORDERS IS A "PER SE" IRREPARABLE VIOLATION OF "DUE PROCESS" AND "EQUAL
6        PROTECTION" IN VIOLATION OF THE 14TH AMENDMENT TO THE U.S. CONSTITUTION -
         BY SUBVERTING THE USUAL AND CUSTOMARY PROCEDURES OF "DUE NOTICE" AND
7        "OPPORTUNITY TO BE HEARD"**

8    **166.**   In addition to the violation of "Due Process" arising from the practice of the Chair of the

9    Disciplinary Board & Hearing Panel to permit (and rely upon) Bar Counsel to "serve" the Orders of the

10   Chair on Respondent (e.g., **Breck**), which is addressed above, **Breck** alleges that there is a separate

11   violation of procedural "Due Process" when Bar Counsel is permitted to use his special access to the

12   Chair of the Hearing Board or Hearing Panel to obtain "secret" or "back-dated" or "ex-parte" ORDERs,

13   outside of the usual and customary Motion Practice in which each side in the case is permitted the

14   opportunity TO BE HEARD by submitting arguments or evidence pertinent to the issue presented to

15   the Chair of the Hearing Board or Panel before a Ruling or Order is issued.

16   **167.**   In this case, **Patrick King** has identified in his REPLY IN SUPPORT OF MOTION FOR

17   CONTINUANCE AND OPPOSITION TO MOTION TO DISMISS FOR FAILURE TO PROSECUTE

18   (in **EXHIBIT 'S'**) at least two (2) ORDERS (in addition to the **April 9, 2012** ORDER appointing the

19   Formal Hearing Panel): **[1]** the claimed ORDER issued **June 5, 2012** - which, if issued, was obtained

20   Ex Parte and without any Notice or Opportunity to **Breck** to be Heard; and **[2]** the claimed ORDER

21   issued **April 25, 2012** - which, if issued, was obtained Ex Parte and without any Notice to **Breck** or

22   Opportunity to be Heard.

23   **168.**   And, in addition, the ORDER issued by **J. Thomas Susich**, as Chair of the Northern Nevada

24   Disciplinary Board on April 9, 2012, named **Kathleen Breckenridge** as the appointed Chair of the

1  Hearing Panel (see **EXHIBIT 'M'**). But after issuing only two (2) ORDERs, on July 5, 2012 & August

2  6, 2012, [10] **Kathleen Breckenridge** was replaced as Chairman of the Hearing Panel by an ORDER

3  issued by **J. Thomas Susich**, Chair of the Northern Nevada Disciplinary Board, without Notice or

4  Hearing, on August 22, 2012, notwithstanding that **J. Thomas Susich** had previously stated, in a letter

5  dated July 3, 2012, addressed to **Breck**, that:

6      "My duties related to your cases ended when I entered an Order Appointing Formal Hearing
       Panel on April 9, 2012, wherein the Panel Chair was designated." – See Letter from **J. Thomas
7      Susich** dated July 3, 2012 attached as **EXHIBIT 'T'** and incorporated herein by this reference.

8  **169.**   Moreover, the exercise of authority by **J. Thomas Susich** (the "Adjudicator/Prosecutor") over the

9  Hearing Panel is without any basis in the Supreme Court Rules, since the authority of the Chair of the

10  Disciplinary Board to appoint the Chair of the Hearing Panel clearly terminates with the exercise of the

11  power of appointment, as stated in the letter from **J. Thomas Susich** dated July 3, 2012  (**EXHIBIT 'T'** ).

12  **170.**   Therefore, on information and belief, the exercise of authority by **J. Thomas Susich**, without

13  notice or opportunity for **Breck** to be heard on the matter, to remove and replace an appointed Chair of

14  a Hearing Panel previously appointed, is a "Per Se" irreparable violation of the Civil Rights of **Breck**,

15  under the "Due Process" and "Equal Protection" clauses of the 14th Amendment to the U.S. Constit-

16  ution, since it interferes with and disturbs the integrity of a Hearing Panel, without notice or oppor-

17  tunity to be heard by the parties affected, regardless of whether the change in the Hearing Panel is

18  requested or demanded by a member of the Hearing Panel or by Bar Counsel of the State Bar of

19  Nevada, due to a dissatisfaction with the composition of the Hearing Panel or otherwise.

20  **171.**   And **Breck** further alleges that this violation of **Breck**'s Civil Rights to "Due Process" and

21  "Equal Protection", when considered in relation to the other violations of **Breck**'s Civil Rights alleged

22  herein, establishes a pattern of violations of **Breck**'s Civil Rights that establishes a method and manner

23

24  [10]  And one (1) previous Order, purporting to grant the Bar a 90 days extension, which on its face is questionable, since the
       purported Order is dated **June 5**, Granting an extension requested by a Motion filed on **June 6** – see **EXHIBIT 'Y'**

of operating the State Bar of Nevada, which evidences the attitude that Bar counsel (and those who aid,

abet, assist, act in concert or co-conspire with Bar counsel) are "above the law" and not required to

comply with the same rules (including specifically but without limitation, "Due Process" and "Equal

Protection") as apply to other agencies and individuals who do not operate under the authority and

protection of the Nevada Supreme Court.

**XVIII.** **PERMITTING BAR COUNSEL TO OBTAIN A 90 DAY EXTENSION WITHOUT A SHOWING OF "GOOD CAUSE" IS A "PER SE" VIOLATION OF "DUE PROCESS" AND "EQUAL PROTECTION" IN VIOLATION OF THE 14TH AMENDMENT TO THE U.S. CONSTITUTION – WHEN THE APPLICABLE RULE PERMITS AN EXTENSION ONLY FOR "GOOD CAUSE SHOWN"**

**172.**   Under the express terms of **SCR §105(2)(c)**:

> "For good cause shown, the chair may allow additional time, not to exceed 90 days, to conduct the hearing."[11] - (underline added)

**173.**   The MOTION FOR CONTINUANCE OF HEARING allegedly filed by **Patrick King** on **June 4, 2012 (EXHIBIT 'Q')**, is only 2 pages long, and (uncharacteristically) contains NO DATE LINE above **Patrick King**'s signature - and has a Certificate of Mailing attached as the third page, which is dated in typed words "this 6th day of June, 2012".

**174.**   The phrase "For good cause shown" in the final sentence of **SCR Rule §105(2)(c)** clearly requires a "showing", as a condition precedent to the exercise of the "discretionary authority" (indicated by the word "may") granted to the chair (presumably referring to the "chair" of the hearing panel).

**175.**   In the absence of a "showing" (typically by an Affidavit or Declaration, stating "facts" to justify the exercise of the "discretionary authority") the exercise of the "discretionary authority" constitutes an "abuse of discretion" - since there is no "basis" to support the exercise of "discretion" - without the "showing" of "good cause".

**176.**   NO Affidavit or Declaration is attached to the MOTION FOR CONTINUANCE, and no "force

---

[11]  The 90 days is in addition to the 45 day period in which the Formal Hearing must be held, according to the first sentence in the same section of **RPC Rule §105(2)(c)**.

majure" or "act of god" is mentioned in the MOTION to justify the absence of the Affidavit or

Declaration stating "facts" to justify the exercise of the "discretionary authority".

177.   Therefore, the granting of any "additional time" to conduct the hearing is an "abuse of

discretion", and the more time that is granted without "good cause shown" the greater the "abuse of

discretion".  In this case, the "abuse of discretion" is at its maximum, because the "continuance"

requested is for the entire 90 days that the "chair" has the "discretionary authority" to grant "for good

cause shown".

178.   Therefore, the "abuse of discretion" in this case is a 'per se' irreparable violation of the Civil

Rights of **Breck** to "Due Process" under the 14th Amendment to the U.S. Constitution, since no "good

cause" was "shown" to support the exercise of the "discretionary authority" of the chair; that is, if the

chair actually exercised its "discretionary authority" - since no ORDER signed by the Chair was served

on **Breck** prior to the Hearing on Aug. 28, 2012.

179.   And therefore, the "continuance" of the Hearing beyond the 45 days permitted under the first

sentence of **SCR Rule §105(2)(c)**, was an "abuse of discretion" (if such an order was issued or later

affirmed) which is "void" and "unenforceable" under the "Due Process" clause of the 14th Amendment

to the U.S. Constitution, and a 'per se' irreparable violation of **Breck**'s right to "Due Process".

180.   And **Breck** further alleges that this violation of **Breck**'s Civil Rights to "Due Process" and

"Equal Protection", when considered in relation to the other violations of **Breck**'s Civil Rights alleged

herein, establishes a pattern of violations of **Breck**'s Civil Rights that establishes a method and manner

of operating the State Bar of Nevada, which evidences the attitude that Bar counsel (and those who aid,

abet, assist, act in concert or co-conspire with Bar counsel) are "above the law" and not required to

comply with the same rules (including specifically but without limitation, "Due Process" and "Equal

Protection") as apply to other agencies and individuals who do not operate under the authority and

protection of the Nevada Supreme Court.

XIX.  **Permitting Bar Counsel to Obtain a 90 Day Extension to Postpone Hearing is a "Per Se" Irreparable Violation of "Due Process" and "Equal Protection" in Violation of the 14th Amendment to the U.S. Constitution - When it Leaves Insufficient Time to Permit the Accused-Defendant-Respondent Adequate Discovery to Prevent "Trial by Ambush" by Bar Counsel-Prosecutor**

**181.**  As alleged in the preceding paragraphs, the "continuance" requested by **Patrick King** was for the entire "90 days" that **SCR Rule §105(2)(c)** permitted as a 'maximum permissible delay' of the Hearing Date in State Bar disciplinary proceedings under the Supreme Court Rules.

**182.**  Even with "good cause shown" (which it was not in this case), **Breck** alleges that it would be an "abuse of discretion" to permit the State Bar to appropriate to itself ALL of the 90 days that the Hearing could be delayed, because it would then leave NO TIME for the Respondent (**Breck** in this case) to analyze the evidence and conduct pre-hearing discovery, which is exactly what happened in this case.

**183.**  Therefore, **Breck** alleges that the 'mis-appropriation' by the State Bar of essentially ALL of the Pre-Hearing Time that was available under **SCR Rule §105(2)(c)** to prepare for the Hearing was a 'per se' irreparable violation of the Civil Rights of **Breck** to "Due Process" under the 14th Amendment to the U.S. Constitution, since it unreasonably precluded **Breck** from having sufficient time to review the "evidence" (approx. 10,000 pages of documents produced by the State Bar on August 10, 2012, 18 days before the Hearing commenced on August 28, 2012), and precluded **Breck** from having any time to conduct Pre-Hearing Discovery by deposition of State Bar witnesses, and other discovery procedures.

**184.**  And **Breck** further alleges that this violation of **Breck's** Civil Rights to "Due Process" and "Equal Protection", when considered in relation to the other violations of **Breck's** Civil Rights alleged herein, establishes a pattern of violations of **Breck's** Civil Rights that establishes a method and manner of operating the State Bar of Nevada, which evidences the attitude that Bar counsel (and those who aid, abet, assist, act in concert or co-conspire with Bar counsel) are "above the law" and not required to comply with the same rules (including specifically but without limitation, "Due Process" and "Equal Protection") as apply to other agencies and individuals who do not operate under the authority and

1    protection of the Nevada Supreme Court.

2    **XX.   PERMITTING BAR COUNSEL TO PROVIDE A WITNESS LIST WITHOUT A SUMMARY OF THE
3         EVIDENTIARY FACTS TO WHICH EACH WITNESS WILL TESTIFY IS A "PER SE" IRREPARABLE
         VIOLATION OF THE 14TH AMENDMENT TO THE U.S. CONSTITUTION - WHEN IT PERMITS BAR
         COUNSEL TO CONDUCT A "TRIAL BY AMBUSH"**

4
5    **185.**   Supreme Court Rule - SCR §105(2)(c) - provides in pertinent part:

6         "The hearing panel shall conduct a hearing within 45 days of assignment and give the attorney
         at least 30 days' written notice of its time and place. * * * The notice shall be accompanied by
7         <u>a summary</u> prepared by bar counsel <u>of the evidence against the attorney</u>, and the names of the
         witnesses bar counsel intends to call for other than impeachment, together with <u>a brief statement
8         of the facts to which each will testify</u>.... Witnesses or evidence, other than for impeachment,
         which became known to bar counsel thereafter, and which bar counsel intends to use at the
9         hearing, shall be promptly disclosed to the attorney. For good cause shown, the chair may allow
         additional time, not to exceed 90 days, to conduct the hearing."

10   **186.**   In addition, the ORDERS issued by **J. Thomas Susich**, as Chair of the Northern Nevada

11   Disciplinary Board, DENYING **Breck**'s MOTIONS IN LIMINE, specifically directed **Patrick King** to

12   comply fully with **SCR §105(2)(c)** (see **EXHIBIT 'L'** - ORDER denying MOTIONS IN LIMINE -

13   **EXHIBIT 'J'**).

14   **187.**   However, notwithstanding the specific admonition of the ORDERS issued by **J. Thomas Susich**,

15   **Patrick King** provided neither a "summary... of the evidence against [**Breck**]" nor a "statement of the

16   facts to which each [witness] will testify" as required by **SCR §105(2)(c)**; **Patrick King** provided to

17   **Breck** only a list of the names of a few of his intended witnesses - and **no statement of facts

18   whatsoever**. - A true copy of the purported SUMMARY OF EVIDENCE; DESIGNATION OF

19   WITNESSES served by **Patrick King** on **Breck**, as filed with the State Bar of Nevada on July 25,

20   2012, is attached as **EXHIBIT 'U'** and incorporated herein by this reference.

21   **188.**   As appears in **EXHIBIT 'U'**, **Patrick King** listed 15 witnesses, 10 of whom testified, [12] and 5 of

22

23   _____
     [12]   The 10 individuals listed on the July 25, 2012 'Witness List' <u>who did testify</u> are: (1) **Roger Doyle**, Esq.; (2) **Monica
24   Caffaratti**, Esq.; (3) **Mikyla J. Miller**, Esq.; (4) **Yvette Chevalier**, Esq.; (5) **Lynsey A. Williams**, Esq.; (6) James Adams,
     Esq.; (7) **Donald Beury**, Esq.; (8) Frank Phelan, Esq.; (9) Ramon Guerrero; and (10) **Laura Peters**.

whom did not appear or testify at the Hearing on Aug. 28, or the continued Hearing on Sept. 17, 2012. [13]

**189.**   For most of the witnesses who did testify, the statement that purportedly summarized "[the] brief statement of facts to which [the witness] will testify" states only that the witness "is expected to offer testimony about [his or her] involvement with **Breck** and **TPI** as well as [his or her] impressions of the work performed by **TPI** and the conduct of **Breck**." And for most of the witnesses who did testify, the "brief statement of facts to which [the witness] will testify" the description was essentially identical, and indicated no facts whatsoever to which the witness is expected to testify.

**190.**   Thus, **Patrick King** failed entirely to comply with either 'the word' or 'the spirit' of the requirement of **SCR §105(2)(c)** that appears intended to inform the Defendant-Respondent (i.e., Plaintiff **Breck** in this instance) of the evidence against them: **[1]** by failing to plead specific "facts" in the Complaint filed against **Breck**; **[2]** by failing to provide any "summary of the evidence"; and **[3]** by failing to provide the "brief statement of facts to which [each witness] will testify", which (together with the refusal of **Patrick King** to provide any other access to the evidence the State Bar proposed to offer at the Hearing) effectively preserved the ability of **Patrick King** to conduct a "trial by ambush", without ever giving **Breck** the opportunity to 'know the evidence' against him or to have any opportunity (prior to the actual Hearing) to prepare a defense, thus violating **Breck's** Civil Rights to "Due Process", "Equal Protection" and "Confrontation" in violation of the 14th Amendment to the U.S.

---

[13] The 5 individuals listed on the July 25, 2012 'Witness List' who did not testify are:
(1) Ryan McDonald (identified as an "Investigator for the Nevada Attorney General's Office"), who it says "is expected to offer testimony relevant to his independent investigation of **Breck** and **TPI** as well as **Breck's** alleged unauthorized practice of law";
(2) Tony Denn (identified as a :Supervisory Special Agent, Department of the Treasury, Internal Revenue Service, Criminal Investigation [Division]"), who it says "is expected to offer testimony about the non-profit status of **TPI** and the false representations by **Breck** and **TPI** in claiming and advertising **TPI's** 501(c)(3) status";
(3) Tony Frascarelli (identified as "Chief Compliance Investigator, Division of Mortgage Lending, State of Nevada"), who it says "is expected to offer testify about his independent investigation of **Breck** and **TPI**. Mr. Frascarelli is also expected to testify about complaints submitted to his office that he forwarded as a grievance to the State Bar of Nevada against **Breck** and **TPI**";
(4) Christopher Geiger (who was, but is not identified as, an attorney formerly employed by **TPI**), who it says "is expected to offer testimony about his involvement with **Breck** and **TPI** as well as his impressions of the work performed by **TPI** and the conduct of **Breck**"; and
(5) Mary Jorgensen (who is identified as "State Bar of Nevada Coordinator for Member Services"), who it says "is expected to offer testify regarding her correspondence with **Breck** and **TPI** concerning the applications they submitted for RPC 7.5A. Multi Jurisdictional Law Firm status.

Constitution, as applicable to the States.

191. Therefore, **Breck** alleges that the failure of **Patrick King** to provide the advance notice required by the "Due Process" clause, and/or **SCR §105(2)(c)**, with the purpose or effect of permitting **Patrick King** to conduct "Trial by Ambush" in the formal Hearing before the State Bar Hearing Panel assigned in this case, constitutes a 'Per Se' irreparable violation of "Due Process" in violation of the 14th Amendment to the U.S. Constitution, as well as a violation of "Equal Protection" (by comparison with the procedure afforded to attorneys who have been "elected" or "appointed" to a judicial position - under the Rules and Procedures of the Nevada Commission on Judicial Discipline), and the right of "confrontation" under the 6th Amendment, as applicable to the States through the 14th Amendment to the U.S. Constitution.

192. And **Breck** further alleges that this violation of **Breck**'s Civil Rights to "Due Process" and "Equal Protection", when considered in relation to the other violations of **Breck**'s Civil Rights alleged herein, establishes a pattern of violations of **Breck**'s Civil Rights that establishes a method and manner of operating the State Bar of Nevada, which evidences the attitude that Bar counsel (and those who aid, abet, assist, act in concert or co-conspire with Bar counsel) are <u>"above the law"</u> and not required to comply with the same rules (including specifically but without limitation, "Due Process" and "Equal Protection") as apply to other agencies and individuals who do not operate under the authority and protection of the Nevada Supreme Court.

XXI. **PERMITTING BAR COUNSEL TO ADD ISSUES, EVIDENCE AND WITNESSES WITHOUT NOTICE AND A SHOWING OF "GOOD CAUSE" TO ESTABLISH THAT THE ISSUES, EVIDENCE AND WITNESSES COULD NOT HAVE BEEN DISCOVERED, WITH THE EXERCISE OF REASONABLE DILIGENCE, PRIOR TO SERVICE OF THE INITIAL LIST OF NAMES OF PROPOSED WITNESSES, AND STATEMENT OF FACTS TO WHICH EACH WILL TESTIFY, IS A "PER SE" IRREPARABLE VIOLATION OF "DUE PROCESS" AND "EQUAL PROTECTION" IN VIOLATION OF THE 14TH AMENDMENT TO THE U.S. CONSTITUTION**

193. In addition, as the date approached for the Formal Hearing to commence on August 28, 2012, **Patrick King** filed a Supplemental Designation of Witnesses on August 22 (only 6 days before the

1   Hearing Date - which was received by **Breck** in the mail on August 27, 2012 - the day before the

2   Hearing), but without any Motion or other document showing "good cause" or any other basis for the

3   addition of 'Surprise Witnesses' after the deadline in **SCR §105(2)(c)** for providing the Witness List, the

4   "summary of evidence" (never provided by **Patrick King**) and the "brief statement of facts to which

5   [each witness] will testify" (also never provided by **Patrick King** - as to either the first Witness List or

6   the Supplemental Witness List) constituted a violation of "Due Process" by permitting Bar Counsel to

7   conduct a "Trial by Ambush" without having made the disclosures to defendant-respondent **Breck** that

8   are required by the "Confrontation" clause of the 6th Amendment and the "Due Process" and "Equal

9   Protection" clauses of the 14th Amendment to the U.S. Constitution, as applicable to the States.

10  **194.**    In combination, the initial Witness List listed 5 individuals who were not called as witnesses

11  (i.e., one-third of the total witnesses on the list), thus causing defendant-respondent **Breck** to waste

12  considerable time and energy to attempt to prepare for what these witnesses might testify, and the

13  Supplemental Witness List, allegedly filed on August 22, but not received by **Breck** in the mail until

14  August 27, the day before the Hearing, added 6 new witnesses, all of whom were known to **Patrick**

15  **King** prior to the filing of the first Witness List on July 25, 2012, and all without any disclosure of

16  either a "Summary of the Evidence", or the "brief statement of <u>facts</u> to which [each witness] will

17  testify",  as required by **SCR §105(2)(c)**.

18  **195.**    **SCR §105(2)(c)** provides that:

19       "Witnesses or evidence, other than for impeachment, which became known to bar counsel
         thereafter, and which bar counsel intends to use at the hearing, shall be promptly disclosed to
20       the attorney."

21  **196.**    The last minute addition of 6 more witnesses was without compliance with **SCR §105(2)(c)**, and

22  without the most basic compliance with fundamental precepts of "Due Process", added little of value to

23  the hearing, but does demonstrate that **Patrick King** believes he is above the law and permitted to

24  ignore the most basic tenets of proper procedure and to conduct "Trial by Ambush" with impunity,

1  from his exalted position as "Assistant Bar Counsel".

2  197.    Therefore, on information and belief, based on the fact that all or most of the Witness Names

3  added to the Witness List at the last minute before the commencement of the Formal Hearing were

4  known to **Patrick King** well in advance of the initial Witness List, **Breck** alleges that the purpose and

5  intent of **Patrick King** in adding additional witnesses to the Witness List was to conceal from **Breck**

6  the identity of those who **Patrick King** expected to testify against **Breck** until the very last minute, in

7  order to enhance the ability of **Patrick King** to conduct "Trial by Ambush", contrary to and in violation

8  of the Civil Rights of **Breck** to "Due Process", "Equal Protection" and "Confrontation", under the 14th

9  Amendment to the U.S. Constitution, as applicable to the States.

10  198.    And **Breck** further alleges that this violation of **Breck**'s Civil Rights to "Due Process" and

11  "Equal Protection", when considered in relation to the other violations of **Breck**'s Civil Rights alleged

12  herein, establishes a pattern of violations of **Breck**'s Civil Rights that establishes a method and manner

13  of operating the State Bar of Nevada, which evidences the attitude that Bar counsel (and those who aid,

14  abet, assist, act in concert or co-conspire with Bar counsel) are "above the law" and not required to

15  comply with the same rules (including specifically but without limitation, "Due Process" and "Equal

16  Protection") as apply to other agencies and individuals who do not operate under the authority and

17  protection of the Nevada Supreme Court.

18  **XXII.    PERMITTING BAR COUNSEL TO WITHHOLD COPIES OF THE EVIDENCE AFTER DEAD-LINE
    FOR PRODUCTION, &/OR TO PRODUCE VOLUMINOUS DOCUMENTS WITHOUT AN INDEX OF THE**

19  **DOCUMENTS PRODUCED, IS A "PER SE" IRREPARABLE VIOLATION OF "DUE PROCESS" AND
    "EQUAL PROTECTION" IN VIOLATION OF THE 14TH AMENDMENT TO THE U.S. CONSTITUTION**

20  **- BECAUSE IT PERMITS BAR COUNSEL TO PLAY "FAST & LOOSE" WITH THE EVIDENCE, TO
    THE DISADVANTAGE OF THE ACCUSED-DEFENDANT-RESPONDENT**

21

22  199.    In addition to failing to name witnesses in a timely manner, failing to produce a Summary of

23  Evidence, failing to identify "facts" which witnesses are expected to prove, and opposing **Breck**'s

24  MOTIONS IN LIMINE to retain evidence in secrecy, **Patrick King** waited until past the deadline for

production to produce nearly 10,000 pages of documents and then failed to produce any Index to the documents that would permit the defendant-respondent to identify the documents produced or to identify gaps in the documents produced, and intentionally failed to produce documents that might be damaging to the prosecution that **Patrick King** intended to mount against **Breck**.

**200.**   The production of a massive amount of documents, many as duplicates of others, and in a disorganized manner, making any attempt at efficient discovery or organization by **Breck** increasingly difficult, on information and belief, was intended to further impede the ability of **Breck** to ascertain what evidence that **Patrick King** intended to produce and to preclude **Breck** from mounting an effective defense or offering an effective explanation to the Hearing Panel.

**201.**   Thus, on information and belief, **Breck** alleges that the failure of **Patrick King** to conform his conduct to the mandates of "Due Process" was an intentional, willful and malicious effort by **Patrick King** to deprive **Breck** of a fair and impartial hearing before an impartial Hearing Panel in this case, in order to willfully, wantonly, maliciously and recklessly deprive **Breck** of "DUE PROCESS" in order to achieve the "political objective" of driving **Breck** and **TPI** out of business, unlawfully and without colorable compliance with the Supreme Court Rules and the mandates of "Due Process" under the 14th Amendment to the U.S. Constitution, as applicable to the States.

**202.**   Further, on information and belief, **Breck** alleges that the actions of **Patrick King**, **David Clark**, **Janeen Isaacson** and their co-conspirators were performed and permitted by the massive failure of internal control systems, the absence or inadequacy of policies and procedures, the negligence of or failure to have and maintain adequate supervisory and oversight of the conduct of Bar Counsel, which permitted and facilitated the initiation and continuation of the conspiracy in this case, to the great damage and detriment of **Breck**, including loss of income and future financial opportunities, damage to and loss of **Breck**'s standing and reputation in the community, and to cause **Breck** to be "run out of business" in the State of Nevada, to the great and irreparable damage and detriment of **Breck** and all

1  that **Breck** was attempting to accomplish through **TPI**.

2  **203.**   And **Breck** further alleges that this violation of **Breck**'s Civil Rights to "Due Process" and

3  "Equal Protection", when considered in relation to the other violations of **Breck**'s Civil Rights alleged

4  herein, establishes a pattern of violations of **Breck**'s Civil Rights that establishes a method and manner

5  of operating the State Bar of Nevada, which evidences the attitude that Bar counsel (and those who aid,

6  abet, assist, act in concert or co-conspire with Bar counsel) are "above the law" and not required to

7  comply with the same rules (including specifically but without limitation, "Due Process" and "Equal

8  Protection") as apply to other agencies and individuals who do not operate under the authority and

9  protection of the Nevada Supreme Court.

10  **XXIII.   PERMITTING COUNSEL FOR TPI TO WITHDRAW WITHOUT MAKING PROVISION FOR
         REPLACEMENT COUNSEL IS A "PER SE" VIOLATION OF "DUE PROCESS" AND "EQUAL
11        PROTECTION" IN VIOLATION OF THE 14TH AMENDMENT TO THE U.S. CONSTITUTION -
         WHICH DAMAGES AND DEPRIVES CO-RESPONDENT BRECK OF "DUE PROCESS"**

12  **204.**   On May 1, 2012, the attorneys representing The Public Interest Law Firm, Inc. (aka "**TPI**") filed

13  a MOTION TO WITHDRAW AS COUNSEL OF RECORD FOR THE PUBLIC INTEREST LAW

14  FIRM, INC. - A true copy of the MOTION TO WITHDRAW is attached as **EXHIBIT 'V'** and

15  incorporated herein by this reference.

16  **205.**   Subsequently, on May 23, 2012, the attorneys representing **TPI** filed a NOTICE OF NON-

17  OPPOSITION. - A true copy of the NOTICE OF NON-OPPOSITION is attached as **EXHIBIT 'W'**

18  and incorporated herein by this reference.

19  **206.**   On July 25, 2011, after discovering on June 27, 2012 the ORDER Appointing Hearing Panel

20  (which had been concealed by the State Bar since it was issued on April 9, 2012), and confirming that

21  NO ORDER permitting the Bailey-Kennedy firm to withdraw had been issued, **Breck** filed an

22  OBJECTION TO MOTION OF BAILEY KENNEDY TO WITHDRAW FROM REPRESENTATION

23  OF THE PUBLIC INTEREST LAW FIRM, INC. on the basis that it would leave co-Respondent **TPI**

24

1 without counsel, unless another attorney could be found to represent **TPI** or a California attorney, who

2 was willing to represent **TPI**, was admitted Pro Haec Vice, to represent **TPI** in the formal Hearing. - A

3 true copy of **Breck**'s OBJECTION is attached as **EXHIBIT 'X'** and incorporated herein by this

4 reference.

5 **207.**   Notwithstanding ample authority of from the Supreme Court of the United States indicating that

6 it is a violation of "Due Process" to permit counsel to withdraw shortly before a Trial or Hearing

7 without making arrangements for other counsel to represent the party at the Trial or Hearing, **Kathleen**

8 **Breckenridge** (the Chair of the formal Hearing Panel appointed by **J. Thomas Susich**, in the

9 (concealed) April 9, 2012, ORDER APPOINTING FORMAL HEARING PANEL) issued an ORDER

10 granting the MOTION TO WITHDRAW filed by Bailey-Kennedy, and DENYING the MOTION of

11 **Breck** to appoint counsel for **TPI** "Pro Hac Vice" on August 6, 2012, without making any provision for

12 continued representation of **TPI** in the matter set for Hearing to commence on August 28, 2012, less

13 than 30 days after her ORDER was entered on August 6, 2012. - A true copy of the ORDER issued by

14 **Kathleen Breckenridge** on August 6, 2012, is attached as **EXHIBIT 'Y'** and incorporated herein by

15 this reference.

16 **208.**   Since no other alternative was discussed or offered, **Breck** alleges that it was a "Per Se"

17 irreparable violation of "Due Process" for the Chair of the Hearing Panel to permit counsel for **TPI** to

18 withdraw on the eve of the Hearing, without providing for any alternative representation of **TPI**, parti-

19 cularly if, and to the extent that, Bar Counsel then seeks to characterize the 'absence' of **TPI** (a corpor-

20 ation - which cannot represent itself at the hearing) as a deemed admission of all charges against it.

21 **209.**   And, based on the fact that the DECISION issued by the Chair of the Hearing Panel primarily

22 held **Breck** responsible for misconduct (largely unspecified) of others under **RPC 5.1**, the failure of the

23 Hearing Panel to require that **TPI** have competent counsel at the Hearing, violated the Civil Rights of

24 **Breck**, including specifically but without limitation "Due Process" and "Equal Protection" under the

1   14th Amendment to the U.S. Constitution.

2   **210.**  And **Breck** further alleges that this violation of **Breck**'s Civil Rights to "Due Process" and

3   "Equal Protection", when considered in relation to the other violations of **Breck**'s Civil Rights alleged

4   herein, establishes a pattern of violations of **Breck**'s Civil Rights that establishes a method and manner

5   of operating the State Bar of Nevada, which evidences the attitude that Bar counsel (and those who aid,

6   abet, assist, act in concert or co-conspire with Bar counsel) are "above the law" and not required to

7   comply with the same rules (including specifically but without limitation, "Due Process" and "Equal

8   Protection") as apply to other agencies and individuals who do not operate under the authority and

9   protection of the Nevada Supreme Court.

10  **XXIV.  CONCEALING FROM BRECK AND FROM PUBLIC SCRUTINY AND FAILING TO DISCLOSE:**
    **[1] THE MANNER OF SELECTION OF THE MEMBERS OF; [2] THE MEMBERSHIP OF; AND**
11  **[3] THE VOTES OF; THE SCREENING PANEL, AND THE HEARING PANEL - IS A "PER SE"**
    **IRREPARABLE VIOLATION OF "DUE PROCESS" AND "EQUAL PROTECTION" IN VIOLATION**
12  **OF THE 14TH AMENDMENT TO THE U.S. CONSTITUTION - SINCE IT PERMITS AND RE-**
    **ESTABLISHES THE "SECRET COURTS" OF "STAR CHAMBER" AND THE "INQUISITION"**

13

14  **211.**  SCR §103 provides in pertinent part:

15  "1. The board of governors shall <u>appoint</u> two disciplinary boards of at least 47 members each,
    one to serve the northern district and one to serve the southern district, as constituted in Rule
    100. Each disciplinary board shall consist of at least 35 members of the bar of Nevada, other than
16  persons holding judicial office or membership on the board of governors, and at least 12 non-
    lawyers. * * * The board of governors <u>may appoint</u> any additional members to serve on either
17  disciplinary board as it deems necessary.
    "2. <u>Members of the disciplinary boards shall serve at the pleasure of the board of governors</u>, ***.
18  "3. The board of governors shall <u>appoint</u> one attorney member as chair of each disciplinary board
    and another attorney member as vice chair to act in the absence of the chair. * * *
19  "5. <u>The chair of each disciplinary board shall preside over all motions or other requests relating</u>
    <u>to pending proceedings until such time as  hearing panel is designated to preside over the</u>
20  <u>proceeding</u>, as provided in Rule 103(6).
    "6. The chair of each disciplinary board <u>shall designate hearing panels of five or three members</u>,
21  one of whom shall be a non-lawyer, <u>and screening panels of three members</u>, at least two of
    whom shall be members of the bar, as the chair believes are necessary to preside over
22  proceedings pending in the district. <u>The chair shall assign hearing cases to hearing panels</u> and
    designate a lawyer as chair of each. <u>The designated hearing panel chair shall preside over any</u>
23  <u>and all motions or other requests</u>. <u>A formal hearing panel shall</u>:
    (a) <u>Conduct hearings on formal complaints of misconduct</u>.
24  (b) File its <u>findings and recommendations</u> with bar counsel's office.

7. Hearing panel members shall not participate in any proceeding in which a judge similarly situated would be required to abstain. * * *

8. The chairs of the hearing panels and screening panels shall <u>deliver reprimands and sign all documents on behalf of the panel</u> to carry out the provisions of Rules 102(6), 102(7), and 103(6).

9. A grievance received against a member of a disciplinary board and processed in accordance with Rule 105(1) shall be referred to the other disciplinary board."

**212.** Although it is clear that the "hearing panel" has substantial adjudicatory functions, it is not clear that democratic principles have been observed in the selection of the disciplinary boards, the screening panel or the hearing panel. At every place where the democratic word "elect" might have been used, the anti-democratic word "appoint" has been used instead.

**213.** In addition, **Breck** alleges (on information and belief) that there is no policy, rule or procedure: (1) that permits democratic input in the selection of the members of a disciplinary board or panel; (2) that establishes any qualifications or pre-requisites to become an "adjudicator" on the disciplinary board or a screening or hearing panel; (3) that establishes or protects the independence of the "adjudicator" from the potential "undue influence" of the Bar counsel acting as "prosecutor"; (4) that prevents unauthorized access by Bar Counsel on an "ex parte basis" to the "adjudicators"; or (5) that prevents Bar Counsel from exercising improper "undue influence" over the "adjudicators" to obtain or achieve a result desired by Bar Counsel, notwithstanding the absence of 'evidence' to support the allegations of Bar Counsel set forth in the Complaint.

**214.** On information and belief, **Breck** alleges that the failure of the Supreme Court Rules (the "SCR") to provide for democratic and transparent methods for selection of (1) the disciplinary boards, (2) the screening panels & (3) the hearing panels, is a violation of the "Due Process" guaranteed by the 14th Amendment to the U.S. Constitution, since it permits 'autocratic' and 'subversive' procedures to be used in the selection of those charged with performing "adjudicative" functions, without adequate "checks and balances", and contrary to and in violation of "Due Process" and the Administrative Procedures Act.

215.   On information and belief, **Breck** alleges that the failure of the Supreme Court Rules (the

"SCR") to provide appropriate protections for persons serving as "adjudicators", i.e. (1) the disciplinary

boards, (2) the screening panels & (3) the hearing panels, against undue influence by Bar Counsel (the

"prosecutors") at least equal to the protections afforded to "adjudicators" in the Nevada Administrative

Procedures Act (**NRS Chapter 233B and NRS Chapter 622A**) is a violation of the "Due Process" and

"Equal Protection" guaranteed by the 14th Amendment to the U.S. Constitution, since it fails to provide

appropriate and adequate safeguards against the use of "undue influence" by Bar Counsel (who

exercises the same potential "investigatory authority" over the "adjudicators" who comprise the

'majority' of (1) the disciplinary boards, (2) the screening panels & (3) the hearing panels) as Bar

Counsel has over the Defendant-Respondent in the case before (1) the disciplinary boards, (2) the

screening panels & (3) the hearing panels, and provides no greater protections against the abuse of

power by Bar Counsel to protect the independence of the "adjudicators", than the minuscule and

inadequate protections provided to the "accused".

216.   Therefore, on information and belief, **Breck** alleges that the current rules governing the

investigation and prosecution of cases by Bar Counsel fail to provide the minimum safeguards required

by the "Due Process" and "Equal Protection" clauses of the 14th Amendment to the U.S. Constitution,

as illustrated  by the many violations of 'procedural' "Due Process" committed by Bar Counsel and their

co-conspirators in this case, in pursuit of the 'political objective' of preventing **Breck**, through **TPI**,

from providing homeowners facing foreclosure any legal defense or remedy against fraudulent, illegal

and predatory foreclosures.

217.   And **Breck** further alleges that this violation of **Breck**'s Civil Rights to "Due Process" and

"Equal Protection", when considered in relation to the other violations of **Breck**'s Civil Rights alleged

herein, establishes a pattern of violations of **Breck**'s Civil Rights that establishes a method and manner

of operating the State Bar of Nevada, which evidences the attitude that Bar counsel (and those who aid,

1  abet, assist, act in concert or co-conspire with Bar counsel) are "above the law" and not required to

2  comply with the same rules (including specifically but without limitation, "Due Process" and "Equal

3  Protection") as apply to other agencies and individuals who do not operate under the authority and

4  protection of the Nevada Supreme Court.

5  **XXV. PERMITTING OR REQUIRING THE CHAIRMAN OF THE NORTHERN NEVADA DISCIPLINARY BOARD (WHO ALSO ACTED AS "PROSECUTOR-PETITIONER" IN A PETITION TO THE NEVADA**
6  **SUPREME COURT IN THIS MATTER) TO APPOINT THE HEARING PANEL AND TO CHANGE THE APPOINTED CHAIRMAN OF THE HEARING PANEL IS A "PER SE" IRREPARABLE VIOLATION OF**
7  **"DUE PROCESS" AND "EQUAL PROTECTION" IN VIOLATION OF THE 14TH AMENDMENT TO THE U.S. CONSTITUTION - BECAUSE IT COMBINES THE INCONSISTENT ROLES AND**
8  **RESPONSIBILITIES OF PROSECUTOR AND ADJUDICATOR IN A SINGLE PERSON - WHICH INEVITABLY LEADS TO ABUSE OF POWER AND DEPRIVES THE TRIBUNAL OF THE PUBLIC**
9  **CONFIDENCE ENGENDERED BY OPEN HEARINGS**

10  **218.**  By ORDER issued on April 9, 2012 (**EXHIBIT 'M'**), **J. Thomas Susich**, acting as an

11  "Adjudicator" as Chair of the Northern Nevada Disciplinary Board, appointed a Hearing Panel to

12  decide the matters at issue in the formal Complaint filed by the State Bar of Nevada in Case No. NG11-

13  1103 & NG11-1378.

14  **219.**  **J. Thomas Susich**, however, was disqualified by his actions (acting as the "Prosecutor-

15  Petitioner" in filing the "PETITION FOR TEMPORARY SUSPENSION PURSUANT TO SCR

16  102(4)(a)" (**EXHIBIT 'G'**) with the Nevada Supreme Court requesting the "emergency suspension" of

17  **Breck** from engaging in the practice of law, and seizing control of all **Breck** and **TPI** Bank Accounts -

18  in relation to essentially the same factual allegations) from acting as "Adjudicator" or appointing the

19  members of a Hearing Panel to "adjudicate" the issues raised by the formal Complaint filed by the State

20  Bar of Nevada in Case No. NG11-1103 & NG11-1378.

21  **220.**  Therefore, on information and belief, **Breck** alleges that the Hearing Panel appointed by **J.**

22  **Thomas Susich**, by ORDER issued on April 9, 2012 (**EXHIBIT 'M'**), lacked the legitimacy and the

23  appearance of "independence" and "impartiality" from the "Prosecution" (i.e., "Petitioner" **Susich** and

24  the Bar Counsel "Prosecutors" of the State Bar of Nevada who signed the PETITION (**EXHIBIT 'G'**)

1   filed with the Nevada Supreme Court) required by "Due Process" and "Equal Protection" pursuant to

2   the 14th Amendment to the U.S. Constitution, and permitting **J. Thomas Susich** to be the person to

3   issue the ORDER Appointing the Hearing Panel was a "Per Se" irreparable violation of the Civil Rights

4   of **Breck** to "Due Process" and "Equal Protection" under the 14th Amendment to the U.S. Constitution.

5   **221.**   In addition, after the Chair of the Hearing Panel appointed in the ORDER issued by **J. Thomas**

6   **Susich** on April 9, 2012 (**EXHIBIT 'M'**), **Kathleen Breckenridge**, issued one (1) ORDER granting

7   the Attorneys representing **TPI** permission to withdraw without providing any means or mechanism for

8   Substituted Counsel, and denying **Breck**'s Motions to Dismiss, on August 6, 2012 **[-** and possibly the

9   backdated ORDER, purportedly issued on July 5, 2012, granting **Patrick King**'s Motion for a "90 day

10  extension" to conduct the Hearing "no later than September 7, 2012"**-]** - both of which ORDERS are

11  attached as **EXHIBIT 'Y'** and incorporated herein by this reference -, **J. Thomas Susich**, without

12  apparent MOTION filed or other request, suddenly decided, without NOTICE to anyone, to issue an

13  AMENDED ORDER APPOINTING FORMAL HEARING PANEL, dated August 22, 2012, which

14  appointed  **Caren Jenkins**, as Chair of the Hearing Panel instead of **Kathleen Breckenridge**, without

15  stating any rhyme, reason or justification for changing the appointed Chairman of the Hearing Panel - a

16  true copy of which ORDER is attached as **EXHIBIT 'Z'** and incorporated herein by this reference.

17  **222.**   However, **Breck** alleges that **J. Thomas Susich** is disqualified from acting as "Adjudicator" or

18  appointing the members of a Hearing Panel to "adjudicate" the issues raised by the formal Complaint

19  filed by the State Bar of Nevada in Case No. NG11-1103 & NG11-1378, by virtue of **Susich** acting as

20  the "Petitioner-Prosecutor" by filing the "PETITION FOR TEMPORARY SUSPENSION PURSUANT

21  TO SCR 102(4)(a)" (**EXHIBIT 'G'**) with the Nevada Supreme Court requesting the "emergency

22  suspension" of **Breck** from engaging in the practice of law, and seizing control of all **Breck** and **TPI**

23  Bank Accounts - in relation to essentially the same factual allegations as are asserted in the formal

24  Complaint.

223.   Therefore **Breck** alleges, on information and belief, that the disqualification of **J. Thomas**

**Susich** by virtue of the actual and apparent 'conflict of interest' between the roles of "Petitioner-

Prosecutor" and "Adjudicator" disqualifies **J. Thomas Susich** from acting to appoint another person as

Chair of the Hearing Panel, instead of **Kathleen Breckenridge**, the initial appointee, and that this

second appointee was appointed without Notice or Opportunity to be Heard, and without any stated

reason or justification, does not lessen the actual and apparent appearance of "conflict of interest" and

"impropriety" in the appointment of the Hearing Panel, and the Hearing Panel Chairman, but further

raises concerns about the propriety of the proceedings conducted without appropriate "Notice and

Opportunity to be Heard" and without stated reason, by a person who is acting in a position of "conflict

of interest", thus violating the standards required by the "Due Process" and "Equal Protection" clauses

of the 14th Amendment to the U.S. Constitution.

224.   And therefore, **Breck** alleges, on information and belief, that the ORDER issued on August 22,

2012, by **J. Thomas Susich**, changing the Appointed Chairman of the Hearing Panel, is no less "void"

and "ineffective" to constitute a "disinterested" and "impartial" Hearing Panel, that passes the test of

"appearance of proper and impartial procedure" required by the 14th Amendment to the U.S.

Constitution, and that such ORDER is therefore a "Per Se" irreparable violation of the "Due Process"

and "Equal Protection" standards required by the 14th Amendment to the U.S. Constitution.

225.   And **Breck** further alleges that this violation of **Breck**'s Civil Rights to "Due Process" and

"Equal Protection", when considered in relation to the other violations of **Breck**'s Civil Rights alleged

herein, establishes a pattern of violations of **Breck**'s Civil Rights that establishes a method and manner

of operating the State Bar of Nevada, which evidences the attitude that Bar counsel (and those who aid,

abet, assist, act in concert or co-conspire with Bar counsel) are <u>"above the law"</u> and not required to

comply with the same rules (including specifically but without limitation, "Due Process" and "Equal

Protection") as apply to other agencies and individuals who do not operate under the authority and

protection of the Nevada Supreme Court.

**XXVI. REQUIRING THE EXERCISE OF "PEREMPTORY CHALLENGES" BEFORE THE HEARING PANEL IS IMPANELED AND VOIR DIRE IS CONDUCTED IS A "PER SE" IRREPARABLE VIOLATION OF "DUE PROCESS" AND "EQUAL PROTECTION" IN VIOLATION OF THE 14TH AMENDMENT TO THE U.S. CONSTITUTION - BECAUSE IT RENDERS THE RIGHT TO MAKE "PEREMPTORY CHALLENGES" (AS A PRACTICAL MATTER) WORTHLESS**

226. **Breck** alleges that **SCR Rule 105(2)(a)** purports to acknowledge or recognize the "common law" "Due Process" right to the 'Accused-Defendant-Respondent' to exercise "peremptory challenges" to disqualify and remove persons who the 'Accused-Defendant-Respondent' wishes to excuse from the Hearing Panel for reasons known only to the 'Accused-Defendant-Respondent'.

227. And, **Breck** further alleges that the manner of exercise of the "common law" "Due Process" right to issue "peremptory challenges" to persons selected to sit on a Hearing Panel is beyond the "jurisdictional authority" of the courts to restrict or control, except to the extent that such restrictions were permitted at "common law" or are authorized by legislative enactment.

228. And **Breck** alleges that **SCR Rule 105(a)** violates "Due Process" by limiting the "common law" right to exercise "peremptory challenges" in a manner not permitted to the Judicial Branch of government:

[1] by limiting the number of "peremptory challenges" available to the 'Accused-Defendant-Respondent' to a number that is less than the number of "peremptory challenges" permitted by the "common law" at the date that the United States adopted its Constitution (i.e., 1789), and at the date that the State of Nevada adopted its formal Constitution (i.e., 1864), without the legislative authority to so limit the number of "peremptory challenges";

[2] by requiring the 'Accused-Defendant-Respondent' to exercise his/her "peremptory challenges" to the entire venire of potential appointees to the Hearing Panel, rather than to the persons initially selected or appointed to comprise the Hearing Panel;

[3] by requiring that the 'Accused-Defendant-Respondent' exercise his "peremptory challenges"

before 'voir dire' of the persons selected or appointed to comprise the Hearing Panel;

**[3]** by permitting Bar counsel to reserve his "peremptory challenges" to use against persons appointed to replace members of the Hearing Panel "in the event challenges or disqualification reduce the number to less than the number required for the hearing panel"; and

**[4]** by restricting the time and manner in which "peremptory challenges" may be exercised so that the right to exercise "peremptory challenges" is rendered 'illusory'.

**229.** **Breck** alleges that there has been no legislative grant of authority to the Judicial Branch of the government of the State of Nevada which authorizes or empowers the Nevada Supreme Court to 'alter' or 'condition' or 'restrict' the number or the manner of exercise of "peremptory challenges" in the Hearings to which **SCR Rule 105** applies.

**230.** And, therefore, **Breck** alleges that **SCR Rule 105(2)(a)** is void and unenforceable to the extent that it attempts to exercise Judicial Authority to 'restrict', 'control' or 'limit' the "common law" "Due Process" right to exercise "peremptory challenges" in a manner not permitted by the "common law" at the date that the U.S. Constitution and/or the Nevada Constitution were adopted.

**231.** **SCR 105(2)(a)** reads in pertinent part as follows:

"(a) Challenges to and ad hoc appointments of <u>panel members</u>. The complaint shall be served with the list of <u>members of the appropriate disciplinary board</u>. <u>The attorney</u>, or each if more than one, <u>and bar counsel may exercise five peremptory challenges each to the people on the list</u> by delivering such in writing to bar counsel on or before the date a response to the complaint is due.

"Challenges to any member for cause under Rule 103(7) shall be made as soon as possible after receiving either actual or constructive notice of the grounds for disqualification, and shall be made by motion to the chair in accordance with these rules. In no event will a motion seeking disqualification of a member be timely if the member has already heard, considered or ruled upon any contested matter, except as to grounds based of fraud or like illegal conduct of which the challenging party had no notice until after the contested matter was considered. Any challenge that is not raised in a timely manner shall be deemed waived.

"<u>The chair may make ad hoc appointments to replace designated panel members in the event challenges or disqualification reduce the number to less than the number required for the hearing panel.</u> Ad hoc appointees shall be subject to disqualification under Rule 103(7) <u>and any remaining peremptory challenges unexercised by either the attorney(s) or bar counsel</u>. * * * " - (underlining added)

232. **SCR Rule 103(7)**, mentioned above, declares that: "Hearing panel members shall not participate in any proceeding in which a judge similarly situated would be required to abstain."

233. And, **SCR Rule 103(1)**, which establishes the "disciplinary boards" referred to in **SCR Rule 105(2)(a)** - 1st sentence (quoted above), provides in pertinent part that: "The board of governors shall appoint two disciplinary boards of at least 47 members each...."

234. Although the title of sub-paragraph **(a)** of **Rule 105(2)** indicates that it purports to address challenges to "panel members", the first sentence provides only for a "list of the members of the appropriate disciplinary board", not a list of the members selected to sit on the Hearing Panel. And the second sentence in sub-paragraph **(a)** purports to limit the "peremptory challenge" to only the members of the Disciplinary Board, and not to the Hearing Panel.

235. Therefore, **Breck** alleges that the attempted limitation, by Court Rule, of the right to exercise "peremptory challenges" to the Disciplinary Board (composed of "at least 47 members each"), instead of those persons selected or designated to sit on the Hearing Panel, is a "Per Se" irreparable violation of the "Due Process" clause of the 14th Amendment, because it requires that the accused 'Defendant-Respondent' must exercise unreasonable 'clairvoyance' to predict who might be selected to sit on the Hearing Panel, and to ascertain (before voir dire examination) which of those selected should be removed by "peremptory challenge" in favor of another (as yet unknown) member selected to sit on the Hearing Panel.

236. And, in addition, **Breck** alleges (on information and belief) that, because the State Bar (through an undisclosed secret process) has already selected the members of the Disciplinary Board, and specifically not selected those persons that the State Bar would consider to be 'non-supportive' of the processes and procedures used by the State Bar in prosecuting cases similar to this case, or 'uncooperative' in reaching the 'decisions' that the Bar counsel desires from the formal Hearing Panels, there is 'no functional necessity' for Bar counsel to have any "peremptory challenges", since they have

1 | already excluded everyone from the 'venire panel' that they might consider to be 'problematical'.

2 | 237. And, therefore, **Breck** alleges that the allocation and manner of exercising "peremptory

3 | challenges" described in **SCR Rule 105(2)(a)** creates only an "illusory right", which violates the

4 | substance of the "peremptive challenge" right at "common law" - adopted into "Due Process" at the

5 | adoption of the U.S. Constitution and the Nevada Constitution - which violates "Due Process" by

6 | denying in substance what is granted in form - in violation of the 14th Amendment to the U.S.

7 | Constitution.

8 | 238. And **Breck** further alleges that this violation of **Breck**'s Civil Rights to "Due Process" and

9 | "Equal Protection", when considered in relation to the other violations of **Breck**'s Civil Rights alleged

10 | herein, establishes a pattern of violations of **Breck**'s Civil Rights that establishes a method and manner

11 | of operating the State Bar of Nevada, which evidences the attitude that Bar counsel (and those who aid,

12 | abet, assist, act in concert or co-conspire with Bar counsel) are "above the law" and not required to

13 | comply with the same rules (including specifically but without limitation, "Due Process" and "Equal

14 | Protection") as apply to other agencies and individuals who do not operate under the authority and

15 | protection of the Nevada Supreme Court.

16 | **XXVII. THE FAILURE OF THE HEARING PANEL CHAIRMAN TO REMOVE THE MEMBERS OF THE HEARING PANEL TO WHOM BRECK FILED "PEREMPTORY CHALLENGES" - AND TO RECUSE**
17 | **HERSELF IN RESPONSE TO THE PEREMPTORY CHALLENGE UNDER SCR 48.1 AND/OR SWAIN VS. ALABAMA, 380 US 202 (1965) - IS A "PER SE" IRREPARABLE VIOLATION OF THE 14TH**
18 | **AMENDMENT TO THE U.S. CONSTITUTION - BECAUSE IT IMPAIRS THE LEGITIMACY OF THE PANEL CHAIRMAN AND THE HEARING PANEL**

19 | 239. At the earliest possible time on August 28, 2012, as the very first item of business to be

20 | addressed before the Formal Hearing commenced and as a preliminary matter, **Breck** served upon

21 | **Caren Jenkins**, the newly appointed acting Chair of the Hearing Panel, a document entitled

22 | "PEREMPTORY CHALLENGE OF HEARING PANEL CHAIRMAN PURSUANT TO SUPREME

23 | COURT RULE 48.1" and served upon **Caren Jenkins**, as the newly appointed acting Chair of the

24 |

1  Hearing Panel, and each of the other four (4) members of the Hearing Panel, a document entitled

2  "NOTICE OF EXERCISE OF PEREMPTORY CHALLENGE" - a true copy of each of the six (6)

3  Peremptory Challenges is attached hereto as **EXHIBIT 'AA'** and incorporated herein by this reference.

4  **240.** **Caren Jenkins**, as acting Chairman of the formal Hearing Panel refused and denied **Breck**'s

5  attempt to exercise the Peremptory Challenge pursuant to **SCR Rule 48.1** as well as the Peremptory

6  Challenge pursuant to **Swain v. State of Alabama**, 380 US 202 (1965), and continued the Hearing

7  without interruption.

8  **241.**   Therefore, **Breck** alleges (on information and belief) that the continuation of the Hearing,

9  notwithstanding the exercise of the Peremptory Challenges by **Breck**, was a "Per Se" Irreparable

10  Violation of "Due Process" and "Equal Protection" in violation of the 14th Amendment to the U.S.

11  Constitution, the **SCR Rule 48.1**, and **Swain vs. Alabama**, 380 US 202 (1965).

12  **242.**   And **Breck** further alleges that this violation of **Breck**'s Civil Rights to "Due Process" and

13  "Equal Protection", when considered in relation to the other violations of **Breck**'s Civil Rights alleged

14  herein, establishes a pattern of violations of **Breck**'s Civil Rights that establishes a method and manner

15  of operating the State Bar of Nevada, which evidences the attitude that Bar counsel (and those who aid,

16  abet, assist, act in concert or co-conspire with Bar counsel) are "above the law" and not required to

17  comply with the same rules (including specifically but without limitation, "Due Process" and "Equal

18  Protection") as apply to other agencies and individuals who do not operate under the authority and

19  protection of the Nevada Supreme Court.

20  **XXVIII. APPOINTING A HEARING PANEL CHAIRMAN IN SECRET, WITHOUT NOTICE OR OPPORTUNITY TO FILE A MOTION FOR DISQUALIFICATION UNDER SCR 103(7) - BEFORE**

21  **THE APPOINTED HEARING PANEL CHAIRMAN "HEAR[S], CONSIDER[S] OR RULE[S] UPON ANY CONTESTED MATTER" - IS A "PER SE" IRREPARABLE VIOLATION OF "DUE PROCESS"**

22  **UNDER THE 14TH AMENDMENT TO THE U.S. CONSTITUTION - WHEN THE RULE PROVIDES (AS STATED IN RULE 105(2)(A) - IN THE 2ND PARAGRAPH) THAT A MOTION TO DISQUALIFY**

23  **IS NOT "TIMELY" "IF THE MEMBER HAS ALREADY HEARD, CONSIDERED OR RULED UPON ANY CONTESTED MATTER...."**

24

243.   By ORDER dated and issued on April 9, 2012, **J. Thomas Susich**, acting as Chair of the Northern Nevada Disciplinary Board of the State Bar of Nevada, appointed **Kathleen Breckenridge** as "Chair of the Hearing Panel" designated in the said ORDER.  This ORDER was never served on **Breck** or on **TPI**, because it was delivered only to **Patrick King**, and was kept 'secret' by **Patrick King**, in order to disadvantage **Breck** and **TPI**, in preparation for the formal Hearing, for which no date had been set in said ORDER.

244.   Subsequently, on June 4, 2012, **Patrick King** filed a MOTION FOR CONTINUANCE OF HEARING, which he withheld from "Service" on **Breck** until June 6, 2012.

245.   Thereafter, on or about June 13, 2012, **Breck** filed an OPPOSITION TO MOTION FOR CONTINUANCE and MOTION TO DISMISS; to which, on June 26, 2012, **Patrick King** filed a REPLY IN SUPPORT OF MOTION FOR CONTINUANCE - claiming that the MOTION FOR CONTINUANCE had been granted on June 5, 2012 - but no ORDER dated June 5, 2012 (or any other date) was attached to **Patrick King**'s REPLY - Granting the CONTINUANCE as claimed by **Patrick King**, and no such ORDER was, in fact, ever served on **Breck** prior to the Hearing commenced on August 28, 2012 - and when a copy was provided to **Breck** at the commencement of the Aug. 28, 2012 Hearing, the ORDER indicated the haste of its preparation by stating that the ORDER was dated "**this 5 day of June, 2012**", granting the Motion filed by the State Bar "**On June 6, 2012**". - A true copy of King's MOTION FOR CONTINUANCE dated June 4, 2012 (**EXHIBIT 'Q'**), **Breck**'s OPPOSITION TO MOTION FOR CONTINUANCE (**EXHIBIT 'R'**), **King**'s REPLY IN SUPPORT OF MOTION FOR CONTINUANCE (**EXHIBIT 'S'**), are attached; and a true copy of the purported ORDER TO CONTINUE HEARING - showing the dating confusion – is attached as **EXHIBIT 'AB'** and incorporated herein by this reference.

246.   And, on August 6, 2012, an ORDER was signed by **Kathleen Breckenridge** GRANTING the MOTION TO WITHDRAW AS COUNSEL filed by Dennis Kennedy (counsel for **TPI** during the Pre-

1   Hearing period) (**EXHIBIT 'Y'**), which left **TPI** without any representation at the formal Hearing

2   scheduled for August 28, 2012.

3   **247.**   Then, on August 22, 2012 (6 days before the formal Hearing scheduled to commence on August

4   28, 2012), **J. Thomas Susich** signed an "Ex Parte Order" (without any Motion being filed, and without

5   notice to **Breck** or opportunity for **Breck** to assent or object, since **Breck** did not receive a copy of the

6   August 22, 2012 ORDER until August 27, 2012, the day before the Hearing) entitled "Amended Order

7   Appointing Formal Hearing Panel", which appointed Defendant **Caren Jenkins**, as the Chair of the

8   Hearing Panel, and named **Kathleen Breckenridge** as one of the Panel Members, but without reference

9   to **Breckenridge**'s former position as Chairman of the Hearing Panel, and without stated cause, reason

10   or justification for the change in the Chair of the formerly appointed Hearing Panel.

11   **248.**   On information and belief, **Breck** alleges that no authority is granted by the Supreme Court

12   Rules to the Chair of the Northern Nevada Disciplinary Board to remove, and appoint another in place

13   of, a sitting Chairman of a Hearing Panel, assuming the Chairman of the Hearing Panel was "duly

14   appointed" to the position of Chairman.

15   **249.**   In addition, **Breck** alleges that the fact that these actions were taken on the eve of the Hearing

16   Date (**Breck** did not receive the ORDER dated August 22, 2012, until August 27, 2012 - the day before

17   the Hearing commenced), in SECRET, without notice to **Breck** or to **TPI**, or any opportunity to object

18   or assent to the change, and without any cause stated for the change in the Hearing Chairman, and no

19   cause being evident (because **Breckenridge** remained as a member of the Hearing Panel, and attended

20   all of the Hearings without apparent physical difficulty, even though she was replaced as Chairman),

21   causes **Breck** to allege (on information and belief) that the removal of **Breckenridge** and replacement

22   by **Jenkins** was done at the behest, request or concurrence of **Patrick King** (with the concurrence of

23   **Clark, Susich, Breckenridge** and **Jenkins**) who preferred to have **Caren Jenkins** as the Chair of the

24   Hearing Panel because he believed that **Jenkins** would be more pro-Bar in her rulings on evidentiary

1  and other matters, and not due to any accident or event that would cause or require appointment of a

2  substitute Judge in a District Court of the State of Nevada.

3  **250.**   Therefore, **Breck** alleges (on information and belief) that the both the substantive cause which

4  precipitated the replacement of **Breckenridge** by **Jenkins**, and the procedure followed to accomplish

5  the replacement of **Breckenridge** by **Jenkins**, violated **Breck**'s Civil Rights to "Due Process" and

6  "Equal Protection" in violation of the 14th Amendment to the U.S. Constitution - by tampering with the

7  adjudicative process and personnel in a way that is prohibited by the Court Rules, the Rules of Civil

8  Procedure, the Administrative Procedures Acts and the Standards and Rules of Judicial Conduct.

9  **251.**   And **Breck** further alleges that this violation of **Breck**'s Civil Rights to "Due Process" and

10  "Equal Protection", when considered in relation to the other violations of **Breck**'s Civil Rights alleged

11  herein, establishes a pattern of violations of **Breck**'s Civil Rights that establishes a method and manner

12  of operating the State Bar of Nevada, which evidences the attitude that Bar counsel (and those who aid,

13  abet, assist, act in concert or co-conspire with Bar counsel) are "above the law" and not required to

14  comply with the same rules (including specifically but without limitation, "Due Process" and "Equal

15  Protection") as apply to other agencies and individuals who do not operate under the authority and

16  protection of the Nevada Supreme Court.

17  **XXIX.  EXCLUDING THE COURT REPORTER HIRED BY BRECK TO RECORD THE HEARING
VIOLATED BRECK'S CIVIL RIGHTS, SCR RULE §105(2)(F), §121, §230, §241 & §246, AND**

18  **THE NEVADA "OPEN MEETING" LAW - NRS CH 241 - IN VIOLATION OF "DUE PROCESS"
AND "EQUAL PROTECTION" UNDER THE 14TH AMENDMENT TO THE U.S. CONSTITUTION**

19
20  **252.**   SCR §105(2)(f) provides in pertinent part:

21  "(f) Court reporter.  All formal hearings shall be reported by a certified court reporter, which cost may be assessed against the attorney pursuant to Rule 120.  Any party desiring to have any other disciplinary proceedings reported must arrange in advance for a certified court reporter at the party's own expense."

22
23  **253.**   **Breck** made arrangements in advance of the Hearing for a certified court reporter retained by

24  **Breck** to record the Hearing, but the court reporter was refused entry into the Hearing Room by **Caren**

1   **Jenkins**, the acting Chair of the Hearing Panel, on the basis that the Hearing was a "closed hearing",

2   not open to the public - notwithstanding that the Chair of the Hearing Panel did permit others (not

3   directly involved in the Hearing as parties or witnesses) to sit in the Room throughout the Hearing on

4   both August 28, 2012 and September 17, 2012.

5   254.   However, **SCR §121** provides in pertinent part:

6   "1. Generally.  All proceedings involving allegations of misconduct by an attorney shall be kept
    confidential <u>until the filing of a formal complaint</u>.  All participants in a proceeding, including
7   anyone connected with it, shall conduct themselves so as to maintain the confidentiality of the
    proceeding <u>until a formal complaint is filed</u>."
8   "2. When no formal complaint filed.  In the event no formal complaint is filed, the disciplinary
    proceeding shall become public upon its conclusion, whether by dismissal or otherwise." -
9   (<u>underlining</u> added)

10   255.   And, **SCR §230** provides in pertinent part:

11   "2. Under these rules, <u>there is a presumption that all courtroom proceedings that are open to the
    public are subject to electronic coverage.</u>" - (<u>underline</u> added)

12

13   256.   And, **SCR §241** provides in pertinent part:

14   "2. Official record.  The official court record of any proceeding is the transcript of the original
    notes of the court reporter or <u>court recorder</u> made in open court.  Videos, photographs or audio
    reproductions made in a court proceeding as a result of these rules shall not be considered as part
15   of the official court record." - (<u>underline</u> added)

16   257.   And, **SCR §246** provides in pertinent part:

17   "1. Unobtrusive <u>tape recorders</u> or other electronic devices such as cellular phones, personal
    digital assistants (PDAs), laptop computers or other similar functioning devices used to take
18   notes located on or near the news reporter may be allowed by the judge.  It will be understood
    that these devices will be used only for accurate transcriptions of the court proceedings, and are
19   not to be used for broadcast.
    * * *
20   "3. Notwithstanding the provisions of Rule 230, <u>tape recorders</u> or other electronic devices may
    be used as described in this rule. * * * " - (<u>underline</u> added)

21

22   258.   Also applicable are the standards established by the **Open Meeting Laws** of the State of Nevada,

     contained in **NRS Chapter 241**, which provide in pertinent part:

23

24   "**NRS 241.100 Legislative declaration of intent.**  In enacting this chapter, the Legislature finds
    and declares that all public bodies exist to aid in the conduct of the people's business.  It is the

intent of the law that their actions be taken openly and that their deliberations be conducted openly." - (**bold** added)

"**NRS 241.015 (3)** Except as otherwise provided in this subsection, 'public body' means:
(a) Any administrative [or] advisory, *** body of the State or a local government consisting of at least two persons * * * which advises or makes recommendations to any entity which * * * is supported in whole or in part by tax revenue, * * * if the administrative [or] advisory, * * * body is created by:

(1) The Constitution of this State;* * *

(7) A resolution or an action by the governing body or a political subdivision of this State; * * *

'Public body' does not include the Legislature of the State of Nevada. * * * " - (**bold** added)

"**NRS 241.020 Meetings to be open and public; limitations on closure of meetings; notice of meetings; copy of materials; exceptions.**

"1. Except as otherwise provided by specific statute, all meetings of public bodies must be open and public, and all persons must be permitted to attend any meeting of these public bodies. * * *

"2. Except in an emergency, written notice of all meetings must be given at least 3 working days before the meeting. The notice must include: * * *

(c) An agenda consisting of:

(4) If any portion of the meeting will be closed to consider the character, alleged misconduct or professional competence of a person, the name of the person whose character, alleged misconduct or professional competence will be considered.

(5) If, during any portion of the meeting, the public body will consider whether to take administrative action against a person, the name of the person against whom administrative action may be taken. * * *

"3. Minimum public notice is:

(a) Posting of a copy of the notice at the principal office of the public body or, * * *, at the building in which the meeting is to be held, and at not less than three other separate prominent places within the jurisdiction of the public body not later than 9 a.m. of the third working day before the meeting; and

(b) Providing a copy of the notice to any person who has requested notice of the meetings of the public body. * * *

"4. If a public body maintains a website on the Internet * * * the public body shall post notice of each of its meetings on its website * * *. Notice posted pursuant to this subsection is supplemental to and is not a substitute for the minimum public notice required pursuant to subsection 3. * * * " - (**bold** added)

"**NRS 241.030 Exceptions to requirements for open and public meetings; waiver of closure of meeting by certain persons. [Effective January 1. 2012.]**

"1. Except as otherwise provided in this section and NRS 241.031 and 241.033, a public body may hold a closed meeting to:

(a) Consider the character, alleged misconduct, professional competence, or physical or mental health of a person. * * *

"2. A person whose character, alleged misconduct, professional competence, or physical or mental health will be considered by a public body during a meeting may waive the closure of the meeting and request that the meeting or relevant portion thereof be open to the public. A request described in this subsection:

(a) May be made at any time before or during the meeting; and

(b) Must be honored by the public body unless the consideration of the character, alleged misconduct, professional competence, or physical or mental health of the requestor involves the appearance before the public body or another person who does not desire that the meeting or relevant portion thereof be open to the public.   * * *

"4. Except as otherwise provided in this subsection, meetings of a public body that are quasi-judicial in nature are subject to the provisions of this chapter. * * *

"5. This chapter does not"

(a) Apply to judicial proceedings.* * *

(c) Prevent the exclusion of witnesses from a public or private meeting during the examination of another witness.   * * *

"6. The exceptions provided by this section * * * must not be used to circumvent the spirit or letter of this chapter to act, outside of an open and public meeting, upon a matter over which the public body has supervision, control, jurisdiction or advisory powers." - (**bold** & underline added)

"**NRS 241.033 Meeting to consider character, misconduct, competence or health of person * * *; Written notice to person required; * * ***

"6. A public body shall provide a copy of any record of a closed meeting prepared pursuant to NRS 241.035, upon the request of any person who received written notice of the closed meeting pursuant to subsection 1." - (**bold** added)

"**NRS 241.034 Meeting to consider administrative action against person * * *; Written notice required; exception**

"1. Except as otherwise provided in subsection 3:

(a) A public body shall not consider at a meeting whether to:

(1) Take administrative action against a person; * * *

(b) The written notice required pursuant to paragraph (a) must be:

(1) Delivered personally to that person at least 5 working days before the meeting; or

(2) Sent by certified mail to the last known address of that person at least 21 working days before the meeting.

"A public body must receive proof of service of the written notice provided to a person pursuant to this section before the public body may consider a matter set forth in paragraph (a) relating to that person at a meeting.

"2. The written notice provided in this section is in addition to the notice of the meeting provided pursuant to NRS 241.020.

"3. The written notice otherwise required pursuant to this section is not required if:

(a) The public body provided written notice to the person pursuant to NRS 241.033 before holding a meeting to consider the character, alleged misconduct, professional competence, or physical or mental health of the person; and

(b) The written notice provided pursuant to NRS 241.033 include the information statement described in paragraph (b) of subsection 2 of that section. * * * "

**"NRS 241.035 Public meetings: Minutes; aural and visual reproduction; transcripts.**

"1. Each public body shall keep written minutes of each of its meetings, including:

(a) The date, time and place of the meeting.

(b) Those members of the public body who were present and those who were absent.

(c) The substance of all matters proposed, discussed or decided and, at the request of any member, a record of each member's vote on any matter decided by vote.   * * *

"2. Minutes of public meetings are pubic records. Minutes or audiotape recordings of the meetings must be made available for inspection by the public within 30 working days after the adjournment of the meeting at which taken. The minutes shall be deemed to have permanent value and must be retained by the public body for at least 5 years.  Thereafter, the minutes may be transferred for archival preservation in accordance with NRS 239.080 to 239.125, inclusive. Minutes of meetings closed pursuant to:

(a) Paragraph (a) of subsection 1 of NRS 241.030 become public records when the public body determines that the matters discussed no longer require confidentiality and the person whose character, conduct, competence or health was considered has consented to their disclosure. That person is entitled to a copy of the minutes upon request whether or not they become public records.    * * *

"3. All or part of any meeting of a public body may be recorded on audiotape or any other means of sound or video reproduction by a member of the general public if it is a public meeting so long as this in no way interferes with the conduct of the meeting.

"4. Except as otherwise provided in subsection 6, <u>a public body shall, for each of its meetings, whether public or closed, record the meeting on audiotape or another means of sound reproduction</u> or cause the meeting to be transcribed by a court reporter who is certified pursuant to chapter 656 of NRS. <u>If a public body makes an audio recording</u> of a meeting or causes a meeting to be transcribed pursuant to this subsection, <u>the audio recording</u> or transcript:

(a) Must be retained by the public body for at least 1 year after the adjournment of the meeting at which it was recorded or transcribed;

(b) Except as otherwise provided in this section, is a public record and must be made available for inspection by the public during the time the recording or transcript is retained; * * *

"5. Except as otherwise provided in subsection 6, <u>any portion of a public meeting which is closed must also be recorded or transcribed</u> and the recording or transcript must be retained and made available for inspection pursuant to the provisions of subsection 2 relating to records of closed

meetings. Any recording or transcript made pursuant to this subsection must be made available to the Attorney General upon request.

"6. If a public body makes a good faith effort to comply with the provisions of subsections 4 and 5 but is prevented from doing so because of factors beyond the public body's reasonable control, including, without limitation, a power outage, a mechanical failure or other unforeseen event, such failure does not constitute a violation of the provisions of this chapter." - (**bold** & underline added)

"**NRS 241.036 Action taken in violation of chapter void.** The action of any public body taken in violation of any provision of this chapter is void." - (**bold** & underline added)

"**NRS 241.037 Action by Attorney General or person denied right conferred by chapter; limitation on actions.*** * *

"2. Any person denied a right conferred by this chapter may sue in the district court in which the public body ordinarily holds its meetings or in which the plaintiff resides. A suit may seek to have an action taken by the public body declared void, to require compliance with or prevent violations of this chapter or to determine the applicability of this chapter to discussions or decisions of the public body. The court may order payment of reasonable attorney's fees and court costs to a successful plaintiff in a suit brought under this subsection.

"3. Any suit brought against a public body pursuant to subsection 1 or 2 to require compliance with the provisions of this chapter must be commenced within 120 days after the action objected to was taken by the public body in violation of this chapter. Any such suit brought to have an action declared void must be commenced within 60 days after the action objected to was taken." - (**bold** & underline added)

"**NRS 241.040 Criminal and civil penalties; members attending meeting in violation of chapter not accomplices.**

"1. Each member of a public body who attends a meeting of that public body where action is taken in violation of any provision of this chapter, with knowledge of the fact that the meeting is in violation thereof, is guilty of a misdemeanor.

"2. Wrongful exclusion of any person or persons from a meeting is a misdemeanor.

"3. A member of a public body who attends a meeting of that public body at which action is taken in violation of this chapter is not the accomplice of any other member so attending.

"4. In addition to any criminal penalty imposed pursuant to this section, each member of a public body who attends a meeting of that public body where action is taken in violation of any provision of this chapter, and who participates in such action with knowledge of the violation, is subject to a civil penalty in an amount not to exceed $500. * * *"

259. Although the Nevada Supreme Court has taken  the position that the governance of members of the State Bar of Nevada is within the exclusive jurisdiction of the Supreme Court, the Nevada Supreme Court cannot permit the State Bar of Nevada, which is a public "agency", as defined in the Open

1   Meeting Law (above), to violate the rights of those persons subjected to the jurisdiction of the State Bar

2   of Nevada, or deny attorneys (including **Breck**) the rights that are conferred by statute on persons in

3   other professions by the laws of general application of the State of Nevada, without elevating the State

4   Bar of Nevada to a position that is **"above the law"**.

5   **260.**   Therefore, **Breck** alleges that the failure of the State Bar of Nevada to confer and respect the

6   same rights to attorneys and others involved in Hearings before the State Bar, as such rights are

7   recognized in relation to other persons subject to licensure by the State of Nevada, is a violation of

8   "Due Process" and "Equal Protection" mandated by the 14th Amendment to the U.S. Constitution; that

9   the failure of the State Bar to accord **Breck** the same or substantially similar rights as the laws of the

10  State of Nevada confer on other professionals licensed by the State of Nevada is due to a massive

11  failure of internal controls, the absence of proper policies and procedures, and the failure to train and

12  enforce standards of conduct that are equal to or better than the standards enforced by law as to other

13  State "agencies", and the failure to supervise and enforce standards that comport the conduct of the

14  agents and representatives of the State Bar of Nevada with the standards established by the State of

15  Nevada for other "agencies" exercising regulatory authority over licensed professions; and **Breck**

16  therefore alleges that the actions taken by the State Bar of Nevada in the matter described in NG11-

17  1103 & NG11-1378, constitute a violation of **Breck**'s Civil Rights to "Due Process" and "Equal

18  Protection" under the 14th Amendment to the U.S. Constitution, which have irreparably damaged the

19  health, reputation and well-being of **Breck**, destroyed **Breck**'s professional standing and reputation in

20  the community, and deprived **Breck** of the value of the business and employment with The Public

21  Interest Law Firm, Inc., aka **"TPI"**.

22  **261.**   Amongst the rights of **Breck** that were violated, was the right to have an independent court

23  reporter make an audio recording of the Hearing; which "right" was specifically requested by **Breck** at

24  the commencement of the Hearing, as permitted by the Open Meeting Law standard, and was denied by

1   the Chair of the Hearing Panel, based on a misrepresentation made to **Breck** (whether intentionally or

2   accidentally) by the Court Reporter hired by the State Bar that an Audio Recording was being made of

3   the Hearing, and that **Breck** could have a copy of the audio recording to compare with the typed

4   transcript within a week after the Hearing on August 28, 2012, in order to assist **Breck** to prepare for

5   the continued Hearing on September 17, 2012.  However, when **Breck** inquired of the owner of the

6   Sunshine Reporting service (Ms. Linda Shaw), **Breck** was told that they (the Court Reporters) did not

7   have an audio recording, but that the State Bar had an audio recording, and that **Breck** should ask the

8   State Bar for a copy of their audio recording, which **Breck** subsequently did.  However, the State Bar

9   simply ignored the request, and the Hearing Officer refused to compel the State Bar to produce the

10  audio recording - all in violation of **Breck**'s Civil Rights to "Due Process" and "Equal Protection" under

11  the 14th Amendment to the U.S. Constitution.

12  **262.**   Therefore, **Breck** alleges that the Hearing conducted by the State Bar is "void" and "ineffective"

13  for all purposes, and that any use of any materials (including without limitation the "FINDINGS OF

14  FACT, CONCLUSIONS OF LAW, DECISION AND ORDER" entered on October 16, 2012 – a true

15  copy of which is attached as **<u>EXHIBIT 'AM'</u>** and incorporated herein by this reference) should be

16  Prohibited by ORDER of this Court, on penalty of Contempt of Court, to stop further actions of the

17  State Bar that continue to cause irreparable damages to **Breck**.

18  **263.**   And **Breck** further alleges that this violation of **Breck**'s Civil Rights to "Due Process" and

19  "Equal Protection", when considered in relation to the other violations of **Breck**'s Civil Rights alleged

20  herein, establishes a pattern of violations of **Breck**'s Civil Rights that establishes a method and manner

21  of operating the State Bar of Nevada, which evidences the attitude that Bar counsel (and those who aid,

22  abet, assist, act in concert or co-conspire with Bar counsel) are <u>"above the law"</u> and not required to

23  comply with the same rules (including specifically but without limitation, "Due Process" and "Equal

24  Protection") as apply to other agencies and individuals who do not operate under the authority and

protection of the Nevada Supreme Court.

**XXX. THE FAILURE TO MAKE AN AUDIO RECORDING OF THE HEARING AS ORIGINAL EVIDENCE OF EVENTS AS THEY TRANSPIRE IS A VIOLATION OF "DUE PROCESS" BY PERMITTING THE CONTINUED USE OF LESS CERTAIN METHODS OF PRESERVING THE RECORD OF PROCEEDINGS, WHICH PERMIT BAR COUNSEL TO INFLUENCE THE COURT REPORTER'S TRANSCRIPT OF THE HEARING AND CREATES THE OPPORTUNITY FOR ITEMS TO BE ADDED TO OR OMITTED FROM THE RECORD WITH NO AUTHORITATIVE SOURCE TO CONSULT FOR VERIFICATION - IS A VIOLATION OF "DUE PROCESS" AND "EQUAL PROTECTION" IN VIOLATION OF THE 14TH AMENDMENT TO THE U.S. CONSTITUTION**

264.   **Breck** alleges that the Nevada Open Meeting Law (excepts set forth above) clearly indicate that audio recordings may be made, as the preferable way to preserve the events, actions and discussion at a meeting.  The State Bar must provide at least that amount of effort to recording and preserving the actions taken in a Formal Hearing, just as most Courts now automatically "tape record" everything that happens in a Hearing, in order to keep pace with improvements in technology which increase reliability and accuracy over the older, 'traditional', methods of making and keeping a record of events.

265.   The standard of "Due Process" is a moving target, as technology provides improved methods of testing, identifying and preserving evidence, and more reliable methods become mandatory when there is evidence that the 'current' or 'older' methods are less reliable than the 'newer' and 'improved' methods of making and keeping an accurate record of events.

266.   Just as conducting a trial involving a question of "<u>who</u> did what" now requires the use of "DNA evidence" to prove or disprove "identity" in cases where it is applicable, the State Bar of Nevada can no longer rely on the methods of making and keeping evidence of "what happened" at a hearing that are susceptible to misunderstanding, tampering or corrosive influences, using technologies (shorthand notes & steno machines) that were developed in the early 1900's, in preference to more modern technologies (e.g., audio & video recorders) that are more reliable and less subject to tampering, misunderstandings and corrosive influences; and the continued reliance on the older and less reliable practices becomes a "Due Process" issue when more reliable methods are readily available and in

1   common use in comparable proceedings.

2   **267.**   In the transcript of the Hearing of August 28, 2012, which was (on information and belief)

3   recorded by the State Bar, but allegedly not by the Sunshine Court Reporters, there are repeated

4   references to "speaking to the microphone", 'standing by the microphone', and other indications that the

5   proceedings were being recorded; and there were few interruptions by **Carol Hummel**, the Court

6   Reporter, to stop a witness or attorney to ask them to repeat what they had just said.

7   **268.**   In contrast, the Hearing on September 17, 2012, was apparently not recorded, or the Court

8   Reporter did not have access to the 'recording', which required **Carol Hummel** to make numerous

9   interruptions and to ask numerous times for a witness or attorney to repeat themselves.

10  **269.**   These interruptions and requests for repetition are, of course, not noted on the official transcript;

11  but neither are there the references in the transcript to 'standing close to the microphone', 'moving to the

12  microphone' and 'speaking to the microphone', in the September 17, 2012, transcript, as there are in the

13  transcript of the August 28, 2012, Hearing.

14  **270.**   However, **Breck** recalls specifically that **Patrick King** acknowledged (in the August 28, 2012

15  Hearing) receiving the "keys" to the **TPI** office from **Monica Caffaratti**, and responded that "but I

16  didn't use them for anything".

17  **271.**   But that same event is reported in the typed transcript (Transcript of August 28, 2012 Hearing, at

18  pages 288 - 289) without the admission that **King** received the "keys to the office", and states at:

19  Tr. P. 288   "24.   MR. **KING**: Objection. I never entered the

20                    "25.   office, never had access to the office, was never invited

21  Tr. P. 289   "1.    to the office, never given any documents."

22  **272.**   Therefore, **Breck** alleges (on information and belief) that IF the State Bar of Nevada failed to

23  make an audio recording of the contested "formal Hearing" in a matter where Bar Counsel seeks to end

24  the professional life of the Defendant-Respondent by "disbarment", the failure to meet the highest

1    standards of "Due Process" and "Equal Protection" is a "Per Se" Irreparable Violation of **Breck**'s Civil

2    Rights guaranteed by the 14th Amendment to the U.S. Constitution.

3    273.   And, IF the State Bar did make an "audio recording" of the August 28, 2012 Hearing, and failed

4    or refused to make it available to **Breck** when requested, that act of concealment or denial constitutes

5    "SPOLIATION" of Evidence in violation of **Breck**'s Civil Rights to "Due Process" in violation of the

6    14th Amendment to the U.S. Constitution.

7    274.   And further, **Breck** alleges that such violation, when combined with a course of conduct that

8    reeks of many and multiple violations of "Due Process" and "Equal Protection" as alleged in this

9    Complaint, in complete disregard of **Breck**'s Civil Rights, displays a wanton, intentional and reckless

10   disregard for the Civil Rights of **Breck**, which vitiates the entire Hearing and Decision Process, which

11   was used to destroy the business, employment, life and reputation of **Breck**.

12   275.   And **Breck** further alleges that this violation of **Breck**'s Civil Rights to "Due Process" and

13   "Equal Protection", when considered in relation to the other violations of **Breck**'s Civil Rights alleged

14   herein, establishes a pattern of violations of **Breck**'s Civil Rights that establishes a method and manner

15   of operating the State Bar of Nevada, which evidences the attitude that Bar counsel (and those who aid,

16   abet, assist, act in concert or co-conspire with Bar counsel) are "above the law" and not required to

17   comply with the same rules (including specifically but without limitation, "Due Process" and "Equal

18   Protection") as apply to other agencies and individuals who do not operate under the authority and

19   protection of the Nevada Supreme Court.

20   276.   Such an abuse of power mandates that stricter rules must be put in place and vigorously enforced

21   against the State Bar in future cases, and that the State Bar of Nevada must be enjoined from continuing

22   to persecute **Breck** and continuing its intentional efforts to destroy **Breck**'s life and livelihood for

23   political purposes, contrary to the Constitution and Laws of the United States.

24   //

**XXXI.  INDUCING ATTORNEYS TO VIOLATE THEIR ATTORNEY-CLIENT PRIVILEGE WITHOUT COMPLIANCE WITH APPLICABLE RULES OF PROFESSIONAL CONDUCT (RPC 4.2 & 4.4) IS A "PER SE" IRREPARABLE VIOLATION OF "DUE PROCESS" AND "EQUAL PROTECTION" IN VIOLATION OF THE 14TH AMENDMENT TO THE U.S. CONSTITUTION**

277.  Most of the attorneys called to testify were formerly employed by **TPI**, and within the class of "managing-speaking agents" of **TPI**, as established by the Nevada Supreme Court in ***Palmer v. Pioneer Inn Associates, Ltd***, 59 P.3d 1237, 118 Nev. 943 (2002), because they represented **TPI** in their contact with **TPI** clients, and they represented **TPI** and the clients in their contacts with other litigants and the courts; therefore each of these attorneys was within the scope of the prohibition of the "no contact" rule in **RPC Rule 4.2** (formerly **SCR 182**). [14]

278.  These attorneys were asked, and testified over **Breck**'s objection, about matters that were and are within the protection of the "attorney-client" privilege, [15] as set forth in the Nevada Rules of Professional Conduct (the "**RPC**") **Rules 1.6 & 1.9 & 1.13**, and without compliance with the preconditions mandated by ***Palmer v. Pioneer Inn Associates*** (supra), under **RPC 4.2** [16] & **4.4**. [17]

---

[14] The six (6) attorneys formerly associated with **TPI**, who testified in violation of the attorney-client privilege, are: **Lynsey Williams** (NV Bar #12302); **Yvette Chevalier** (NV Bar #8739); **Mikyla Miller** (NV Bar #12042); **Monica Caffaratti** (NV Bar #9372); **Donald Beury** (NV Bar #151); and **Brian Hunt** (NV Bar #11163). None of the attorneys indicated that **Patrick King**, or any other Bar counsel, had warned them about the potential violation of "attorney-client privilege" or the potential consequences of that violation.

[15] Note that Breck does not contend that merely because the witness is an "attorney" and testified, that the "attorney" violated the "attorney-client" privilege. Attorney James Adams (NV Bar #6874) and Paul Freitag (NV Bar #126) both testified; but they did not testify about 'conversations' with or 'statements made to or by' Breck or others associated with Breck or TPI, or their "opinions" or "impressions", and thus their testimony did not violate the "attorney-client" privilege of **RPC 1.6 & 1.9**, as described in ***Upjohn Co. v. United States***, 449 U.S. 383, at 395-96, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981).

[16] The Nevada Rules of Professional Conduct differ somewhat from the ABA Model Rules of Professional Conduct; <u>the Nevada RPC Rule 4.2 and the comments thereto state</u>:
"**RPC Rule 4.2. Communication With Person Represented by Counsel.** In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order.
    [Added; effective May 1, 2006.]
Model Rule Comparison—2006
    Rule 4.2 (formerly Supreme Court Rule 182) is the same as ABA Model Rule 4.2. While the text of the two rules is identical, the rules are applied differently in two respects. <u>First, Nevada has adopted the managing-speaking agent test to determine which constituents of an organization are covered by the no-contact rule. *Palmer v. Pioneer Inn Assocs., Ltd.*</u>, 118 Nev. 943, 59 P.3d 1237 (2002). The comments to the Model Rule adopt a different test. Model Rules of Prof'l Conduct R. 4.2 cmt. 7 (2004). Second, Nevada has interpreted the Rule to prohibit a lawyer who is representing himself from contacting a represented person in the matter. ***In re Discipline of Schaefer***, 117 Nev. 496, 25 P.3d 191, as modified, 31 P.3d 365 (2001). The comments to the Model Rule suggest that it may not prohibit contact when the lawyer represents himself. See Model

**279.**  **RPC Rules 1.6 & 1.9 & 1.13** provide in pertinent part:

"**Rule 1.6 Confidentiality of Information.**
(a) A lawyer shall not reveal information relating to the representation of a client unless the client gives informed consent, * * * or the disclosure is permitted by <u>paragraphs (b) and (c)</u>.
(b) A lawyer may reveal information relating to the representation of a client to the extent the lawyer reasonably believes necessary:
    (1) <u>To prevent reasonably certain death or substantial bodily harm</u>; * * *
(c) A lawyer shall reveal information relating to the representation of a client to the extent the lawyer reasonably believes <u>to prevent a criminal act that the lawyer believes is likely to result in reasonably certain death or substantial bodily harm</u>." - (**bold** & <u>underline</u> added)

"**Rule 1.9 Duties to Former Clients.**
(a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing. * * *
(c) A lawyer who has formerly represented a client in a matter * * * shall not thereafter:   * * *
    (2) Reveal <u>information relating to the representation except as these Rules would permit or require with respect to a client</u>." - (**bold** & <u>underline</u> added)

"**Rule 1.13.   Organization as Client.**
(a) <u>**A lawyer employed or retained by an organization represents the organization**</u> acting through its duly authorized constituents.
(b) **If a lawyer for an organization knows that an officer,** employee or other person associated with the organization **is engaged in action, intends to act or refuses to act <u>in a matter related to the representation</u>** that is **a violation of a legal obligation to the organization,** or a violation of law that reasonably might be imputed to the organization, **<u>and that is likely to result in substantial injury to the organization, then the lawyer shall proceed as is reasonably necessary</u> in the best interest of the organization**. * * *
(c)  Except as provided in paragraph (d), **if**
    (1)  despite the lawyer's efforts in accordance with paragraph (b), the highest authority that can act on behalf of the organization insists upon or fails to address in a timely and appropriate manner an action, or a refusal to act, that is **<u>clearly a violation of law</u>, and**
    (2)  the lawyer reasonably believes that **<u>the violation is reasonably certain to result in substantial injury to the organization</u>, then the lawyer may reveal information relating to**

---

Rules of Prof'l Conduct R. 4.2 cmt. 4 (2004) ("Parties to a matter may communicate directly with each other . . . ."); <u>***Pinsky v. Statewide Grievance Committee***</u>, 578 A.2d 1075 (Conn. 1990) (holding that Connecticut rule based on Model Rule 4.2 does not prohibit contact when lawyer represents himself). But see <u>***Runsvold v. Idaho State Bar***</u>, 925 P.2d 1118 (Idaho 1996) (holding that Idaho rule based on Model Rule 4.2 applies when lawyer represents himself)." - (**bold** & <u>underline</u> added)
[17]  **RPC Rule 4.4. Respect for Rights of Third Persons.**
"(a)  In representing a client, **a lawyer shall not** use means that have no substantial purpose other than to embarrass, delay, or burden **a third person, or <u>use methods of obtaining evidence that violate the legal rights of such a person</u>**.
 (b)  A lawyer who receives a document relating to the representation of the lawyer's client and knows or reasonably should know that the document was inadvertently sent shall promptly notify the sender." - (**bold** & <u>underline</u> added)

the representation <u>whether or not Rule 1.6 permits such disclosure</u>, but <u>only if and to the extent</u> the lawyer reasonably believes <u>necessary</u> <u>to prevent substantial injury to the organization</u>. * * *

(f) **In dealing with an organization's** directors, officers, employees, members, shareholders or other constituents, a lawyer shall explain the identity of the client to the constituent and reasonably attempt to ensure that the constituent realizes that the lawyer's client is the organization rather than the constituent. * * * " - (**bold** & <u>underline</u> added)

280.   <u>None of the attorneys</u> formerly associated with **TPI** or **Breck** testified that they had received a "<u>**written waiver of attorney-client privilege**</u>" from **Breck** (the Executive Director of **TPI**) or by Resolution of the Board of Directors of **TPI**; and none of the attorneys formerly associated with **TPI** testified that they believed their statements were reasonably necessary "<u>**to prevent reasonably certain death or substantial bodily harm**</u>"; and since Bar Counsel clearly did not comply with the 'warnings' required by ***Palmer v. Pioneer Inn Associates*** (supra), the testimony of the attorneys who testified in violation of their 'attorney-client privilege' should be stricken from the record, and Bar counsel and the attorneys who violated their RPC obligations, should be censured for the violation. [18]

281.   Therefore, **Breck** alleges that the Bar counsel who conducted the interviews, and collected the statements from the former **TPI** attorneys who testified at the Hearings on August 28, 2012 and Sept. 17, 2012, acted improperly by failing to warn the attorneys that their statements are or may be a "violation" of the **RPC 1.6 & 1.9 & 1.13**, and the potential consequences of "violation of attorney-client" privilege, and that **Patrick King**, **Janeen Isaacson**, **David Clark** and any other interviewing Bar counsel should be "sanctioned" for their violation of **RPC 4.2 & 4.4**, and the testimony of the six (6) attorneys who violated their "attorney-client" privilege should be stricken from the record. [19]

282.   And **Breck** further alleges that this violation of **Breck**'s Civil Rights to "Due Process" and

---

[18] The final footnote (# 65) in ***Palmer v. Pioneer Inn Associates*** (supra) states:
"65. See ***Upjohn***, [***Upjohn Co. v. United States***, 449 U.S. 383, at 395-96, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981)]. We note that <u>an attorney who abuses the interview process by inquiring into privileged matters</u>, or even by permitting an employee to refer to confidential communications without immediately warning the employee that such communications are protected and should not be disclosed, <u>is subject to appropriate sanctions</u>." - (**bold** & <u>underline</u> added)

[19] See Footnotes **15** & **16** supra.

1    "Equal Protection", when considered in relation to the other violations of **Breck**'s Civil Rights alleged

2    herein, establishes a pattern of violations of **Breck**'s Civil Rights that establishes a method and manner

3    of operating the State Bar of Nevada, which evidences the attitude that Bar counsel (and those who aid,

4    abet, assist, act in concert or co-conspire with Bar counsel) are "above the law" and not required to

5    comply with the same rules (including specifically but without limitation, "Due Process" and "Equal

6    Protection") as apply to other agencies and individuals who do not operate under the authority and

7    protection of the Nevada Supreme Court.

8    **XXXII.   THE FAILURE TO PROVIDE COPIES OF OMITTED DOCUMENTS UPON REQUEST DURING THE COURSE OF THE HEARING IS A FORM OF "SPOLIATION" AND A "PER SE"**

9    **IRREPARABLE VIOLATION OF "DUE PROCESS" AND "EQUAL PROTECTION" IN VIOLATION OF THE 14TH AMENDMENT TO THE U.S. CONSTITUTION - BECAUSE THE OPPORTUNITY**

10   **FOR CROSS-EXAMINATION OF WITNESSES IN RELATION TO SUCH OMITTED DOCUMENTS IS LOST FOREVER**

11

12   **283.**   After being told by Linda Shaw, the owner of Sunshine Reporting, that the State Bar had an

     'Audio Recording', but that the Court Reporter did not have an 'audio recording', **Breck** filed a
13
     MOTION TO COMPEL PRODUCTION OR EXCLUDE EVIDENCE, and a NOTICE OF OBJEC-
14
     TION TO ORDER PROHIBITING TESTIMONY OF **JANEEN ISAACSON** AS NOT A PROPER
15
     WITNESS & THAT **PATRICK KING** CANNOT BE CALLED TO TESTIFY, both served and filed
16
     on September 14, 2012 - a true copy of which MOTION and NOTICE OF OBJECTION together with
17
     proof of EMail & EFax are attached as **EXHIBIT 'AC'** and incorporated herein by this reference.
18
     **284.**   Both documents were provided to document the record, with a written MOTION and NOTICE,
19
     in addition to prior verbal requests made at the Hearing on August 28, 2012, and disregarded entirely
20
     by the State Bar and were DENIED at the Hearing on September 17, 2012,  by **Caren Jenkins**, as then
21
     acting Chair of the formal Hearing Panel.
22
     **285.**   And **Breck** further alleges that this violation of **Breck**'s Civil Rights to "Due Process" and
23
     "Equal Protection", when considered in relation to the other violations of **Breck**'s Civil Rights alleged
24

1  herein, establishes a pattern of violations of **Breck**'s Civil Rights that establishes a method and manner

2  of operating the State Bar of Nevada, which evidences the attitude that Bar counsel (and those who aid,

3  abet, assist, act in concert or co-conspire with Bar counsel) are "above the law" and not required to

4  comply with the same rules (including specifically but without limitation, "Due Process" and "Equal

5  Protection") as apply to other agencies and individuals who do not operate under the authority and

6  protection of the Nevada Supreme Court.

7  **XXXIII.  OTHER EXAMPLES AND EVIDENCE OF 'SPOLIATION'**

8  **286.**  'SPOLIATION NOTICES' were included in each of the five (5) MOTIONS IN LIMINE served

9  on the State Bar on January 3, 2012 (see **EXHIBIT 'J'**), and were also given to Bar Counsel in separate

10  documents, i.e.:  **[1]** MOTION FOR ORDER REQUIRING PRODUCTION OF ALL EVIDENCE,

11  DOCUMENTS, NOTES & IDENTITY OF ALL WITNESSES IN THE POSSESSION OR KNOWN

12  TO THE STATE BAR OF NEVADA on July 30, 2012 - **EXHIBIT 'AC'**; **[2]** Letter DEMAND FOR

13  DOCUMENTS - **EXHIBIT 'AD'** on August 6, 2012; and **[3]** formal SPOLIATION NOTICES –in

14  substance as represented in **EXHIBIT 'AE'** on August 28, 2012 – each of which said **EXHIBITS 'AC'**

15  & '**AD**' & '**AE**' are incorporated herein by this reference.

16  **287.**   In addition, Breck requested King to certify in writing that he had produced all of the evidence in

17  the possession of the State Bar on August 10, 2012, when King finally delivered the copies of what he

18  claimed were all of the State Bar documents, but King refused to sign the "Certification", stating to

19  Beverly Teichgraeber that "I would be certifying to things that I cannot certify." – A true copy of the

20  Certification which was requested from Patrick King and refused is attached as **EXHIBIT 'AD'** and

21  incorporated herein by this reference.

22  **288.**   Notwithstanding these multiple efforts to obtain documents from the State Bar via Demands and

23  'SPOLIATION NOTICES', there are multiple examples of 'Spoliation' by Bar Counsel during the

24  course of these proceedings:

1    **[1]** Belatedly producing copies of approximately 10,000 pages of Documents less than 20 days

2    before the August 28 Scheduled Hearing Date, along with a verbal representation of **Patrick King** that

3    the documents produced were "all of the Bar Documents pertaining to the case against **Breck**", with a

4    Bates Stamp Only, and with NO INDEX that would permit the identification and location of the

5    documents produced, notwithstanding that **Breck** specifically requested that **Patrick King** produce an

6    INDEX of the Documents produced, and **Patrick King**'s refusal to sign a statement certifying that all of

7    the Documents required by the applicable authorities have been produced (**EXHIBIT 'AD'**), including

8    specifically but without limitation ***Brady v. Maryland***, 373 US 83 (1963), ***Giglio v. United States***, 405

9    US 150 (1972), and ***Jencks v. United States***, 353 US 657 (1957);

10   **[2]** Handwritten Memo from **David Clark** to **Janeen Isaacson**, dated March 7, 2011, which

11   refers to an EMail providing written instructions (to open an "Investigation" file against **Breck** and

12   **TPI** ?), which EMail was not included in the 10,000 pages of documents furnished on August 10, 2012

13   or otherwise produced in response to any subsequent request - a true copy of which is attached as

14   **EXHIBIT 'AE'** and incorporated herein by this reference;

15   **[3]** Two (2) letters from **Patrick King** to **Monica Caffaratti** - referred to in the testimony of

16   **Monica Caffaratti** [Transcript page 276 at lines 16 - 23], which would potentially shed some light on

17   the question: 'Why would **Monica Caffaratti** be so terrified that she would engage in criminal conduct

18   in order to attempt to 'please' **Patrick King**, while denying that there was any "inducement" for her

19   testimony ?' [Transcript pages 276 - 295] - a true copy of which Transcript pages 276 - 295 and

20   **Caffaratti**'s Affidavit & Letter to **Patrick King** are attached as **EXHIBIT 'AF'** and incorporated

21   herein by this reference;

22   **[4]** Copies of all DISCIPLINARY FILES and Settlement Agreements between attorney

23   witnesses and the State Bar, none of which have been produced, although demanded in the Letter from

24   **Breck** to **Patrick King** dated August 6, 2012, and again at the Hearing [Transcript pages 170 - 174] - a

1  true copy of which Letter dated August 6, 2012 and Transcript pages 170-174 are attached as

2  **EXHIBIT 'AG'** and incorporated herein by this reference;

3      [5] Copies of all correspondence directly and indirectly between witness Guerrero and the State

4  Bar (including without limitation any letters between any Bar personnel and attorney **Roger Doyle**

5  and/or Ms. Georgia Hedrick, which pertain in any way to witness Guerrero) based on the fact that Ms.

6  Georgia Hedrick seems to have been involved in "persuading" Guerrero to file a Complaint against

7  **Breck**, even though she had never met **Breck** (based on letter dated July 29, 2011 from "Georgia

8  Hedrick" to **Patrick King**) and fact that **Roger Doyle** appears to have acquired all of the clients who

9  are unhappy with **TPI** and has filed at least one suit on their behalf. - a true copy of the Georgia

10  Hedrick letter to **Patrick King** is attached as **EXHIBIT 'AH'**, and incorporated herein by this

11  reference, and a true copy of the letter advising that **Roger Doyle** had been retained by Guerrero is

12  attached as **EXHIBIT 'AI'** and incorporated herein by this reference;

13      [6] A complete copy of the AUDIO RECORDING made by the State Bar at any time during the

14  Formal Hearing in relation to Grievance File #11-1103 & #11-1378;  There are multiple references in

15  the official Transcript to the recording being made during the first Hearing, but no references in the

16  official Transcript to a recording being made during the second hearing;  In addition, although the

17  Court Reporter (**Carol Hummel**) told **Breck** quite explicitly that he could obtain a copy of the audio

18  recording of the Hearing, as well as a copy of the formal typed Transcript, in order to compare the

19  recording with the Transcript, when **Breck** attempted to obtain the copies from the Sunshine

20  Transcription Service, he was informed by Ms. Linda Shaw, the purported "owner" of the Sunshine

21  Transcription Service that there was <u>no "recording"</u> of the Hearing (other than the recording made by

22  the Bar) and that she could not furnish **Breck** with a copy of the "audio recording" - but that **Breck**

23  might be able to obtain it from the State Bar; A subsequent demand was made to the State Bar to

24  produce the "audio recording" in Breck's MOTION TO COMPEL PRODUCTION OR EXCLUDE

TESTIMONY, but it was ignored; - A true copy of which MOTION TO COMPEL (including the demand for the State Bar to produce the "audio recording") is attached as **EXHIBIT 'AJ'** and incorporated herein by this reference.

289.   And **Breck** further alleges that the multiple concealment and/or destruction constitutes spoliation of evidence, which is a violation of **Breck's** Civil Rights to "Due Process" and "Equal Protection", when considered in relation to the other violations of **Breck's** Civil Rights alleged herein, establishes a pattern of violations of **Breck's** Civil Rights that establishes a method and manner of operating the State Bar of Nevada, which evidences the attitude that Bar counsel (and those who aid, abet, assist, act in concert or co-conspire with Bar counsel) are "above the law" and not required to comply with the same rules (including specifically but without limitation, "Due Process" and "Equal Protection") as apply to other agencies and individuals who do not operate under the authority and protection of the Nevada Supreme Court.

**XXXIV.   PERMITTING BAR COUNSEL TO INTRODUCE "EVIDENCE" AT A FORMAL HEARING WHICH WAS NOT ALLEGED IN THE COMPLAINT OR SUMMARIZED IN A "STATEMENT OF FACTS" TO WHICH EACH WITNESS WILL TESTIFY - DELIVERED TO RESPONDENT PRIOR TO THE HEARING AS REQUIRED BY SCR 105(2)(C) - IS A "PER SE" IRREPARABLE VIOLATION OF "DUE PROCESS" AND "EQUAL PROTECTION" IN VIOLATION OF THE 14TH AMENDMENT TO THE U.S. CONSTITUTION**

290.   The Supreme Court Rules (the "SCR") at **Rule 105(2)(c)** states in pertinent part:

"**(c) Time to conduct hearing; notice of hearing; discovery of evidence against attorney.**
The hearing panel shall conduct a hearing within 45 days of assignment and give the attorney at least 30 days' written notice of its time and place. The notice shall be served in the same manner as the complaint, and shall inform the attorney that he or she is entitled to be represented by counsel, to cross-examine witnesses, and to present evidence. The notice shall be accompanied by a summary prepared by bar counsel of the evidence against the attorney, and the names of the witnesses bar counsel intends to call for other than impeachment, together with a brief statement of the facts to which each will testify, all of which may be inspected up to 3 days prior to the hearing. Witnesses or evidence, other than for impeachment, which became known to bar counsel thereafter, and which bar counsel intends to use at the hearing, shall be promptly disclosed to the attorney. For good cause shown, the chair may allow additional time, not to exceed 90 days, to conduct the hearing." - (**bold** & underline added)

291.   However, the "SUMMARY OF EVIDENCE; DESIGNATION OF WITNESSES" served by

1   **Patrick King** on **Breck** on July 25, 2012 (received by **Breck** on July 27, 2012) provided no "summary

2   of evidence" or "statement of the facts to which each [witness] will testify". - A true copy of the said

3   "SUMMARY OF EVIDENCE; DESIGNATION OF WITNESSES", signed by **Patrick King**, stamped

4   as filed on "Jul 25, 2012" (received by **Breck** on July 27, 2012) is attached as **<u>EXHIBIT 'AK'</u>** and

5   incorporated herein by this reference.

6   **292.**   An objection was made by **Breck** at the very beginning of the Hearing, that "no facts were stated

7   in the so-called 'SUMMARY OF EVIDENCE'", to which **Caren Jenkins**, acting as the Chair of the

8   Hearing Panel responded "that's all your going to get" - but **Breck** has been unable to find either

9   **Breck**'s objection or Jenkins response in the typed transcript - although it is likely that it is recorded on

10   the "audio recording" that the State Bar allegedly made of the August 28, 2012, Hearing, if the

11   Recorder was turned on before the preliminary issues were addressed at the beginning of the Hearing.

12   **293.**   Therefore, **Breck** alleges that it was a violation of "Due Process" and "Equal Protection" to

13   permit **Patrick King** to offer evidence that was not reflected in a "Summary of Evidence" or

14   "Statement of Facts" as required by **SCR Rule 105(2)(c)**, and not pleaded or alleged in the Complaint.

15   **294.**   And **Breck** further alleges that this violation of **Breck**'s Civil Rights to "Due Process" and

16   "Equal Protection", when considered in relation to the other violations of **Breck**'s Civil Rights alleged

17   herein, establishes a pattern of violations of **Breck**'s Civil Rights that establishes a method and manner

18   of operating the State Bar of Nevada, which evidences the attitude that Bar counsel (and those who aid,

19   abet, assist, act in concert or co-conspire with Bar counsel) are "above the law" and not required to

20   comply with the same rules (including specifically but without limitation, "Due Process" and "Equal

21   Protection") as apply to other agencies and individuals who do not operate under the authority and

22   protection of the Nevada Supreme Court.

23   //

24   //

1  **XXXV.** ADMITTING EVIDENCE THAT IS OBJECTIONABLE UNDER THE RULES OF EVIDENCE IN THE
   DISTRICT COURTS - SUCH AS HEARSAY AND EVIDENCE OBTAINED IN VIOLATION OF THE
2  RULES OF PROFESSIONAL CONDUCT (E.G., RULES 4.2 & 4.4, & RULES 1.6 & 1.9 & 1.13) -
   IS A VIOLATION OF "DUE PROCESS" & "EQUAL PROTECTION" & "PRIVILEGES &
3  IMMUNITIES" IN VIOLATION OF THE 14TH AMENDMENT TO THE U.S. CONSTITUTION

4  **295.** SCR 105 (2)(e) provides that:

5  "**(e) Rules of evidence; support of panel's decision.** The rules applicable to the admission of
   evidence in the district courts of Nevada govern admission of evidence before a hearing panel.
6  Evidentiary rulings shall be made by the chair of the panel, if one has been designated, or by the
   chair of the appropriate disciplinary board prior to such designation. The findings of the panel
7  must be supported by clear and convincing evidence." - (**bold** added)

8  **296.** However, notwithstanding the clear statement that requires the Chair of the Hearing Panel to

9  apply the "rules applicable to the admission of evidence in the district courts", **Breck** alleges that

10 **Caren Jenkins**, as Chair of the Hearing Panel did not apply or enforce the "rules applicable to the

11 admission of evidence in the district courts", but instead permitted **Patrick King** to introduce evidence

12 based on his own "testimony" (i.e., statements made in 'argument' and while not under oath as a

13 witness), upon which **Caren Jenkins** relied when writing the purported "Decision" of the Hearing

14 Panel.

15 **297.** And, in addition, **Breck** alleges that **Caren Jenkins** admitted "Hearsay" statements and

16 "Hearsay" affidavits of witnesses, which were not admissible under the "rules applicable to the

17 admission of evidence in the district courts", and evidence that was inadmissible because obtained in

18 violation of the Rules of Professional Conduct (e.g., **RPC Rules 4.2 & 4.4**) and in violation of the

19 "attorney-client privilege" (i.e., **RPC Rules 1.6 & 1.9 & 1.13**) without an evidentiary foundation

20 establishing that the "privilege" had been waived or that an exception to the "privilege" had been

21 established.

22 **298.** And further **Breck** alleges that **Caren Jenkins** even stated that "those rules don't apply because

23 this is an administrative hearing" - notwithstanding the clear statement in **SCR 105(2)(e)** (above) to the

24 contrary.

1   **299.**   Therefore **Breck** alleges that the admission of evidence that was "inadmissible" under the "rules

2   applicable to the admission of evidence in the district courts" was a violation of "Due Process" and

3   "Equal Protection" because in violation of the applicable rules of **SCR 105(2)(e)**, and therefore a

4   violation of the 14th Amendment to the U.S. Constitution.

5   **300.**   And **Breck** further alleges that this violation of **Breck**'s Civil Rights to "Due Process" and

6   "Equal Protection", when considered in relation to the other violations of **Breck**'s Civil Rights alleged

7   herein, establishes a pattern of violations of **Breck**'s Civil Rights that establishes a method and manner

8   of operating the State Bar of Nevada, which evidences the attitude that Bar counsel (and those who aid,

9   abet, assist, act in concert or co-conspire with Bar counsel) are <u>"above the law"</u> and not required to

10   comply with the same rules (including specifically but without limitation, "Due Process" and "Equal

11   Protection") as apply to other agencies and individuals who do not operate under the authority and

12   protection of the Nevada Supreme Court.

13   **XXXVI.   DENYING BRECK THE RIGHT TO CALL WITNESSES AND INTRODUCE EVIDENCE - IN THE
    ABSENCE OF A DULY ADOPTED RULE AUTHORIZING THE CHAIRMAN TO IMPOSE SUCH RULES**

14   **DURING THE HEARING - IS A "PER SE" IRREPARABLE VIOLATION OF "DUE PROCESS" AND
    "EQUAL PROTECTION" IN VIOLATION OF THE 14TH AMENDMENT TO THE U.S. CONSTITUTION**

15

16   **301.**   **SCR 105 (4)** provides that:

17       "**(4) Rules of Procedure.**  The chairs, <u>after consulting with their respective disciplinary boards</u>,
        may adopt rules of procedure, <u>subject to approval by the board of governors</u>." - (**bold &**
        <u>underline</u> added)

18

19   **302.**   On information and belief, **Breck** alleges that no rules of procedure (e.g., "local rules") have

20   been adopted by **Caren Jenkins**, acting as Chair of the Hearing Panel, reviewed by the applicable

21   disciplinary board or approved by the board of governors of the State Bar of Nevada, as required by

22   **SCR 105(4)**.

23   **303.**   However, notwithstanding the absence of authority granted by any duly adopted "rule", **Caren**

24   **Jenkins**, acting as Chair of the Hearing Panel, required that **Breck** submit a list designating witnesses

that **Breck** might or could call, and denied **Breck** the right to call several persons identified on the list

that **Breck** submitted. - A true copy of:

    **[A]** the Email from **Breck** to **Jenkins**, **King** & **Isaacson**, dated Sept 4, 2012, transmitting the

    attached copies of:

        **[1]** Subpoena for **Patrick King**;

        **[2]** Subpoena for **Janeen Isaacson**;

        **[3]** Respondent's Witness List dated Sept 4, 2012;

**[B]** Email from **Jenkins** to **Breck** & **King**, dated Sept. 4, 2012, at 5:48 PM, requesting additional

information re the Respondent's Witness List;

**[C]** Email from **Breck** to **Jenkins** & **King**, dated Sept. 5, 2012, transmitting the attached copies

of Supplement to Respondent's Witness List;

**[D]** Email from **King** to **Jenkins** & **Breck** & Isaacson, dated Sept. 5, 2012, Objecting to **Breck's**

Witness List and Moving to Quash Subpoenas for **King**, **Isaacson** & **Farmer**;

**[E]** Email from **King** to **Jenkins**, **Isaacson** & **Breck**, dated Sept. 5, 2012, at 9:46 AM & Email

from **King** to **Jenkins** & **Breck**, dated Sept. 5, 2012, at 4:21 PM submitting the attached MEMO

from **Isaacson**;

**[F]** ORDER DENYING WILLIAM **BRECK'S** REQUEST FOR CONTINUANCE and ORDER

DENYING IN PART AND GRANTING IN PART WILLIAM **BRECK'S** REQUEST FOR

ADDITIONAL WITNESSES; and

**[G]** Email from **Breck** to **Jenkins** & **King**, dated Sept. 14, 2012, transmitting the attached:

    **[1]** MOTION TO COMPEL PRODUCTION OR EXCLUDE EVIDENCE, and

    **[2]** NOTICE OF OBJECTION TO ORDER EXCLUDING WITNESSES **Isaacson**,

    **King**, **Farmer** & **Hannuksela**;

is attached as **EXHIBIT 'AL'** and incorporated herein by this reference.

**304.** Therefore, **Breck** alleges (on information and belief) that **Jenkins**, **King** and **Isaacson** violated

**Breck**'s Civil Rights to "Due Process" and "Equal Protection" in violation of the 14th Amendment to

the U.S. Constitution, by assuming authority that was not properly delegated, reviewed or approved

pursuant to one or more "Rules of Procedure" adopted in accordance with **SCR 105(4)** for the conduct

of a Hearing Panel.

**305.** And **Breck** further alleges that this violation of **Breck**'s Civil Rights to "Due Process" and

"Equal Protection", when considered in relation to the other violations of **Breck**'s Civil Rights alleged

herein, establishes a pattern of violations of **Breck**'s Civil Rights that establishes a method and manner

of operating the State Bar of Nevada, which evidences the attitude that Bar counsel (and those who aid,

abet, assist, act in concert or co-conspire with Bar counsel) are "above the law" and not required to

comply with the same rules (including specifically but without limitation, "Due Process" and "Equal

Protection") as apply to other agencies and individuals who do not operate under the authority and

protection of the Nevada Supreme Court.

**XXXVII.    PROHIBITING RESPONDENT FROM CALLING WITNESSES BECAUSE NOT LISTED PRIOR
TO THE HEARING IS A "PER SE" IRREPARABLE VIOLATION OF "DUE PROCESS" AND "EQUAL
PROTECTION" IN VIOLATION OF THE 14TH AMENDMENT TO THE U.S. CONSTITUTION - WHEN
THE APPLICABLE RULES DO NOT REQUIRE RESPONDENT TO PRODUCE ANY WITNESS LIST AT
ANY SPECIFIC TIME - AND THE PANEL HAS NOT ADOPTED, PUBLISHED AND PROVIDED TO
RESPONDENT ANY RULES SPECIFYING SUCH RULES - IN ACCORDANCE WITH  SCR 105(4)**

**306.** **SCR 105(2)(c)** requires in pertinent part that:

> "The hearing panel shall conduct a hearing within 45 days of assignment and give the attorney at
> least 30 days' written notice of its time and place. The notice shall be served in the same manner
> as the complaint, and shall inform the attorney that he or she is entitled to be represented by
> counsel, to cross-examine witnesses, and to present evidence. The notice shall be accompanied
> by a summary prepared by bar counsel of the evidence against the attorney, and the names of the
> witnesses bar counsel intends to call for other than impeachment, together with a brief statement
> of the facts to which each will testify,....  Witnesses or evidence, other than for impeachment,
> which became known to bar counsel thereafter, and which bar counsel intends to use at the
> hearing, shall be promptly disclosed to the attorney. * * *" – (underlining added)

**307.** No other provision of **SCR 105**, pertaining to the conduct of a formal Hearing Panel, addresses

1    the identification or disclosure of witnesses or requires that the 'Attorney-Defendant-Respondent' ever

2    submit a list of witnesses to Bar counsel or to the Chair of the Hearing Panel.

3    **308.**    Therefore, **Breck** alleges that in the absence of any rule of procedure which requires the

4    'Attorney-Defendant-Respondent' to identify potential witnesses, before, at the commencement of or

5    during the Hearing in which the witnesses may be called, the Chair of the Hearing Panel lacks the

6    authority to impose such an identification or disclosure requirement, and by imposing such an

7    identification and disclosure requirement, violated **Breck**'s Civil Rights to "Due Process" and "Equal

8    Protection" in violation of the 14th Amendment to the U.S. Constitution.

9    **309.**    And **Breck** further alleges that this violation of **Breck**'s Civil Rights to "Due Process" and

10   "Equal Protection", when considered in relation to the other violations of **Breck**'s Civil Rights alleged

11   herein, establishes a pattern of violations of **Breck**'s Civil Rights that establishes a method and manner

12   of operating the State Bar of Nevada, which evidences the attitude that Bar counsel (and those who aid,

13   abet, assist, act in concert or co-conspire with Bar counsel) are "above the law" and not required to

14   comply with the same rules (including specifically but without limitation, "Due Process" and "Equal

15   Protection") as apply to other agencies and individuals who do not operate under the authority and

16   protection of the Nevada Supreme Court.

17   **XXXVIII.    PROHIBITING RESPONDENT FROM EXAMINATION OF BAR COUNSEL ON POLITICAL**

18   **BASIS FOR PROCEEDINGS AND/OR CRIMINALITY 'ADMITTED IN OPEN COURT' DURING THE**
     **PROCEEDINGS IS A "PER SE" VIOLATION OF THE 14TH AMENDMENT TO THE U.S.**
     **CONSTITUTION - SINCE IT TAINTS THE VALIDITY OF THE ENTIRE PROCEEDING**

19
20   **310.**    In the Email dated Sept. 4, 2012, at 5:48 PM, from **Caren Jenkins** to **Breck** and **King** (EMail

     **[B]** in **EXHIBIT 'AL'**, Ms. Jenkins stated:
21
22            "As I am sure you can appreciate, for each witness you named, unless you provide some
              indication that the testimony you offer is directly related TO YOUR CONDUCT on the issues
              before the Disciplinary Board, the witness will not be permitted to be called and will not be
23            heard at the continued hearing on September 17, 2012." - (CAPS as in original)

24   **311.**    By eliminating the ability of the 'Attorney-Defendant-Respondent' to impeach the motives and

investigative techniques of the Bar counsel in instigating the 'investigation', and in view of the evidence

(alleged hereinabove) that the motive behind the investigation of **Breck** and **TPI** was "political" rather

than "disciplinary", and the little bit of evidence that was permitted to be introduced into the record (but

which was completely disregarded by the Hearing Panel, and not mentioned in its "Decision") of the

"criminality" involving Bar counsel, and the amount of stress imposed on the Attorney Witnesses (as

indicated by the admissions that **Miller** and **Caffaratti** were required to make to obtain a "private

reprimand", and the criminal actions that **Caffaratti** was induced by **King** to take to "ensure" that

**Breck** would be "sanctioned" - but without the correspondence from **King** to **Caffaratti** required to be

disclosed by the Panel Chair - thus keeping **King**'s complete involvement quite "secret"), the manner of

the conduct of the Hearing Panel would serve well as a model for a Court of "Star Chamber" or the

"Inquisition" - without regard to the truth that is hidden behind the motivations of the prosecutors.

312.   Therefore, on information and belief, based on the fact that much more evidence of the actions of

these actors behind the scenes can be obtained in a Court of Law, operating under the Constitution of

the United States, than in a closed and biased 'administrative hearing', **Breck** alleges that the objective

and procedure followed by **Jenkins**, **King**, **Clark** and **Peters**, and those who aided, abetted, assisted

and co-conspired with them, violated **Breck**'s Civil Rights to "Due Process" and "Equal Protection" in

violation of the 14th Amendment to the U.S. Constitution.

313.   And **Breck** further alleges that this violation of **Breck**'s Civil Rights to "Due Process" and

"Equal Protection", when considered in relation to the other violations of **Breck**'s Civil Rights alleged

herein, establishes a pattern of violations of **Breck**'s Civil Rights that establishes a method and manner

of operating the State Bar of Nevada, which evidences the attitude that Bar counsel (and those who aid,

abet, assist, act in concert or co-conspire with Bar counsel) are "above the law" and not required to

comply with the same rules (including specifically but without limitation, "Due Process" and "Equal

Protection") as apply to other agencies and individuals who do not operate under the authority and

protection of the Nevada Supreme Court.

**XXXIX.** **WHEN BAR COUNSEL IS WILLING AND ABLE TO "LIE", "SUBORN PERJURY" OR ENGAGE IN OR COUNTENANCE OTHER CRIMINALITY, A HEARING PANEL - COMPOSED OF MEMBERS THAT ARE SUBJECT TO POTENTIAL "INVESTIGATION" BY THE SAME BAR COUNSEL - CANNOT BE DEEMED TO BE "INDEPENDENT" OR "IGNORANT" OF THE POTENTIAL THREAT OF SIMILAR ACTION AGAINST A PANEL MEMBER WHO FAILS TO COMPLY WITH BAR COUNSEL'S DESIRED ACTION**

**314.** Considering that **King**'s involvement in "criminality", whether inspired or suggested or merely permitted, without restraint or consequence, caused several Attorneys to choose to violate their "attorney-client privilege" and "confidence" (in violation of **RPC Rule 1.6 & 1.9 & 1.13**), without any accountability by **King** for his violations of **RPC Rule 4.2 & 4.4**, was on display for all to see, it surpasses reason to believe that the members of the Hearing Panel (all of them - except for the non-attorney - subject to the same potential investigation by Bar counsel - with the same lack of restraints) would not be able to ascertain that it would be 'a dangerous thing' to 'go against Bar counsel' or 'what Bar counsel wanted', whether that realization was verbalized or left as a sub-conscious sensation.

**315.** Therefore, on information and belief, **Breck** alleges that the selection of a Hearing Panel, which is dominated by individuals who are subject to the same 'tortures' and 'persuasions' as the defendant and the attorney witnesses are subjected to, precludes the ability of most rational people to see the process as honest, open and conducted with 'fairness' and 'integrity'. And, therefore, **Breck** alleges that it is impossible, without increased protections for the members of the Hearing Panel against the potential 'repercussions' that a dissatisfied Bar counsel might or could bring to bear on a member of the Hearing Panel, for a Hearing Panel constituted from individuals that are subject to the same treatment as Bar counsel has evidenced himself capable of in this case, to be impartial, fair or objective, particularly in cases, like this case, which are motivated by a 'political motive' of Bar counsel.

**316.** And therefore, **Breck** alleges, on information and belief, that the current structure of the 'so-called' disciplinary system of the State Bar of Nevada, does not, and potentially can not, be operated

1   with the necessary assurance that the Civil Rights of the individuals accused by the State Bar will be

2   fully protected and respected; and therefore that the current system of Screening and Hearing Panels,

3   operating without a clear structure founded on respect for the "Due Process" and "Equal Protection"

4   rights of every individual, is a violation of "Due Process" and "Equal Protection" in violation of the

5   14th Amendment to the U.S. Constitution.

6   **317.**   And **Breck** further alleges that this violation of **Breck**'s Civil Rights to "Due Process" and

7   "Equal Protection", when considered in relation to the other violations of **Breck**'s Civil Rights alleged

8   herein, establishes a pattern of violations of **Breck**'s Civil Rights that establishes a method and manner

9   of operating the State Bar of Nevada, which evidences the attitude that Bar counsel (and those who aid,

10  abet, assist, act in concert or co-conspire with Bar counsel) are <u>"above the law"</u> and not required to

11  comply with the same rules (including specifically but without limitation, "Due Process" and "Equal

12  Protection") as apply to other agencies and individuals who do not operate under the authority and

13  protection of the Nevada Supreme Court.

14  **XL.**   **FAILING TO FILE THE RECORD ON APPEAL WITHIN 30 DAYS OF ENTRY OF THE DECISION - & FILING AN INCOMPLETE RECORD IN A HAPHAZARD WAY WITH MULTIPLE OMISSIONS AND ILLEGIBLE DOCUMENTS – NOT IN CHRONOLOGICAL ORDER - TO ATTEMPT TO CONCEAL FILING DISCREPANCIES - IS A VIOLATION OF "DUE PROCESS" AND "EQUAL PROTECTION" IN VIOLATION OF THE 14TH AMENDMENT TO THE U.S. CONSTITUTION - BY INTERFERING WITH THE RIGHT TO HAVE AN EFFECTIVE REVIEW OF THE ACTION OF THE STATE BAR BY THE NEVADA SUPREME COURT AS REQUIRED BY THE 14TH AMENDMENT TO THE U.S. CONSTITUTION**

18  **318.**   SCR §105(3) provides in pertinent part:

19
20  "(a) Time and manner of appeal.  A decision of a hearing panel shall be served on the attorney and service shall be deemed Notice of Entry of Decision for appeal purposes.  Except as provided in Rule §105(3)(b), a decision is final and effective 30 days from service, unless an appeal is taken within that time.  * * *

21
22  (b) Denovo review of public discipline. Except for disbarments by consent pursuant to Rule 112 or a public reprimand agreed to in writing by the attorney pursuant to Rule 113, <u>a decision recommending a public reprimand, suspension or disbarment shall be automatically reviewed by the supreme court</u>.  <u>Review under this paragraph shall be commenced by bar counsel forwarding the record of the hearing panel proceedings to the court within 30 days of entry of the decision</u>.

Receipt of the record in such cases shall be acknowledged in writing by the clerk of the supreme court.

The attorney and bar counsel shall have <u>30 days from the date the supreme court acknowledges receipt of the record</u> within which to file an opening brief or otherwise advise the court of any intent to contest the hearing panel's findings and recommendations.  If an opening brief is filed, briefing shall thereafter proceed in accordance with NRAP 31(a). * * * "

319.   The Decision issued by the Hearing Panel in this matter, as filed with the State Bar on October 16, 2012, in the final section entitled "DECISION AND ORDER", stated:

"Based upon the foregoing Findings of Fact and Conclusions of Law, <u>the Panel hereby orders</u> that Respondents be sanctioned as follows:

"1. Respondent **Breck** and any entities with which he is associated now or in the future, shall be <u>forever barred from the practice of Law in the State of Nevada</u>, whether as a Nevada-licensed attorney, part of a multi-jurisdiction practice, via petition for admission *pro hac vice* or in any other manner. The State Bar of Nevada shall transmit these Findings of Fact, Conclusions of Law, Decision and Order to the State Bar of Alaska, and to any and all jurisdictions in which **Breck** is licensed or authorized to practice law with a request for the imposition of reciprocal discipline."

320.   The remaining 3 paragraphs in the section entitled "DECISION AND ORDER", i.e.: in ¶ 2 - bars The Public Interest Law Firm, Inc. (aka **TPI**), from "participating in any capacity in the practice of law in the State of Nevada"; in ¶ 3 - orders **Breck** "to reimburse the actual costs incurred by the State Bar of Nevada as a result of the Complaints" and all related costs; and in ¶ 4 - states that "[a]ny forum may rely on this Panel's findings of fact, should a former **TPI** client seek to recover damages from these Respondents, or either of them, or their successors or assigns * * *."

321.   The assertion by the Hearing Panel that "<u>[a]ny forum may rely on this Panel's findings of fact, should a former TPI client seek to recover damages from these Respondents, or either of them</u> ***" (**emphasis** added - DECISION AND ORDER in <u>**EXHIBIT 'AM'**</u>, at ¶ 4 on page 15), together with the failure of the Panel to acknowledge that its DECISION is only 'recommendatory' (**not 'Final'**) and is subject to **automatic denovo review** by the Nevada Supreme Court 'en banc', which has the sole authority to make a 'Final Decision' under **SCR 105(3)**, suggests the virulence with which **Caren**

1    **Jenkins**, the Panel Chairman, wrote her DECISION, and clearly expresses her intention that her

2    DECISION be published and widely disseminated, in a manner that would cause maximum damage to

3    **Breck**'s reputation, standing in the community and ability to 'earn a living', since **Caren Jenkins** must

4    have been aware of and understood the limitations on the Panel's 'recommendatory' authority, as well

5    as the reservation to the Nevada Supreme Court of **automatic "Denovo review"** of the Panel's

6    DECISION, in **SCR 105(3)**.[20]

7    **322.**   And, as further evidence of the massive internal control failures at the State Bar of Nevada,

8    **Breck** alleges that **Patrick King**, and other Bar personnel under his supervision (e.g., **Laura Peters**),

9    failed to file the Record on Appeal with the Nevada Supreme Court "within 30 days of entry of the

10   Decision" as required by **SCR 105(3)(c)** (quoted above), which "30 day" period expired on November

11   16, 2012.

12   **323.**   On information and belief, **Breck** alleges that the failure to file the Record on Appeal, was an

13   additional intentional act taken in an attempt to deprive **Breck** of "Due Process" and "Equal Protection"

14   under the 14th Amendment to the U.S. Constitution, for the apparent purpose and with the intended

15   effect of denying **Breck** any opportunity for judicial review of the proceedings of the State Bar of

16   Nevada leading up to the said DECISION of the Hearing Panel, which was thwarted by **Breck** filing on

17   November 16, 2012, a "Protective Notice of Appeal", with the State Bar of Nevada and the Nevada

18   Supreme Court, to call to the attention of the Nevada Supreme Court that **Patrick King** and his cohorts

19   and co-conspirators at the State Bar of Nevada had failed to file the Record on Appeal as required by

20   the Supreme Court Rules - **Rule 105(3)(c)**.

21   **324.**   And, in a further attempt to deprive **Breck** of the opportunity to have a meaningful review in the

22   Nevada Supreme Court, **Breck** alleges (on information and belief) that the Record on Appeal, as filed

23
24   [20] It is also noteworthy that no notice was given and no record was made of the panel's deliberations, as required by the
     Nevada Open Meeting law, Breck's offer to file a Post-Hearing Brief was refused by Caren Jenkins, and no other member of
     the Panel signed the purported DECISION or otherwise evidenced their concurrence with Caren Jenkins' DECISION.

by **Patrick King** with the Nevada Supreme Court, fails to include all of the Motions and Memorandum

filed by **Breck** and **TPI** during the course of the pre-Hearing and the formal Hearing, includes only

parts of some Motions and Memorandum filed with the State Bar by Breck, and omits other documents

entirely.

**325.**   And **Breck** further alleges that this violation of **Breck**'s Civil Rights to "Due Process" and

"Equal Protection", when considered in relation to the other violations of **Breck**'s Civil Rights alleged

herein, establishes a pattern of violations of **Breck**'s Civil Rights that establishes a method and manner

of operating the State Bar of Nevada, which evidences the attitude that Bar counsel (and those who aid,

abet, assist, act in concert or co-conspire with Bar counsel) are <u>"above the law"</u> and not required to

comply with the same rules (including specifically but without limitation, "Due Process" and "Equal

Protection") as apply to other agencies and individuals who do not operate under the authority and

protection of the Nevada Supreme Court.

**XLI. ADDITIONAL ACTION IS THREATENED BY THE STATE BAR OF NEVADA AGAINST BRECK, AS INDICATED BY THE STATEMENTS MADE IN THE FINAL SECTION OF THE "DECISION AND ORDER", DATED AND FILED ON OCTOBER 16, 2012, WITH THE STATE BAR OF NEVADA**

**326.**   The "DECISION AND ORDER" dated and filed with the State Bar of Nevada on October 16,

2012, authored by **Caren Jenkins**, as Hearing Panel Chair, strongly indicates the intention to further

the objectives of the concerted action or conspiracy by **Patrick King, David Clark, Janeen Isaacson**,

and those who have aided, abetted, assisted, acted in concert or conspired with them, to continue to take

whatever actions can be taken to further  threaten and damage Breck's business, employment,

reputation, professional life and financial well-being, when it declares:

"Based upon the foregoing Findings of Fact and Conclusions of Law, **the Panel hereby <u>orders</u> that Respondents be sanctioned** as follows:

"1. Respondent Breck and any entities with which he is associated now or in the future, shall be forever barred from the practice of law in the State of Nevada, whether as a Nevada-licensed attorney, part of a multi-jurisdiction practice, via petition for admission pro hac vice or in any other manner. <u>The State Bar of Nevada shall transmit these Findings of Fact, Conclusions</u>

of Law, Decision and Order to the State Bar of Alaska, and to any and all jurisdictions in which Breck is licensed or authorized to practice law with a request for the imposition of reciprocal discipline." – (**bold** & underline added) – **EXHIBIT 'AM'** – commencing at page 14, line 18 thru page 15, line 2.

327.  And continuing at paragraph 4:

"4. **Any forum may rely on this Panel's findings of fact, should a former TPI client seek to recover damages from these Respondents**, or either of them, or their successors or assigns, jointly and severally, related to their representation by or any and all funds proven in a separate evidentiary hearing in that forum to have been paid to **TPI**, but not earned by **TPI** for the provision of reasonable and appropriate legal services specific to that client or expended as reasonable legal costs to benefit that client." – (**bold** & underline added)– **EXHIBIT 'AM'** –at page 14, lines 13 thru 18.

328.  However, notwithstanding the language of the Hearing Panel Decision, the Supreme Court Rules (the "**SCR**") do not vest in the Hearing Panels the jurisdiction to "order" anything, since the Hearing Panels are limited to making a "recommendation" to the Supreme Court, which the Supreme Court submits to an "automatic review" – **SCR 105(3)(b)** – ("… a decision recommending a public reprimand, suspension or disbarment **shall be automatically reviewed** by the supreme court.") – (**emphasis** added)

329.  And, it is only the Supreme Court that can enter an "order" for "reprimand, suspension or disbarment". – *In re Scott*, 53 Nev. 24, 292 P. 291, 296 (1930):

"Undoubtedly, under our law the Supreme Court is the only court which has the power to disbar or suspend an attorney, and for three causes only: First, his conviction of a felony or misdemeanor involving moral turpitude; second, willful disobedience or violation of a court order connected with or in the course of his profession; third, for misconduct in office or for good cause shown." – *In re Scott*, 53 Nev. 24, 292 P. 291, 296 (1930).

330.  Therefore, **Breck** sincerely hopes that the State Bar of Nevada has not taken literally the command in paragraph 1 of the DECISION at pages 14-15 (quoted above) that:

"The State Bar of Nevada **shall transmit** these Findings of Fact, Conclusions of Law, Decision and Order to the State Bar of Alaska, and to any and all jurisdictions in which Breck is licensed or authorized to practice law with a request for the imposition of reciprocal discipline." – (**bold** & underline added) – **EXHIBIT 'AM'** – commencing at page 14, line 23 thru page 15, line 2.

331.  But, given the "above the law" attitude of Bar Counsel, and the pattern of taking every short-cut

and disregarding every limitation of "Due Process" or "Equal Protection" in these proceedings, **Breck** cannot help but be concerned about what further misguided actions may be taken by Bar Counsel or those who aid, abet, assist, act in concert or co-conspire with Bar Counsel, which will further increase the irreparable damages already imposed on **Breck**, in pursuit of their misguided 'political agenda'.

332.   Therefore, **Breck** respectfully requests that this Honorable Court issue a Preliminary Injunction to ENJOIN the State Bar of Nevada, and all those who have in the past, or seek in the future to, 'aid, abet, assist or conspire' with any individual connected with the State Bar of Nevada to cause further damage to **Breck**'s reputation and financial well-being.

## FIRST CLAIM FOR RELIEF:  EQUITABLE RELIEF
## DECLARATORY JUDGMENT AND INJUNCTION

333.   Plaintiff hereby incorporates by this reference all allegations otherwise set forth in this Complaint, as though fully set forth in this Claim for Relief.

334.   The actions alleged herein were taken and performed by Bar counsel, assistants to Bar counsel, officers of the State Bar of Nevada, and others, including without limitation the Defendants named herein (and others who have not been identified or whose actions have not yet been discovered, who will be added as named Defendants when their identity and actions have been identified) who aided, abetted, assisted and acted as co-conspirators with Bar counsel, as alleged herein, for the specific purpose of abusing and misusing the power and authority bestowed on them as "agents" of the State Bar of Nevada, to damage Plaintiff's reputation and financial well-being, to limit and eliminate Plaintiff's ability to continue to work with and assist Nevada Bar Attorneys on litigation intended to assist clients of **TPI** to resist foreclosures that Plaintiff believed to be "unlawful" or "fraudulent", because in disregard of the Nevada "non-judicial foreclosure" statutes, and other acts and practices that Plaintiff believed were "predatory" or "fraudulent" or "unlawful" and injurious to the clients of **TPI**.

**335.**   The actions alleged herein constitute a serious violation of Plaintiff's "Due Process" and other civil rights, in violation of 43 USC 1983, for which mere damages do not constitute an adequate remedy at law.

**336.**   Therefore, Plaintiff respectfully requests that this Honorable Court enter a Declaratory Judgment finding that:

   **[1]** That the allegations of the Complaint, and evidence submitted in support thereof, demonstrate that the Plaintiff has raised 'serious questions' going to the merits of the procedures followed by the State Bar of Nevada in this case, and that Plaintiff is likely to succeed on the merits of his claim under 42 USC 1983; and

   **[2]** That the evidence before the Court shows that the Plaintiff has suffered and will likely continue to suffer irreparable harm in the absence of the requested Preliminary Injunction, in his reputation and standing in the community, as well as financial damages, loss of income, and other damages which are substantial and irreparable in nature; and

   **[3]** That the balance of equities tips in favor of the Plaintiff; and

   **[4]** That issuing the Preliminary Injunction is in the 'public interest' and appropriate to maintain the status quo pending the Hearing of the Appeal by **Breck** in the Nevada Supreme Court, and the trial in this Court on Plaintiff's Complaint.

**337.**   Therefore, Plaintiff respectfully requests that this Honorable Court enter a Temporary Injunction to enjoin the Defendants from committing any further violations of **Breck**'s Civil Rights, both in their individual capacity and under color or pretense of lawful authority, and ordering the Defendants to cease and desist from taking, making or conducting any further action in violation of the Civil Rights of **Breck**, and others similarly situated, which are beyond the scope of their proper authority under the Constitution and laws of the United States and the State of Nevada.

**338.**   And, Plaintiff respectfully requests that this Honorable Court also rule on the violations of the

1   Open Meeting Laws alleged in this Complaint, and enter a Declaratory Judgment **declaring** the

2   DECISION (see **EXHIBIT 'AM'**), entered by the Hearing Panel on Oct. 16, 2012, in NG11-1103 &

3   NG11-1378, is **void**.

4   **339.**   However, Plaintiff <u>does not request</u> from this Court any order restraining further proceedings in

5   the pending review by the Nevada Supreme Court of the "Decision" entered on October 16, 2012, by

6   the formal Hearing Panel (with **Caren Jenkins,** as acting Chair of the Hearing Panel) of the Northern

7   Nevada Disciplinary Board, under **SCR 105(3),** entitled "3. REVIEW BY SUPREME COURT".

8

9                   **SECOND CLAIM FOR RELIEF: NEGLIGENCE**

10   **340.**   Plaintiff hereby incorporates by this reference all allegations otherwise set forth in this

11   Complaint, as though fully set forth in this Claim for Relief.

12   **341.**   The State of Nevada has negligently failed to establish selection testing and procedures to

13   prevent sociopathic individuals from being selected as Bar counsel or investigators, policies and

14   procedures, rules and restrictions, basic training sufficient to qualify an investigator to collect evidence

15   in a legal manner, and respect for the civil rights of the persons under the jurisdiction of the State Bar of

16   Nevada, all of which has created the current inability of the State Bar to recognize and respect the basic

17   rules and procedures required by "Due Process" and "Equal Protection" under the 14th Amendment to

18   the U.S. Constitution.

19   **342.**   The State of Nevada and the State Bar of Nevada have failed to properly train and to establish

20   policies and procedures sufficient to prevent or deter individual agents and representatives of the State

21   Bar of Nevada (e.g., Patrick King, David Clark & Caren Jenkins, and other individuals named or

22   described in this Complaint), and others aiding, abetting, assisting, acting in concert or as co-

23   conspirators with such agents or representatives (including, without limitation, all other persons named

24   or described in this Complaint), from committing spoliation of evidence, engaging in improper

1   investigative practices, from participating in tortious and/or criminal activity, and taking actions and

2   engaging in activities for improper (e.g., political) purposes, and otherwise acting contrary to law or in

3   violation of the civil rights of 'targets' or 'subjects' against which the agents or representatives of the

4   State Bar direct their attention.

5   **343.**   The State of Nevada and the State Bar of Nevada have failed to establish proper and sufficient

6   policies, procedures, regulations and guidelines to implement the 'disciplinary authority' of the Nevada

7   Supreme Court, sufficient to meet the requirements of "Due Process" and "Equal Protection" by

8   comparison with other agencies of the State of Nevada (e.g., the Nevada Commission on Judicial

9   Discipline, and other Agencies of the State of Nevada performing similar functions subject to the Open

10  Meeting Laws), including, without limitation: [**A**] the failure to clearly define the jurisdiction of the

11  State Bar of Nevada in a manner consistent with the limitations on the jurisdiction of the Nevada

12  Supreme Court imposed by Article 3 of the Nevada Constitution – Separation of Powers, including the

13  extent of the jurisdiction to be exercised over persons who are not members of the State Bar of Nevada

14  – consistent with the prohibition in Article 3 against the appropriation of power by the judiciary which

15  which is allocated by the Constitution to the legislative or executive branch of government; [**B**] the

16  failure to adopt procedural regulations governing the actions of the Disciplinary Boards, including,

17  without limitation, the duty of the Chairman to 'recuse' himself from adjudicatory duties, in favor of

18  the Vice-Chairman, when the Chairman undertakes to prosecute a Petition For Temporary Suspension

19  in the Nevada Supreme Court, the duty of the Chairman (or Vice-Chairman) to 'serve' Orders issued

20  during the course of proceedings before the appointment of a Hearing Panel, rather than merely deliver

21  the Order to Bar Counsel for later service at Bar Counsel's discretion; [**C**] the failure to specify the

22  procedures for the timing and manner of selection of a Hearing Panel consistent with "Due Process"

23  and "Equal Protection", sufficient to prevent Bar Counsel from participating in the selection of the

24  Hearing Panel, other than through the exercise of the Peremptory Challenges allocated to Bar Counsel;

1   [**D**] the failure to specify what authority the Chairman (or Vice-Chairman) of the Disciplinary Board

2   has to "change" the Chairman of a Hearing Panel previously appointed; [**E**] the failure to adopt

3   procedural regulations for the conduct of the Hearing Panel, to prevent ad hoc rulings without prior

4   notice of a "rule", such as Caren Jenkins made in this case; [**F**] the failure to specify when and how

5   peremptory challenges may be exercised after a Hearing Panel is impaneled, rather than against the

6   entire venire, in a manner consistent with the status of the Common Law Right of a Defendant to

7   Peremptory Challenges as it existed at the date of the adoption of the Nevada Constitution; [**G**] the

8   failure to define the duty of a "Screening Panel" to determine "probable cause"; [**H**] the failure to

9   expressly require compliance with the Open Meeting Laws (**NRS Chap. 241**) during all phases of the

10  Attorney-Disciplinary Proceedings; [**I**] the failure to require that the Defendant-Respondent be

11  provided with all available information and an opportunity to respond to the Screening Panel, similar to

12  the opportunity provided Judges to rebut charges presented to the Nevada Commission on Judicial

13  Discipline during the "probable cause" phase of Judicial Disciplinary proceedings; [**J**] the failure to

14  provide adequate opportunity for 'discovery' by the Defendant-Respondent Attorney after all

15  information and evidence has been produced by the State Bar, including all of the discovery options

16  (including Depositions, Interrogatories and other discovery methods) available in other civil litigation;

17  and [**K**] the failure to address all of the other deficiencies in the current procedures alleged or

18  referenced in this Complaint.

19  **344.**   The actions of the agents and representatives of the State Bar of Nevada were undertaken to

20  accomplish a "political" agenda, and not for any legitimate end, and the negligence of the State of

21  Nevada permitted the agents of the State Bar to engage in the destructive behaviors without adequate

22  supervision or accountability.

23  **345.**   Plaintiff **Breck** has suffered serious and substantial damages, from the destruction of the **TPI**

24  organization, which **Breck** founded (with others) for the purpose of assisting homeowners to combat

1    through legal means the predatory foreclosure practices of the Mortgage originators and Servicers, from

2    loss of reputation and the complete destruction of **Breck**'s reputation and livelihood.

3    **346.**    The means and methods permitted to be used by the State Bar of Nevada, due to the negligence

4    of the State of Nevada, evidence a wanton, willful, intentional and malicious desire to destroy **Breck**

5    and everything that **Breck** was attempting to do that was beneficial, by making it extraordinarily

6    difficult for any Nevada Bar attorney to remain associated with **Breck** or to work with **Breck** on any

7    legal matter; as well as loss and damage to many homeowners and others that relied upon **TPI** for

8    assistance that they could not find at affordable rates in any other venue, place or service.

9    **347.**    Defendants actions have damaged Plaintiff **Breck** by more than $75,000, in such amount as shall

10   be determined at trial, and caused irreparable damage to the reputation and standing in the community

11   of Plaintiff **Breck**, without good cause or legal justification. Therefore, **Breck** requests that this

12   Honorable Court award actual, general, special, exemplary and punitive damages as compensation and

13   to deter Defendants from engaging in similar actions in the future.

14

15   **THIRD CLAIM FOR RELIEF: VIOLATION OF THE NEVADA OPEN MEETING LAWS**

16   **348.**    Plaintiff hereby incorporates by this reference all allegations otherwise set forth in this

17   Complaint, as though fully set forth in this Claim for Relief.

18   **349.**    The Nevada Open Meeting Laws (**NRS Chap. 241**) apply by their terms to all administrative

19   agencies of the State of Nevada which "advise or make recommendations to" an agency which is

20   supported by tax revenues (**NRS 241.015(3)-**), which includes the Nevada Supreme Court.

21   **350.**    Although the Legislature (**NRS 241.015(3)(b)-** marginal trailing sentence) and "judicial

22   proceedings" (**NRS 241.030(4)(a)-**), are specifically excluded from the Open Meeting Laws, the State

23   Bar of Nevada is not excluded from the coverage of the Nevada Open Meeting Laws.

24   **351.**    The Nevada Open Meeting Laws cover an agency that conducts meetings that are "quasi-judicial

1   in nature" (**NRS 241.030(4)**-) which consider issues related to "character, alleged misconduct [&/or]

2   professional incompetence" (**NRS 241.030(2)**-), which describes the kind of proceedings conducted by

3   the State Bar of Nevada's formal "Hearing Panels" and "Screening Panels".

4   **352.**   The Nevada Open Meeting Laws provide that 'action taken in violation' of the Open Meeting

5   Laws may be declared "void" (**NRS 241.036**), provided only that a Complaint raising the violation is

6   filed within 60 days after the action is taken (**NRS 241.037(2)&(3)**-); the Decision of the formal

7   Hearing Panel in re Grievance(s) NG11-1103 & NG11-1378, was issued and filed on October 16, 2012,

8   and this action was timely filed within 60 days after the Decision was issued.

9   **353.**   **Breck** alleges that the formal Hearing Panel conducted a "closed hearing", and excluded all

10   witnesses, but permitted persons other than **Breck**'s Court Reporter (excluded in violation of **NRS**

11   **241.035(3) & NRS 241.040(2)**-) to sit in, and listen to, the formal Hearing during the testimony of all

12   witnesses; therefore **Breck** alleges that the Hearing Panel violated the Open Hearing Laws by

13   excluding **Breck**'s Court Reporter and failing to "open" the meeting at **Breck**'s request in violation of

14   **NRS 241.030(2) & NRS 241.030**.

15   **354.**   **Breck** further alleges that the Hearing Panel violated the Open Meetings Laws by failing to

16   provide the required Notices of the Meetings pursuant to **NRS 241.020**, **NRS 241.030**, **NRS 241.033 &**

17   **NRS 241.034** prior to the Hearings, and the meetings to consider and approve the Decision, and by

18   failing to give the required notice to **Breck** and to permit **Breck** to attend the meeting at which the

19   Hearing Panel considered and decided on their decision in relation to Grievance(s) NG11-1103 &

20   NG11-1378 (**NRS 241.033(4)(a)**-).

21   **355.**   And **Breck** further alleges that the Hearing Panel and the State Bar violated the Open Meetings

22   Laws (and "Due Process" and other civil rights) by failing to make an adequate record of all

23   proceedings (or any record of parts of the decision-making process), including the deliberations of the

24   Hearing Panel in the course of preparing its DECISION, and instead utilizing older technology, which

1   is less certain, less accurate, and more readily subject to tampering and undue influence than other

2   readily available technologies (e.g., electronic analog or digital audio or video recordings).

3   **356.**   These failures and violations of the Nevada Open Meeting Laws (**NRS Chap. 241**) render the

4   DECISION of the Hearing Panel "VOID", and have caused substantial damages to Plaintiff Breck'

5   reputation, standing in the community and ability to earn a livelihood, by the issuance and publication

6   of the "VOID" DECISION of the Hearing Panel in violation of the said Open Meeting Laws.

7   **357.**   Defendants actions have damaged Plaintiff **Breck** by more than $75,000, in such amount as shall

8   be determined at trial, and caused irreparable damage to the reputation, livelihood and standing in the

9   community of Plaintiff **Breck**, without good cause or legal justification. Therefore, **Breck** requests that

10   this Honorable Court award actual, general, special, exemplary and punitive damages as compensation

11   and to deter Defendants from engaging in similar actions in the future.

12

13                     **FORTH CLAIM FOR RELIEF:  ABUSE OF PROCESS**

14   **358.**   Plaintiff hereby incorporates by this reference all allegations otherwise set forth in this

15   Complaint, as though fully set forth in this Claim for Relief.

16   **359.**   Plaintiff **Breck** alleges that the use of the disciplinary powers and procedures of the State Bar of

17   Nevada for the illicit and unlawful objective to accomplish a "political" goal of deterring Nevada

18   attorneys from attempting to assist homeowners and others similarly situated to lawfully resist unlawful

19   and fraudulent actions of Mortgage originators and Servicers in the origination of mortgage loans and

20   in the foreclosure of mortgage loans after the mortgage Servicers had, through predatory foreclosure

21   practices, caused the housing price collapse, for their own gain and profit, was an improper use and

22   misappropriation of the powers, authority and procedures of the State Bar of Nevada for private

23   purposes, which were and are inconsistent with the legitimate use of the powers of the State Bar to

24   oversee, supervise and discipline Nevada attorneys, which constitutes a willful, malicious, intentional

and wanton "abuse of process" by the misuse and misapplication of the powers, authority and proper purposes of the State Bar of Nevada, for which damages should be awarded against those Defendants who were responsible for the misuse, diversion and "abuse of process" of the legitimate powers and procedures of the State Bar of Nevada for improper purposes.

360.   Defendants actions have damaged Plaintiff **Breck** by more than $75,000, in such amount as shall be determined at trial, and caused irreparable damage to the reputation and standing in the community of Plaintiff **Breck**, without good cause or legal justification. Therefore, Plaintiff **Breck** requests an award of actual, special, general, prospective, exemplary and punitive damages, as compensation for the damages caused by such Defendants.

## FIFTH CLAIM FOR RELIEF: INTERFERENCE WITH BUSINESS RELATIONS

361.   Plaintiff hereby incorporates by this reference all allegations otherwise set forth in this Complaint, as though fully set forth in this Claim for Relief.

362.   Plaintiff **Breck** alleges that one of the primary objectives of Defendants **King** and **Clark** was to interfere with, prevent and destroy the legitimate business that **Breck** had formed as the 'founder' of **TPI**, and to accomplish that objective as quickly as possible before **Breck** could, through the slow and sometimes tedious process of litigation, adjudication, appeal, review and further litigation, produce the results that **Breck** intended to obtain for the benefit of the Homeowners and others who had retained **TPI** to assist them, and others similarly situated.

363.   **Breck** further alleges that the instigation of an "investigation" by **Clark** and **Isaacson** (with the assistance of **Doyle**) only 18 calendar days after **TPI** had formally opened its doors to begin to accept clients, together with the refusal of **King** and **Clark** to discuss any compromise resolution of any legitimate issues that the State Bar might have had, notwithstanding the substantial efforts of attorney Cliff Young to prepare an extensive response to the Bar's initial contacts with **Breck** and **TPI** in a

1   serious effort to resolve genuine issues and several lengthy conversations with **King** - (which resulted

2   only in a refusal by **King** to discuss any possible resolution of mostly unidentified "issues") - and the

3   failure of **Clark** to take any action to restrain **King**, even after **Clark** was informed of **King**'s

4   defamatory name calling (characterizing **Breck** as a "crook" and "criminal genius" - in conversations

5   with Freitag and Adams in early August, 2012), and continuing threats and intimidation of every

6   Nevada Bar attorney associated with **TPI** in any way, was undertaken purely for the purpose and with

7   the desired effect of destroying the ability of **Breck** to work with any Nevada Bar attorneys, and

8   destroying the financial viability of **TPI**, and the ability of **Breck** and **TPI** (in conjunction with Nevada

9   Bar attorneys) to continue to pursue cases filed against Mortgage lenders and Servicers, served only the

10  willful, wanton, malicious and intentional purpose to destroy the business that **Breck** had created

11  through **TPI**.

12  **364.**   As a result of the Defendants actions, together with those who aided, abetted, assisted and co-

13  conspired with the Defendants, **Breck** suffered great and serious injuries to his ability to make a living,

14  to his financial well-being, and to his health and reputation and standing in the community. Defendants

15  actions have damaged Plaintiff **Breck** by more than $75,000, in such amount as shall be determined at

16  trial, and caused irreparable damage to the reputation and standing in the community of Plaintiff **Breck**,

17  without good cause or legal justification. Therefore **Breck** seeks an award of damages for the injuries,

18  damages, actual, special, general, exemplary and punitive, sustained as a direct consequence of the

19  actions of Defendants alleged herein.

20

21  ### SIXTH CLAIM FOR RELIEF: ACTION IN CONCERT OR CONSPIRACY TO VIOLATE AND VIOLATION OF CIVIL RIGHTS UNDER 42 USC 1983

22  **365.**   Plaintiff incorporates herein all of the allegations set forth in this Complaint prior to this

23  paragraph, as though fully set forth herein.

24

**366.**   Plaintiff alleges that Defendants actions alleged herein violated Plaintiff **Breck**'s civil rights contrary to **42 USC 1983**, by actions taken illegally and without proper authority "under color of state law" alleged hereinabove which caused, and continue to cause, damage to Plaintiff **Breck**, by depriving Plaintiff **Breck** of the ability to continue to earn a livelihood as Executive Director of **TPI**, by forcing the attorneys employed by **TPI** to sever their relationship with Plaintiff **Breck**, and by preventing **TPI** from continuing to provide services with the assistance of Plaintiff **Breck** to help homeowners facing non-judicial foreclosure proceedings to postpone such foreclosure proceedings, and/or to stop such foreclosure proceedings that are occurring contrary to law or without lawful authority, and/or to recover damages for predatory lending and foreclosure practices.

**367.**   Plaintiff **Breck** further alleges that the actions of the agents and officers of the State Bar of Nevada were aided, abetted, assisted, enabled and encouraged by the Defendants named in this Complaint, each of whom acted in the manner described herein, as well as in other ways to be discovered in discovery, in relation to the overall conspiracy of the Defendants to damage **Breck** and destroy the "business" that **Breck** founded, i.e., **TPI**, as well as persons who are currently unknown and whose exact participation is yet to be discovered.

**368.**   Therefore, on information and belief, **Breck** alleges that the named Defendants, and each of the other persons (currently unknown) who willfully, wantonly, maliciously or intentionally aided or assisted, enabled or encouraged, or participated in any way in the creation of the plan and execution of the plan to target attorneys (and those who assisted Nevada attorneys) for "investigation" by the State Bar of Nevada and other agencies and agents of the State of Nevada, because the attorneys (and those who attempted to assist the Nevada attorneys) sought to represent homeowners in attempts to stop unlawful and fraudulent foreclosures and/or to represent homeowners in actions to recover damages for predatory lending and foreclosure practices, engaged in an unlawful conspiracy, and should be held accountable for their actions, in order to preserve and protect the rule of law in this Honorable Court.

**369.**   Defendants actions have damaged Plaintiff **Breck** by more than $75,000, in such amount as shall be determined at trial, and caused irreparable damage to the reputation and standing in the community of Plaintiff **Breck**, without good cause or legal justification. . Therefore **Breck** seeks an award of damages for the injuries, damages, actual, special, general, exemplary and punitive, sustained as a direct consequence of the actions of Defendants alleged herein.

**PRAYER FOR RELIEF**

**370.**   WHEREFORE, Plaintiff **Breck** prays for relief as follows:

**371.**   On Plaintiff's <u>First Claim for Relief FOR DECLARATORY & INJUNCTIVE RELIEF</u>, Plaintiff respectfully requests that the Court enter ORDERS DECLARING that the Decision entered on Oct. 16, 2012, by the Hearing Panel of the Northern Nevada Disciplinary Board, Caren Jenkins, Chair, is **void and unenforceable**, and granting Plaintiff a PRELIMINARY and PERMANENT INJUNC-TION, Ordering Defendants to CEASE AND DESIST, and Prohibiting Defendants from engaging in any further actions for the purpose of causing damage or injury to the Plaintiff, individually, and as Executive Director of **TPI**, whether such action is taken directly or indirectly, on pain of CONTEMPT OF COURT for violation of such Mandatory and Prohibitory ORDERS; and

**372.**   On Plaintiff's <u>Second Claim for Relief for NEGLIGENCE</u>, for an award of DAMAGES in such amount, in excess of $75,000, as shall be determined at trial, jointly and severally against all Defendants; and

**373.**   On Plaintiff's <u>Third Claim for Relief for VIOLATION OF NEVADA'S OPEN MEETING LAWS</u>, for a Judgment Declaring the Decision of the Hearing Panel issued on October 16, 2012 to be <u>VOID and of NO EFFECT</u> whatsoever, plus Damages, Costs and Attorney Fees as permitted by law; and

**374.**   On Plaintiff's <u>Fourth Claim for Relief for ABUSE OF PROCESS</u>, for General, Special and

1    Exemplary Damages in such amount in excess of $75,000 as shall be proved at trial, plus Costs and

2    Attorney Fees as permitted by law; and

3    **375.**   On Plaintiff's <u>Fifth Claim for Relief</u> for <u>INTERFERENCE WITH BUSINESS RELATIONS</u>, for

4    General, Special and Exemplary Damages in such amount in excess of $75,000 as shall be proved at

5    trial, plus Costs and Attorney Fees as permitted by law; and

6    **376.**   On Plaintiff's <u>Sixth Claim for Relief</u> for <u>ACTION IN CONCERT OR CONSPIRACY TO</u>

7    <u>VIOLATE, AND VIOLATION OF CIVIL RIGHTS UNDER 42 USC 1983</u>, for General, Special and

8    Exemplary Damages in such amount in excess of $75,000 as shall be proved at trial, plus Costs and

9    Attorney Fees as permitted by law; and

10   **377.**   Such further, other and additional relief as the Court shall determine to be just and equitable in

11   the premises.

12   **378.   Pursuant to NRS §239B.030(4):** The undersigned hereby AFFIRMS that this document does

13   not contain the social security number of any person.

14   **379.   Pursuant to NRS §53.045 & NRS §53.370:**  I declare under penalty of perjury under the law of

15   the State of Nevada that the foregoing is true and correct, to the best of my knowledge and belief, and

16   that I am physically located outside the geographic boundaries of the United States, Puerto Rico, the

17   United States Virgin Islands and any territory or insular possession subject to the jurisdiction of the

18   United States, at the date I execute this Declaration.

19   Executed on the **20th** day of **January, 2013**, at Ensenada, Mexico.

20                                                                  By: _____
                                                                     **WILLIAM BRECK, PRO SE, an individual**
21                                                                  **Mailing Address:**
                                                                     **748 S. Meadows Pkwy #A9-257**
22                                                                  **Reno, NV 89521**
                                                                     **Msg Ph:   775-331-2482**
23                                                                  **Cell Ph:   775-722-7940**
                                                                     **Fax:       775-420-3642**
24                                                                  **EM:  Bill@TPILaw.org**

## LIST OF EXHIBITS TO COMPLAINT

**EXHIBIT 'A'** - The Non-Profit Articles of Incorporation for THE PUBLIC INTEREST LAW FIRM, INC., as filed with the Nevada Secretary of State, Corporations Division, on January 24, 2011

**EXHIBIT 'B'** - The By-Laws of THE PUBLIC INTEREST LAW FIRM, INC.

**EXHIBIT 'C'** - Declaration of Attorney Cliff Young re Submission pertaining to THE PUBLIC INTEREST LAW FIRM, INC., delivered to Patrick King on October 13, 2011

**EXHIBIT 'D'** - Formal COMPLAINT filed by Patrick King against Breck and The Public Interest Law Firm, Inc. on October 21, 2011

**EXHIBIT 'E'** - Email from Attorney Yvette Chevalier directing "paralegals" how to sign Court Documents before filing

**EXHIBIT 'F'** - DECLARATION of Beverly Teichgraeber pertaining to the ORDER APPOINTING HEARING PANEL and Exhibits attached thereto

**EXHIBIT 'G'** - PETITION FOR TEMPORARY SUSPENSION PURSUANT TO SCR 102(4)(a), as filed with the Nevada Supreme Court on November 22, 2011, as Case No. 59726 and all Exhibits attached thereto

**EXHIBIT 'H'** - NOTICE IN LIEU OF REMITTITUR issued April 16, 2012, and ORDER DENYING PETITION issued March 22, 2012, by the Nevada Supreme Court

**EXHIBIT 'I'** - Breck's MOTION TO DISMISS OR FOR MORE DEFINITE STATEMENT filed November 14, 2011, and ORDER issued by J.Thomas Susich on January 18, 2012 (attached in front of the MOTION TO DISMISS)

**EXHIBIT 'J'** - Breck's five (5) MOTIONS IN LIMINE filed January 3, 2012

**EXHIBIT 'K'** - Breck's NOTICE OF ELECTION ... TO RESERVE PEREMPTORY CHALLENGES UNTIL VOIR DIRE OF THE HEARING PANEL filed February 9, 2012

**EXHIBIT 'L'** - J. Thomas Susich ORDER issued March 15, 2012 DENYING Breck's MOTIONS IN LIMINE (**EXHIBIT 'J'**) and STRIKING Breck's NOTICE OF ELECTION (**EXHIBIT 'K'**)

**EXHIBIT 'M'** – ORDER APPOINTING FORMAL HEARING PANEL signed by J. Thomas Susich, Chairman of the Northern Nevada Disciplinary Board - dated April 9, 2012 - as obtained by Beverly Teichgraeber from Sherry Hornsby on June 27, 2012

**EXHIBIT 'N'** - IRS Acknowledgement of Receipt of FORM 1023 filing for THE PUBLIC INTEREST LAW FIRM, INC. dated DECEMBER 5, 2012

**EXHIBIT 'O'** – Initial APPLICATION FOR REGISTRATION AS MULTI-JURISDICTION LAW FIRM submitted for TPI to the State Bar of Nevada on or about February 1, 2011

**EXHIBIT 'P'** – Letter from Kimberly Farmer, revoking the MJP REGISTRATION of TPI without statement of cause, dated September 2, 2011

**EXHIBIT 'Q'** - Patrick King, Asst. Bar Counsel - MOTION FOR CONTINUANCE OF HEARING - dated June 4, 2012 - with Certificate of Service dated June 6, 2012

**EXHIBIT 'R'** - Breck's OPPOSITION TO STATE BAR'S MOTION FOR CONTINUANCE AND RESPONDENT BRECK'S MOTION TO DISMISS FOR FAILURE TO PROSECUTE - dated June 11, 2012 - with Certificate of Service dated June 13, 2012

**EXHIBIT 'S'** - Patrick King's STATE BAR OF NEVADA'S REPLY IN SUPPORT OF MOTION FOR CONTINUANCE AND OPPOSITION TO MOTION TO DISMISS FOR FAILURE TO PROSECUTE - dated June 26, 2012

**EXHIBIT 'T'** – Letter dated July 3, 2012 from J. Thomas Susich, stating that: "My duties related to your cases ended when I entered an Order Appointing Formal Hearing Panel on April 9, 2012"

**EXHIBIT 'U'** – Patrick King SUMMARY OF EVIDENCE; DESIGNATION OF WITNESSES as filed on July 25, 2012

**EXHIBIT 'V'** - Bailey-Kennedy MOTION TO WITHDRAW AS COUNSEL FOR THE PUBLIC INTEREST LAW FIRM, INC. - filed May 1, 2012

**EXHIBIT 'W'** - Bailey-Kennedy NOTICE OF NON-OPPOSITION to MOTION TO WITHDRAW AS COUNSEL FOR THE PUBLIC INTEREST LAW FIRM, INC. and REQUEST FOR ENTRY OF ORDER - filed May 23, 2012

**EXHIBIT 'X'** - Breck's OBJECTION TO MOTION OF BAILEY-KENNEDY TO WITHDRAW FROM REPRESENTATION OF THE PUBLIC INTEREST LAW FIRM, INC. and MOTION to permit Attorney Ken Eade (Cal Bar) to represent TPI "Pro Hac Vice" - dated July 25, 2012

**EXHIBIT 'Y'** - ORDER issued by Kathleen Breckenridge - GRANTING Bailey-Kennedy Motion to Withdraw & DENYING Request for Pro Hac Vice representation for The Public Interest Law Firm, Inc., and DENYING Motion to Dismiss - issued August 6, 2012 - AND - Back-Dated ORDER purportedly dated JUNE 5, 2012, but never served or seen until the day before the August 28, 2012 HEARING

**EXHIBIT 'Z'** - AMENDED ORDER APPOINTING FORMAL HEARING PANEL - issued by J. Thomas Susich on August 22, 2012 – Removing Kathleen Breckenridge as Chair & Appointing Caren Jenkins as Chair - without NOTICE or HEARING - and without REQUEST or stated CAUSE or REASON

**EXHIBIT 'AA'** – PEREMPTORY CHALLENGES TO HEARING PANEL CHAIR & MEMBERS – served at commencement of the Hearing on August 28, 2012

1   **EXHIBIT 'AB'** – ORDER TO CONTINUE HEARING - GRANTING MOTION by Patrick King
for CONTINUANCE filed "June 6, 2012" – purportedly signed by Kathleen Breckenridge on
2   "June 5, 2012"

3   **EXHIBIT 'AC'** - Breck's EM/EFax Transmitting [1] MOTION TO COMPEL PRODUCTION
OR EXCLUDE EVIDENCE and [2] NOTICE OF OBJECTION TO ORDER PROHIBITING
4   TESTIMONY OF JANEEN ISAACSON AS NOT A PROPER WITNESS & THAT PATRICK
KING CANNOT BE CALLED TO TESTIFY - both sent and filed by email and eFax to Caren
5   Jenkins, acting Chair of the Hearing Panel, and Patrick King at 6:07 PM on Sept. 14, 2012.

6   **EXHIBIT 'AD'** – Breck DEMAND FOR DOCUMENTS Letter to Patrick King dated August 6,
2012 – with Receipt Acknowledged by State Bar Receptionist on August 6, 2012 (upper right
7   corner on first page of the letter)

8   **EXHIBIT 'AE'** – SPOLIATION NOTICES delivered on August 28, 2012 - to Patrick King, Asst.
Bar Counsel, Caren Jenkins, Esq. (Hearing Panel Chair), Kathleen Breckenridge, Esq. (Hearing
9   Panel Member & former Chair), Keegan G. Low, Esq. (Hearing Panel Member), Gregory
Livingston, Esq. (Hearing Panel Member), Deveron Feher (Hearing Panel – Lay Member)

10
**EXHIBIT 'AD'** – CERTIFICATION requested from Patrick King on August 11, 2012, and
11   refused by Patrick King

12   **EXHIBIT 'AE'** - Handwritten Memo from David Clark, Bar Counsel, to Janeen Isaacson, Asst.
Bar Counsel dated "3/7/11" with handwritten statement: "See my response email   DAC"
13
**EXHIBIT 'AF'** - Transcript pages 276 - 295 re Caffaratti's criminal actions taken to be "coop-
14   erative" [Transcript page 281] with Patrick King's "investigation", including "ensuring that
William Breck is sanctioned"[Transcript page 292] (plus Cover page and Certification page) –
15   Plus Caffaratti's AFFIDAVIT and LETTER referenced in Caffaratti's Testimony (above)

16   **EXHIBIT 'AG'** -  Transcript pages 170 - 174 re Request for Disciplinary Files (plus Cover page
and Certification page) and Letter to Patrick King dated August 6, 2012 (**EXHIBIT 'AD'**)
17
**EXHIBIT 'AH '** - Letter from Georgia Hedrick to Patrick King dated July 29, 2011
18
**EXHIBIT 'AI'** - Letter from Roger Doyle that he had been retained by Guerrero dated on or
19   about Sept. 15, 2011

20   **EXHIBIT 'AJ'** – Breck MOTION TO COMPEL PRODUCTION OR TO EXCLUDE EVIDENCE
dated and submitted September 14, 2012
21
**EXHIBIT 'AK'** - Patrick King's NOTICE OF FORMAL HEARING, dated July 24, 2012, with
22   attached SUMMARY OF EVIDENCE; DESIGNATION OF WITNESSES - dated July 25, 2012

23   //

24

1   **EXHIBIT 'AL'** – [A] Email from Breck to Jenkins, King & Isaacson dated Sept. 4, 2012, transmitting: [1] Subpoena for Patrick King; [2] Subpoena for Janeen Isaacson; [3] Respondent's
2   WITNESS LIST dated Sept. 4, 2012;
            [B] Email from Jenkins to Breck & King dated Sept 4, 2012 – requesting
3   additional information re the Respondent's Witness List;
            [C] Email from Breck to Jenkins & King dated Sept 5, 2012 – transmitting
4   attached copies of Supplement to Respondent's Witness List;
            [D] Email from King to Jenkins & Breck dated Sept 5, 2012 – Objecting to
5   Breck's Witness List and Moving to Quash Subpoenas for King, Isaacson & Farmer;
            [E] Email from King to Jenkins, Isaacson & Breck dated Sept 5, 2012 & Email
6   from King to Jenkins & Breck dated Sept 5, 2012 – submitting Memo from Isaacson;
            [F] ORDER DENYING WILLIAM BRECK'S REQUEST FOR
7   CONTINUANCE and ORDER DENYING IN PART AND GRANTING IN PART WILLIAM
    BRECK'S REQUEST FOR ADDITIONAL WITNESSES; and
8           [G] Email from Breck to Jenkins & King dated Sept 14, 2012, transmitting:
    [1] MOTION TO COMPEL PRODUCTION OR EXCLUDE EVIDENCE and [2] NOTICE OF
9   OBJECTION TO ORDER EXCLUDING WITNESSES Isaacson, King, Farmer & Hannuksela

10  **EXHIBIT 'AM'** - FINDINGS OF FACT, CONCLUSIONS OF LAW, DECISION AND ORDER
    entered on October 16, 2012
11
                            ----- END OF LIST OF EXHBITS -----
12

13

14

15

16

17

18

19

20

21

22

23

24